CENTER FOR HUMAN RIGHTS & CONSTITUTIONAL LAW
Peter A. Schey (Cal. Bar No. 58232)
Daniel Bral (Cal. Bar No. 335951)
256 South Occidental Blvd.
Los Angeles, CA 90057
Telephone: (213) 388-8693, ext. 309
Facsimile: (213) 386-9484
Email: pschey@centerforhumanrights.org
        daniel@centerforhumanrights.org
*Attorneys for Plaintiffs. (Additional counsel listed next page)*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CASA LIBRE/FREEDOM HOUSE; EL RESCATE; CLERGY AND LAITY UNITED FOR ECONOMIC JUSTICE (CLUE); SALVADORAN AMERICAN LEADERSHIP & EDUCATIONAL FUND (SALEF); CENTRAL AMERICAN RESOURCE CENTER (CARECEN-DC); LA RAZA CENTRO LEGAL, INC.; RENE GABRIEL FLORES MERINO; HILDNER EDUARDO CORONADO AJTUN; CARLOS ABEL HERNANDEZ AREVALO; AXEL YAFETH MAYORGA AGUILERA; RENE ISAI SERRANO MONTES; PAMELA ALEJANDRA RIVERA CAMBARA, | Case No. |
| | **COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF** |

Plaintiffs,

v.

ALEJANDRO MAYORKAS, SECRETARY, U.S. DEPARTMENT OF HOMELAND SECURITY; UR M. JADDOU, DIRECTOR, U.S. CITIZENSHIP AND IMMIGRATION SERVICE; U.S. CITIZENSHIP AND IMMIGRATION SERVICE,

Defendants.

Complaint

1

*Additional Counsel for Plaintiffs:*

CAMILA ALVAREZ (Cal. Bar No. 305813)
RUTH N. CALVILLO (Cal. Bar No. 312129)
LILIT MELKONYAN (Cal. Bar No. 319834)
Central American Resource Center (CARECEN-LA)
468 W 5th Street, Suite 204
San Bernardino, CA 92401
Telephone: (213) 385-7800, extension 161
Email: CAlvarez@carecen-la.org
        RCalvillo@carecen-la.org
        LMelkonyan@carecen-la.org

STEPHANY ARZAGA (Cal. Bar No. 314925)
CYNTHIA HENNING (Cal. Bar No. 295709)
CLAUDIA QUINTANA (Cal. Bar No. 178613)
Legal Services for Children
1254 Market St–3rd Floor
San Francisco, CA 94102
Telephone: (415) 863-3762
Email: stephany@lsc-sf.org
        cynthia@lsc-sf.org
        claudiaq@lsc-sf.org

MARITZA AGUNDEZ (Cal. Bar No. 322158)
Coalition for Humane Immigrant Rights (CHIRLA)
2533 West Third St., Suite 101
Los Angeles, CA 90057
Telephone: (213) 201-3781
Email: magundez@chirla.org

STEPHEN ROSENBAUM (Cal. Bar No. 98634)
MARCOS PACHECO (Cal. Bar No. 341355)
La Raza Centro Legal, Inc.
474 Valencia Street, #295
San Francisco, CA 94103
Telephone: (415) 575-3500
Email: srosenbaum@law.berkeley.edu
Email: marcos@lrcl.org

Complaint

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

*Additional Counsel for Plaintiffs:*

ALEX HOLGUIN (Cal. Bar No. 271861)
Dream Act Lawyers
714 W Olympic Blvd, #450
Los Angeles, CA 90015
Telephone: (213) 765-6084
Email: aholguin@dalimmigration.com
(Appearing for Plaintiff El Rescate)

SILVIA AGUIRRE (Cal. Bar No. 254150)
The Aguirre Law Firm, APC
3521 Whittier Blvd
Los Angeles, CA 90023-1709
Telephone: (213) 386-4649
Email: silvia@getjustice.us
(Appearing for Plaintiff El Rescate)

CRISTEL MARTINEZ (Cal. Bar No. 323658)
Law Offices of Martinez, Nguyen & Magana
13200 Crossroads Pkwy. N., Suite 115
Industry, CA 91746
Telephone: (213) 246-2197
Email: abogada@cristelmartinez.com

*Of Counsel:*

JIM TOM HAYNES (DC Bar # 340422)
Haynes Novick Immigration
2001 S Street NW, Suite 550
Washington, DC 20009
Phone: 202-350-3933 direct
Email jimtom@dcimmigrationattorney.com

GENEVIEVE AUGUSTIN (MD Bar # 20079)
Central American Resource Center (CARECEN-DC)
1460 Columbia Road NW, Suite C-1
Washington, DC 20009
Telephone: (202) 328-9799
Email: Genevieve.Augustin@carecendc.org

Complaint

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

*Additional Of Counsel*

FAUSTO FALZONE (FL BAR # 87239)
El Rescate
1605 W. Olympic Blvd., Suite 516
Los Angeles, CA 90015
Telephone: (213) 387-3284
Email: ffalzone@elrescate.org

CARL BERGQUIST (DC BAR # 1720816)
Coalition for Humane Immigrant Rights (CHIRLA)
2533 West Third St., Suite 101
Los Angeles, CA 90057
Telephone: (310) 279-6025
Email: cbergquist@chirla.org

/ / /

Complaint

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

## INTRODUCTION

1.     This is an action for injunctive and declaratory relief challenging certain policies and practices of Defendant Alejandro Mayorkas ("Defendant Mayorkas"), Secretary of U.S. Department of Homeland Security ("DHS"), Defendant Ur M. Jaddou ("Defendant Jaddou"), Director of U.S. Citizenship and Immigration Services ("USCIS"), and Defendant USCIS.

2.     Plaintiffs challenge Defendants' refusal to adjudicate and approve applications for Employment Authorization Documents ("EADs") to minors and youth who State courts have determined have been abused, neglected, or abandoned and have pending or approved petitions for Special Immigrant Juvenile status ("SIJ status"). Many of the individual Plaintiffs and members of the class they seek to represent were unaccompanied minors who fled their home countries after being abused, neglected, or abandoned, or are juveniles who experienced abuse, neglect or abandonment in this country. Congress has granted these minors and youth a clear path to SIJ status and later to file applications for Adjustment of Status to obtain lawful permanent resident status. Defendants adhere to a policy that a SIJ petitioner cannot file applications for or be granted EADs unless and until they are able to file applications for Adjustment of Status to obtain lawful permanent resident status. However, because of visa quota backlogs, many SIJ petitioners cannot file applications for Adjustment of Status for five or six years after filing their SIJ petitions. Defendants' policy, which is an administrative decision not required by any federal law, often forces Plaintiffs and the tens of thousands of class members they seek to represent to go cold, hungry, or homeless for many years, and to work in underground exploitative jobs in order to survive during the years it takes before Defendants allow them to apply for EADs.

3.     Defendants' policy and practice violates the Equal Protection guarantee of the Fifth Amendment. While Defendants' policy forces SIJ petitioners to wait for several years to request and obtain employment authorization, for no rational reason,

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

Defendants allow other vulnerable immigrants filing visa petitions to apply for and be granted employment authorization while their visa petitions are pending or when they are approved, long before they can apply for Adjustment of Status. There is no rational, substantial, or compelling reason for the disparate and discriminatory way in which Defendants treat young abused, neglected, and abandoned immigrants filing SIJ petitions. Defendants' policy irrationally causes Plaintiffs and tens of thousands of class members to often suffer severe and irreparable harms, including hunger, homelessness, and unstable housing, and the need to work in conditions that are exploitative and violate state and federal workplace wage and safety laws. Defendants irrationally discriminate against Plaintiffs and class members despite their playing by the rules and presenting approvable petitions for SIJ status as Congress has authorized.

4. Plaintiffs also challenge Defendants' routine violation of the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008, Pub. L. No. 110-457 ("TVPRA"), codified at 8 U.S.C. §1232(d)(2), which provides in part that "[a]ll applications for special immigrant status under section 101(a)(27)(J) of the Immigration and Nationality Act (8 U.S.C. 1101(a)(27)(J)) *shall* be adjudicated by the Secretary of Homeland Security *not later than 180 days after the date on which the application is filed*." 8 U.S.C. §1232(d)(2) (emphasis added). Defendants routinely flout and exceed the 180-day mandate set forth in 8 U.S.C. §1232(d)(2).

5. By this action, Plaintiffs seek injunctive and declaratory relief on behalf of themselves and all similarly situated applicants for SIJ status requiring that Defendants promptly permit them to work upon their filing of approvable petitions, and thereafter adjudicate their SIJ petitions within 180 days from the date they are filed.

II.

JURISDICTION AND VENUE

6. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 as a civil action arising under the laws of the United States.

7. This Court also has jurisdiction over the Defendants pursuant to 28

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

U.S.C. § 1391(e)(1), because Defendants are agencies and officers of the United States.

8.     Plaintiffs' action for declaratory relief is brought pursuant to 28 U.S.C. §§ 2201 and 2202, and 5 U.S.C. § 703.

9.     Venue is properly in this court pursuant to 28 U.S.C. § 1391(b) and (e)(1), as the acts complained of herein occurred in this district, Plaintiffs Merino, Ajtun and Arevalo reside in and Casa Libre/Freedom House, El Rescate, Clergy and Laity United for Economic Justice (CLUE), and the Salvadoran American Leadership & Educational Fund (SALEF) are located in this judicial district, Defendants have offices in this district, and no real property is involved in this action.

III.

PARTIES

10.     Plaintiff Casa Libre/Freedom House is a state licensed group home in Los Angeles that provides transitional living services and related social and legal services for detained and homeless unaccompanied immigrant minors and youth. *See* www.casalibrela.org. Casa Libre's clients have experienced and continue to experience a range of harms caused by Defendants' refusal to grant employment authorization to SIJ petitioners until their priority dates are current, a process that often takes several years. Defendants' challenged policies and practices make Casa Libre's accomplishment of its core goals far more difficult and diverts its limited resources to assisting former residents facing extreme difficulties trying to survive on their own without employment authorization.

11.     Plaintiff El Rescate is a non-profit organization based in the City of Los Angeles that provides free and low-cost legal services to low-income immigrants, including Central American refugees and juveniles who have been abused, neglected, or abandoned. Defendants' challenged policies and practices make Plaintiff El Rescate's work substantially more difficult and time consuming and diverts its limited resources from the provision of services for other low-income clients.

12.     Plaintiff Clergy and Laity United for Economic Justice (CLUE) is

Complaint                                           3.

headquartered in Los Angeles, CA and is a non-profit corporation consisting of clergy and lay leaders of all faiths with workers, immigrants, and low-income families with a goal of creating a just economy that works for all and protects those most vulnerable. *See* https://www.cluejustice.org/. Plaintiff CLUE has dedicated substantial time and effort to providing housing and services for unaccompanied minors many of whom have been abused, neglected, or abandoned and are therefore eligible for SIJ status. Defendants' challenged policies and practices make CLUE's accomplishment of its goals far more difficult and diverts its limited resources assisting young immigrants who face extreme difficulties trying to survive on their own without employment authorization.

13.  Plaintiff Salvadoran American Leadership & Educational Fund (SALEF) is a non-profit organization based in Los Angeles, California. *See* www.salef.org. SALEF has worked closely with SIJ-eligible immigrant juveniles and SIJ petitioners, including former residents of Plaintiff Casa Libre, referring them for legal representation and providing them with wrap-around services including temporary housing, referrals for medical care, and gang-intervention programs. Defendants' challenged policies and practices make Plaintiff SALEF's work substantially more difficult and time consuming and diverts its limited resources from the provision of services for other low-income clients.

14.  Plaintiff Central American Resource Center – DC (CARECEN-DC) is a non-profit organization based in Washington, DC. *See* https://carecendc.org/. It provides screening, advice, referrals, and immigration legal services to immigrants and asylum seekers. It provides advice and referrals to SIJ eligible immigrant juveniles and assists those with approved SIJ petitions to apply for employment authorization and adjustment of status. Defendants' challenged policies and practices make Plaintiff CARECEN-DC's work substantially more difficult and time consuming and diverts its limited resources from the provision of services for other low-income clients.

15.  Plaintiff La Raza Centro Legal, Inc. is a community-based legal services organization dedicated to empowering Latino, immigrant, and low-income

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

communities throughout the Bay Area in California, and advocating for their civil and human rights. *See* https://lrcl.org/. Plaintiff La Raza Centro Legal, Inc. represents abused, neglected, and abandoned SIJ eligible immigrant juveniles. Defendants' challenged policies and practices make Plaintiff La Raza Centro Legal, Inc.'s work substantially more difficult and time consuming and diverts its limited resources from the provision of services for other low-income clients.

16. Plaintiff Rene Gabriel Flores Merino ("Plaintiff Merino") is a resident of Los Angeles County, California. On or about November 9, 2021, USCIS approved Plaintiff Merino's SIJ status. Because pursuant to Defendants' challenged policies Plaintiff Merino is ineligible to receive employment authorization for several more years, Plaintiff Merino has experienced and continues to experience a range of harms including, but not limited to, inability to secure stable employment and housing.

17. Plaintiff Hildner Eduardo Coronado Ajtun ("Plaintiff Ajtun") is a resident of Los Angeles, California. On or about January 5, 2021, USCIS approved Plaintiff Ajtun's SIJ petition. Because pursuant to Defendants' challenged policies Plaintiff Ajtun is ineligible to receive employment authorization for several more years, he has experienced and continues to experience a range of harms including, but not limited to, inability to secure stable employment and housing.

18. Plaintiff Carlos Abel Hernandez Arevalo ("Plaintiff Arevalo") is a resident of Los Angeles County, California. On or about December 8, 2021, Plaintiff Arevalo filed a SIJ petition with the USCIS. Pursuant to Defendants' challenged policy and practice, Plaintiff Arevalo is ineligible to receive employment authorization for several years until he is eligible to apply for Adjustment of Status. Because of Defendants' challenged policies he has experienced and continues to experience a range of harms including, but not limited to, inability to secure stable employment and housing, and an inability to continue his education.

19. Plaintiff Axel Yafeth Mayorga Aguilera ("Plaintiff Aguilera") is a resident of Alexandria, Virginia. Plaintiff Aguilera is eligible for and on or about August 29, 2019, applied for SIJ status. Under Defendants' policy Plaintiff Aguilera

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

is not eligible to receive employment authorization until his priority date becomes current so that he can apply for Adjustment of Status. As a result of Defendants' policy and practice, Plaintiff Aguilera has experienced and continues to experience a range of harms including, but not limited to, securing a stable job with lawful wages and constant exposure to housing instability.

20. Plaintiff Rene Isai Serrano Montes ("Plaintiff Montes") is a resident of Los Angeles, California. Plaintiff Montes is eligible for and on August 30, 2021 applied for SIJ status. Under Defendants' policy Plaintiff Montes is not eligible to receive employment authorization for several years until his priority date becomes current and he can apply for Adjustment of Status. As a result of Defendants' policies and practices, Plaintiff Montes' SIJ application has not been adjudicated within six months of submission, and he has experienced and continues to experience a range of harms including, but not limited to, securing a stable job with lawful wages.

21. Plaintiff Pamela Alejandra Rivera Cambara ("Plaintiff Cambara") is a resident of Los Angeles, California. Plaintiff Cambara is eligible for and on or about July 1, 2021 applied for SIJ status. Under Defendants' policy Plaintiff Montes is not eligible to receive employment authorization for several years until her priority date becomes current and she can apply for Adjustment of Status. As a result of Defendants' policies and practices, Plaintiff Cambara's SIJ application has not been adjudicated within six months of submission, and she has experienced and continues to experience a range of harms including, but not limited to, securing a job with lawful wages while attending school.

22. Defendant Alejandro Mayorkas is the Secretary of the Department of Homeland Security ("DHS") and is sued in his official capacity. Defendant Mayorkas is charged with the administration of the DHS and implementation of the Immigration and Nationality Act. As such, pursuant to 8 U.S.C. §1103(a), he is authorized to issue EADs to applicants for SIJ status. Pursuant to 8 U.S.C. §1232(d)(2), he is directed to adjudicate all SIJ petitions no later than 180 days after the date on which the petition was filed.

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

23.     Defendant Jaddou is the Director of the U.S. Citizenship and Immigration Services, a component agency of DHS and the Government of the United States. She is sued in her official capacity. Defendant Jaddou and USCIS are responsible for administering the nation's immigration laws. Amongst other tasks, Defendant and USCIS oversee the adjudication of petitions for SIJ and for employment authorization. *See* Section 451(b) of the Homeland Security Act of 2002, Pub. L. 107-296 (PDF), 116 Stat. 2135, 2205 (November 25, 2002); 6 U.S.C. § 271; 8 CFR § 274a.12.

24.     Defendant USCIS is a component agency of DHS and the Government of the United States. Defendant USCIS is responsible for administering the nation's immigration system. Amongst other tasks, Defendant oversees the adjudication of petitions for SIJ and applications for employment authorization. *See* Section 451(b) of the Homeland Security Act of 2002, Pub. L. 107-296 (PDF), 116 Stat. 2135, 2205 (November 25, 2002); 6 U.S.C. § 271; 8 CFR § 274a.12.

IV.

STATEMENT OF FACTS

A.     <u>Basic SIJ Statutes and Rules</u>

25.     Congress created the SIJ status in 1990 as a means of alleviating "hardships experienced by some dependents of United States juvenile courts by providing qualified aliens with the opportunity to apply for special immigrant classification and lawful permanent resident status, with possibility of becoming citizens of the United States in the future." 58 Fed. Reg. 42843, 42844 (Aug. 12, 1993). SIJ status is available if:

(i)     [the juvenile immigrant] has been declared dependent on a juvenile court located in the United States or whom such a court has legally committed to, or placed under the custody of, an agency or department of a State, or an individual or entity appointed by a State or juvenile court located in the United States, and whose reunification with 1 or both of the immigrant's parents is not viable due to abuse, neglect, abandonment, or a similar basis found under State law;

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

(ii)    [it] has been determined in administrative or judicial proceedings that it would not be in the alien's best interest to be returned to the alien's or parent's previous country of nationality or country of last habitual residence; and

(iii)    … the Secretary of Homeland Security consents to the grant of special immigrant juvenile status ....

8 U.S.C. §1101(a)(27)(J). If granted, SIJ status provides a pathway to lawful permanent residency and, ultimately, citizenship. See 8 U.S.C. §§1255, 1427.

26.    The CJS 1998 Appropriations Act revised the SIJ definition to specifically cover juveniles eligible for long-term foster care "due to abuse, neglect, or abandonment…" Departments of Commerce, Justice, and State, the Judiciary, and Related Agencies Appropriations Act, 1998, H.R. 2267, 105th Cong., at 22 (1998).

27.    To further protect immigrant youth who had been abused, neglected, or abandoned, in the 2005 Violence Against Women Act, Pub. L. No. 109-162, 119 Stat. 2960, Congress added section 287(h) to the INA, "protecting a child applying for SIJ status from being compelled to contact the child's alleged abuser or any family members of the abuser." Special Immigrant Juvenile Petitions ("Special Immigrant Juvenile Petitions") 76 Fed. Reg. 54978, 54979 (proposed Sept. 6, 2011); *see also* 8 U.S.C. 1357(h).

28.    In 2008, Congress passed the Trafficking Victims Protection Reauthorization Act 2008 ("TVPRA"), Pub. L. No. 110-457, §235(d), 112 Stat. 5044 (2008), which *inter alia* replaced a foster care requirement with more expansive language providing that prior to applying for SIJ status, a state court had to issue a finding that "reunification with one or both of the immigrant's parents is not viable due to abuse, neglect, abandonment, or a similar basis found under State law." TVPRA §235(d)(1)(A); INA § 101(a)(27)(J)(i), 8 U.S.C. 1101(a)(27)(J)(i).

29.    The TVPRA also clarified that an applicant's eligibility for SIJ status is dependent on the juvenile's age at the time he or she applied for SIJ status rather than at the time the petition was processed. *Id*. §235(d)(6). It also made SIJ status available to juveniles who had been "legally committed to, or placed under the custody of, an

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

agency or department of a State, or an individual or entity appointed by a State or juvenile court" in addition to those who had been "declared dependent on a juvenile court." §235(d)(1)(B) (amending 8 U.S.C. §1101(a)(27)(J)).

30.    Following enactment of the TVPRA, a petitioner for SIJ status must be (a) under twenty-one years of age, (b) unmarried, (c) declared dependent on a juvenile court or placed in the custody of a state agency or individual appointed by the court, and (d) the subject of state court findings that (i) reunification with one or both parents is not viable because of abuse, neglect, abandonment, or similar basis under state law and (ii) it is not in the juvenile's best interests to be returned to his or her country of origin. Despite the amendments, the implementing regulations continue to reference pre-TVPRA statutory text conditioning SIJ status on eligibility for long-term foster care. *See* 8 C.F.R. §204.11(a), (c)(4)–(5) (2009) ("SIJ regulation").

31.    Section 153(b)(1) of the Immigration Act of 1990, P.L. 101-649, §153(b)(1), assured that certain specified deportation grounds "shall not apply to [SIJ applicants] … based upon circumstances that exist before the date the alien was provided such special immigrant status." Act, §153(b)(1) at 29; 8 U.S.C. §1251(c); 8 U.S.C. §1227(c).

32.    The adjustment of status statute, 8 U.S.C. §1255(h), provides in part that "[i]n applying this section to a special immigrant described in section 1101(a)(27)(J) of this title - (1) such an immigrant shall be deemed, for purposes of subsection (a), to have been paroled into the United States; and (2) in determining the alien's

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

admissibility as an immigrant-(A) paragraphs (4)[1], (5)(A)[2], (6)(A)[3], (6)(C)[4], (6)(D)[5], (7)(A)[6], and (9)(B)[7] of section 1182(a) of this title shall not apply; and (B) the Attorney General may waive other paragraphs of section 1182(a) of this title

---

[1] Paragraph 4 provides, in part, that any noncitizen "who ... in the opinion of the Attorney General at the time of application for admission or adjustment of status, is likely at any time to become a public charge is inadmissible." 8 U.S.C. § 1182(a)(4).

[2] Paragraph 5(A) provides, in part, that any noncitizen "who seeks to enter the United States for the purpose of performing skilled or unskilled labor is inadmissible, unless the Secretary of Labor has determined and certified to the Secretary of State and the Attorney General that "there are not sufficient workers who are able, willing, qualified…and available at the time of application for a visa." 8 U.S.C. § 1182(a)(5)(A).

[3] Paragraph 6(A) provides, in part, that a noncitizen "present in the United States without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the Attorney General, is inadmissible." 8 U.S.C. § 1182(a)(6)(A).

[4] Paragraph 6(C) provides, in part, that any noncitizen "who, by fraud or willfully misrepresenting a material fact, seeks to procure ... a visa ... or admission into the United States ... is inadmissible." 8 U.S.C. § 1182(a)(6)(C).

[5] Paragraph 6(D) provides, in part, that any noncitizen "who is a stowaway is inadmissible." 8 U.S.C. § 1182(a)(6)(D).

[6] Paragraph 7(A) provides, in part, that any immigrant "(I) who is not in possession of a valid unexpired immigrant visa ... or other valid entry document ... and a valid unexpired passport, or other suitable travel document ... or (II) whose visa has been issued without compliance with the provisions of section 1153 of this title, is inadmissible." 8 U.S.C. § 1182(a)(7)(A).

[7] Paragraph 9(B) provides, in part, that any noncitizen "(other than a[] [noncitizen] lawfully admitted for permanent residence) who-(I) was unlawfully present in the United States for a period of more than 180 days but less than 1 year, voluntarily departed the United States…prior to the commencement of proceedings…and again seeks admission within 3 years of the date of such alien's departure ... or (II) has been unlawfully present in the United States for one year or more, and who again seeks admission within 10 years of the date of such alien's departure or removal ...from the United States, is inadmissible." 8 U.S.C. § 1182(a)(9)(B).

Complaint                                    10.

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

(other than paragraphs (2)(A)[8], (2)(B)[9], (2)(C)[10] ...” 8 U.S.C. §1255(h).

33.     Under Defendants' challenged policy and practice, SIJ petitioners must wait until their "priority dates" are "current" to file Adjustment of Status applications before they may apply for employment authorization. Pursuant to 8 CFR § 274a.12(c)(9), as applicable to SIJ petitioners, the "classes of aliens authorized to accept employment [include] … [a]n alien who has filed an application for adjustment of status to lawful permanent resident pursuant to part 245 of this chapter." 8 CFR § 274a.12(c)(9); *see also* USCIS, INSTRUCTIONS FOR APPLICATION FOR EMPLOYMENT AUTHORIZATION, at 1, 15 (Aug. 25, 2020), https://www.uscis.gov/sites/default/files/document/forms/i-765instr.pdf ("You may file Form I-765 if you…[are an] Adjustment Applicant under Section 245--(c)(9). File Form I-765 together with Form I-485, Application to Register Permanent Residence or Adjust Status…").

34.     8 U.S.C. § 1255(a) provides in part that an immigrant may be granted lawful permanent residence if the immigrant (1) makes an application for such adjustment, (2) is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) "an immigrant visa is immediately available to him *at the time his application is filed*." 8 U.S.C. § 1255(a) (emphasis added). *See also* 8 CFR § 245.1(a) ("Any [noncitizen] who is physically present in the United States ... may apply for adjustment of status to that of a lawful permanent resident of

---

[8] Paragraph (2)(A) provides, in part, that any noncitizen "convicted of, or who admits having committed ... (I) a crime involving moral turpitude (other than a purely political offense) or an attempt or conspiracy to commit such a crime, or (II) a violation of ... any law or regulation ... relating to a controlled substance ... is inadmissible." 8 U.S.C. § 1182(a)(2)(A).

[9] Paragraph (2)(B) provides, in part, that any noncitizen "convicted of 2 or more offenses ... regardless of whether the conviction was in a single trial ... for which the aggregate sentences to confinement were 5 years or more is inadmissible." 8 U.S.C. § 1182(a)(2)(B).

[10] Paragraph (2)(C) provides, in part, that any noncitizen "who the consular officer or the Attorney General knows or has reason to believe-(i) is or has been an illicit trafficker in any controlled substance ... is inadmissible." 8 U.S.C. § 1182(a)(2)(C).

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

the United States if the applicant is eligible to receive an immigrant visa and an immigrant visa is immediately available at the time of filing of the application…"). 8 CFR § 245.1(g)(1) similarly provides that an immigrant "is ineligible for the benefits of section 245 of the Act unless an immigrant visa is immediately available to him or her at the time the application is filed."

35.    In terms of visa availability, SIJ recipients are subject to the fourth preference employment-based (EB-4) category, 8 U.S.C. §1153(b)(4), which is allocated 7.1% of the 140,000 visas generally available for employment-based visas per year, or approximately 9,940 visas per year. 8 U.S.C. § 1153(b)(4) ("Visas shall be made available, in a number not to exceed 7.1 percent of such worldwide level, to qualified special immigrants described in section 1101(a)(27) of this title…"). Per 8 U.S.C. § 1153(b)(4), the 9,940 total applies to all "special immigrants described in section 1101(a)(27) of this title," not just immigrants granted SIJ status. *Id.* Plaintiffs are unaware of any authority indicating how many visas are reserved particularly for SIJs.

36.    Pursuant to 8 U.S.C. § 1152(a)(2), with certain exceptions, "the total number of immigrant visas made available to natives of any single foreign state or dependent area under subsections (a) and (b) of section 1153 of this title in any fiscal year may not exceed 7 percent (in the case of a single foreign state) ... of the total number of such visas made available under such subsections in that fiscal year." *Id.* 7 percent of approximately 9,940 means that each country is allocated about 696 visas per year.

37.    Only when a SIJ petitioner's priority date is current in the 'EB-4' preference category is the petitioner permitted to apply for permanent resident status.

38.    At this stage, many years after young immigrants applied for SIJ visas, Defendants finally allow SIJ applicants to apply for work permits. Defendants' challenged policy and practice is that SIJ petitioners are only eligible to apply for employment authorization when they have reached the front of the visa line (*i.e.*, their "priority date" is current), and they may file applications for Adjustment of Status.

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

39.     Based on the Visa Bulletin for March 2022, the current priority date for the EB-4 preference category for El Salvador, Guatemala, and Honduras is May 1, 2017. Visa Bulletin for March 2022, U.S. DEPT. STATE, https://travel.state.gov/content/travel/en/legal/visa-law0/visa-bulletin/2022/visa-bulletin-for-march-2022.html (last visited March 2, 2022).[11] In short, as of March 1, 2022, only youth from El Salvador, Guatemala, and Honduras who filed their SIJ petitions before about May 1, 2017, may apply for adjustment of status and employment authorization. Even then, it takes Defendants close to a year on average before they approve Plaintiffs' and class members' employment authorization applications. USCIS, CHECK CASE PROCESSING TIMES, https://egov.uscis.gov/processing-times/home (last visited Jan. 14, 2022). The March 2022 Final Action Dates are a significant two-year retrogression from what they were just a month ago; in February 2022, the Final Action Dates for El Salvador, Guatemala, and Honduras was March 15, 2019. Visa Bulletin for February 2022, U.S. DEPT. STATE, https://travel.state.gov/content/travel/en/legal/visa-law0/visa-bulletin/2022/visa-bulletin-for-february-2022.html. A two-year retrogression is a significant blow for juveniles escaping abuse, neglect, and abandonment, and inflicts even greater hardships given that the wait for both adjustment of status and a work permit is now about five or six years from the time they filed their SIJ petitions.

B.    Facts Regarding the Plaintiffs

40.     Plaintiff Merino is a resident of Los Angeles, California. Plaintiff Merino is a citizen and native of El Salvador. Plaintiff Merino is 20 years of age. Plaintiff Merino entered the United States on or about August 6, 2016, at or near El Paso, Texas.

41.     Subsequent to entry Plaintiff Merino was declared an "unaccompanied alien child," as defined in 6 U.S.C. §279(g)(2) ("unaccompanied minor"), by the Department of Homeland Security ("DHS"). The U.S. Border Patrol turned Plaintiff Merino over to the custody of the Office of Refugee Resettlement, U.S. Department

---

[11] The current priority date for citizens of Mexico is April 1, 2020. *Id.*

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

of Health and Human Services ("ORR").

42. Plaintiff Merino was released to an uncle on September 10, 2016, and subsequently transferred into Plaintiff Casa Libre/Freedom House on September 25, 2018. Plaintiff Merino resided at Casa Libre until about April 3, 2021. Casa Libre staff continue to provide Plaintiff Merino with support services made all the more necessary by Defendants' refusal to permit Plaintiff Merino to apply for or receive employment authorization.

43. On or about October 16, 2020 the Los Angeles County Superior Court issued Orders finding that Plaintiff Merino had been neglected and abandoned and that reunification with Plaintiff Merino's parents was not viable due to abandonment and neglect.

44. On or about October 22, 2019, Plaintiff Merino filed a SIJ petition. On November 9, 2021, long after the six months within which the law requires such petitions to be adjudicated, Defendants approved Plaintiff Merino's SIJ petition. However, Defendants' policy and practice do not permit Plaintiff Merino to file an application for employment authorization for several more years until Plaintiff Merino is eligible to apply for Adjustment of Status under INA § 245.

45. While under Defendants' challenged policy Plaintiff Merino is not eligible to apply for or receive employment authorization, Plaintiff Merino nevertheless has forwarded a completed employment authorization application to Defendants. Because Plaintiff Merino is not eligible to receive employment authorization, Plaintiff Merino has experienced and continues to experience a range of irreparable harms including but not limited to housing insecurity, an inability to secure a stable job with lawful wages, and an inability to afford basic living expenses including for food and clothing. The lack of work authorization prevents Plaintiff Merino from obtaining a social security number or accessing unemployment insurance and social security benefits.

46. Plaintiff Merino is currently enrolled in college and, as a student without a job, has found it increasingly difficult to afford books, school supplies, and tuition.

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

Plaintiff Merino is often forced to attend classes without access to the essential materials needed to successfully complete college courses.

47. Plaintiff Merino is currently living at a shelter for homeless youth. Plaintiff Merino cannot afford a place to live and has relied on shelters like Casa Libre to provide temporary housing and food. However, these shelters do not provide long term housing, and Plaintiff Merino may soon be forced to move out of the shelter where Plaintiff Merino now resides. Unless able to obtain a valid work permit, Plaintiff Merino will be at high risk of homelessness.

48. Plaintiff Ajtun is a resident of Los Angeles, California. He is a citizen and native of Guatemala. He is currently 20 years of age. Plaintiff Ajtun entered the United States on or about October 2, 2018. He left his home country because he did not feel safe there after being attacked and robbed several times by gang members. Plaintiff Ajtun's parents sent him to the United States without parental supervision and without ensuring that someone would be able to care for him when he arrived in the U.S.

49. Plaintiff Ajtun entered the U.S. at the Mexicali Port of Entry. The U.S. Border Patrol turned him over to the custody of the ORR, which detained him for about three months.

50. Plaintiff Ajtun was released to Plaintiff Casa Libre/Freedom House on January 7, 2019, and resided in the shelter until March 2020. Casa Libre staff continue to provide Plaintiff Ajtun with support services made all the more necessary by Defendants' refusal to permit him to apply for or receive employment authorization.

51. On or about December 12, 2019, the Los Angeles County Superior Court issued Orders finding that Plaintiff Ajtun had been neglected and that reunification with his parents was not viable due to neglect. It also found it was not in his best interest to be returned to his country of origin.

52. On March 13, 2020, Plaintiff Ajtun filed a SIJ petition with USCIS. On January 5, 2021, long after it was required to adjudicate his petition, Defendants finally approved Plaintiff Ajtun's SIJ petition. Defendants' policy and practice do not permit Plaintiff Ajtun to receive an application for employment authorization for several more

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

years until he is eligible to apply for adjustment of status under INA § 245.

53.    While under Defendants' challenged policy Plaintiff Ajtun is not eligible to apply for or receive employment authorization, he has nevertheless forwarded a completed employment authorization application to Defendants. Because he is not eligible to receive employment authorization, Plaintiff Ajtun has experienced and continues to experience a range of irreparable harms including but not limited to housing insecurity, employment exploitation, and inability to secure a stable job with lawful wages. In 2019 and 2020 he was forced to work for an unlicensed contractor under unsafe and exploitative working. The employer violated federal employer sanctions laws (8 U.S.C. § 1324a) by hiring Plaintiff Ajtun. Plaintiff Ajtun was illegally paid below the minimum wage and was often forced to work without pay for several weeks.

54.    Although Plaintiff Ajtun knew that he was being exploited, when working he was afraid to report labor law and health and safety law violations to any state or federal authorities as he feared retaliation by his employer, who knew Plaintiff Ajtun was not authorized to be employed. Plaintiff Ajtun was threatened by his employer that it would contact immigration authorities and have him arrested and deported if he complained to authorities about his working conditions.

55.    To this date, Plaintiff Ajtun continues to experience unfair treatment, exploitation, unfair wages, and unsafe working conditions

56.    Plaintiff Aguilera is a resident of Alexandria, Virginia. He is a citizen and native of Honduras. He is currently 20 years of age. In Honduras Plaintiff Aguilera was harassed, kidnapped, and beaten by gang members. Plaintiff Aguilera's father abandoned and neglected him and his mother neglected him and forced him to work rather than attend school from the age of thirteen. Plaintiff Aguilera fled Honduras as a result of gang threats and neglect and abandonment by his parents.

57.    On or about February 21, 2018, Plaintiff Aguilera entered the United States as an unaccompanied minor at or near the Calexico, California Port of Entry. The U.S. Border Patrol turned him over to the custody of the ORR, which detained

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

him for about thirteen months. Plaintiff Aguilera was then released to Plaintiff Casa Libre/Freedom House on or about March 19, 2019 and resided in the shelter until about April 2020

58. On August 27, 2019, the Los Angeles County Superior Court issued Orders finding that Plaintiff Aguilera's father abandoned and neglected him shortly after he was born and his mother neglected him. The Court also found that reunification with his parents was not viable due to neglect. It also found it was not in his best interest to be returned to his country of origin

59. Plaintiff Aguilera is eligible for and on or about August 29, 2019, applied for SIJ status. On March 13, 2020, Defendants approved Plaintiff Aguilera's SIJ petition.

60. While under Defendants' challenged policy Plaintiff Aguilera is not eligible to apply for or receive employment authorization because he's from Honduras and his priority date is August 29, 2019, he has nevertheless forwarded a completed employment authorization application to Defendants. Under Defendants' challenged policy and procedure Plaintiff Aguilera is not eligible to receive employment authorization for several more years until his priority date is current so that he can apply for permanent resident status. As a result of the challenged policy and practice, Plaintiff Aguilera has experienced and continues to experience a range of harms including, but not limited to securing a stable job with lawful wages and exposure to constant housing instability. When he has worked, Plaintiff Aguilera was illegally paid below the minimum wage.

61. Plaintiff Arevalo is a resident of Los Angeles County, California. He is a citizen and native of Honduras. He is 20 years of age. When Plaintiff Arevalo was four years old, he was abandoned by his parents in Honduras. He had no adults to rely on and for many years was homeless until entering the United States.

62. Plaintiff Arevalo does not know his parents' whereabouts. He had no one to rely on in his home country and he lived in fear of being kidnapped and murdered by gang members. When he was seventeen years old, he fled Honduras to seek safety

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

in the United States.

63. Plaintiff Arevalo entered the United States on or about February 25, 2019, at or near San Ysidro Port of Entry. He was held in ORR's Southwest Key facility from about February 26, 2019, to about March 2019 and was then transferred to the care of Plaintiff Casa Libre/Freedom. Upon his transfer into Casa Libre, Plaintiff Arevalo began to learn English with the help of Casa Libre staff and was enrolled in school.

64. On or about October 8, 2019, the Los Angeles County Superior Court issued Orders finding that Plaintiff Arevalo had been abandoned and neglected by his parents and it would not be in his best interest to return to his country of origin. The Court found that his parents' abandonment left Plaintiff Arevalo vulnerable to homelessness and without any provision for support in Honduras.

65. On December 8, 2021, Plaintiff Arevalo filed a SIJ petition with Defendants. His petition remains pending.

66. While under Defendants' challenged policy Plaintiff Arevalo is not eligible to apply for or receive employment authorization because his priority date is December 8, 2021, he has nevertheless forwarded a completed employment authorization application to Defendants. Under Defendants' challenged policy and procedure Plaintiff Arevalo is not eligible to receive employment authorization for several years until his priority date is current and he can apply for permanent resident status.

67. As a result of the challenged policy and practice, Plaintiff Arevalo has experienced and continues to experience a range of harms including, but not limited to inability to secure a stable job with lawful wages and exposure to constant housing instability. Plaintiff Arevalo currently has temporary housing in a shelter in Los Angeles. Without employment authorization, when required to leave his temporary housing he will not be able to afford stable housing.

68. Plaintiff Montes is a resident of Los Angeles, California. He is a citizen and native of Honduras. He is currently 21 years of age. Plaintiff Montes never met his father, who was killed when Plaintiff Montes was about five months old. When

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

Plaintiff Montes was three years old, his mother left him at the care of his grandmother. After moving in with his grandmother, Plaintiff Montes had little communication with his mother. Plaintiff Montes grew up in poverty with his grandmother. He was not able to finish high school in Honduras due to inadequate financial support.

69. Plaintiff Montes entered the United States on or about 2018 to flee from gangs, poverty, and violence in Honduras. On August 27, 2021, the Los Angeles County Superior Court issued Orders finding that Plaintiff Montes had been abandoned by both his parents. The Court also found that reunification with his parents was not viable due to said abandonment. It also found it was not in his best interest to be returned to his country of origin.

70. Plaintiff Montes is eligible for and on or about August 30, 2021, applied for SIJ status. More than six months later, his petition remains pending. At Defendants' current rate of processing, his SIJ petition will not be adjudicated for several more months, significantly longer than the six months required by statute.

71. Under Defendants' challenged policy and procedure Plaintiff Montes is also not eligible to receive employment authorization for several years until his priority date is current and he can apply for permanent resident status.

72. As a result of the challenged policy and practice, Plaintiff Montes has experienced and continues to experience a range of harms including, but not limited to inability to secure a stable job with lawful wages and exposure to constant housing instability.

73. Plaintiff Cambara is a resident of Los Angeles, California. She is a citizen and native of El Salvador.

74. Plaintiff Cambara entered the United States when she was thirteen years old. On June 1, 2021, the Los Angeles County Superior Court issued Orders finding that Plaintiff Cambara had been abandoned by her father. The Court also found that reunification with her father was not viable due to said abandonment. It also found that it was not in her best interest to be returned to her country of origin.

75. Plaintiff Cambara is eligible for and on or about July 1, 2021, applied for

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

SIJ status. More than six months later, her petition remains pending. At Defendants' current rate of processing, her SIJ petition will not be adjudicated for several more months, significantly longer than the six months required by statute.

76. Under Defendants' challenged policy and procedure Plaintiff Cambara is not eligible to receive employment authorization for several years until her priority date is current and she can apply for permanent resident status.

77. As a result of the challenged policy and practice, Plaintiff Cambara has experienced and continues to experience a range of harms including, but not limited to, inability to secure stable employment to help with household expenses while she attends school.

78. The Plaintiff organizations provide free social and legal services to SIJ petitioners, and their task is made far more difficult and diverts their limited resources because of Defendants' challenged policy and procedure which leaves their SIJ clients without stable incomes and housing.

C.     <u>Defendants make employment authorization available to numerous categories of visa applicants but not to SIJ petitioners</u>

79. Discretionary employment authorization is established by regulation 8 CFR 274a.12(c) and is based on the Secretary's statutory authority under INA § 103(a), as well as the provision at INA § 274A(h)(3). *See also* USCIS Policy Manual, Chapter 1 - Purpose and Background Vol. 10, Part b, Chapter 1 (Current as of February 23, 2022) available at [https://www.uscis.gov/policy-manual/volume-10-part-b-chapter-1#footnote-2](https://www.uscis.gov/policy-manual/volume-10-part-b-chapter-1#footnote-2) (last checked March 1, 2022).

80. SIJ petitioners have by definition already been determined by State courts to have been abused, neglected, or abandoned, and that it would not be in their best interest to return to their home countries. Their SIJ petitions are therefore almost universally approvable.

81. Unlike with SIJs petitioners, Defendants permit other vulnerable petitioners for temporary or permanent residence to apply for employment authorization when their underlying petitions or applications are pending and before

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

they can apply for lawful permanent resident status.

82. For example, created by The Victims of Trafficking and Violence Protection Act of 2000, Pub. L. No. 106-386, 114 Stat. 1464-1548 (2000), T-1 nonimmigrant beneficiaries are victims of trafficking. 22 U.S.C. §7105, the statute outlining "protection and assistance for victims of trafficking," says nothing about the issuance of employment authorization to T-1 nonimmigrant applicants. 8 CFR § 214.11 states that "[a]n alien granted T-1 nonimmigrant status is authorized to work incident to status. There is no need for an alien to file a separate form to be granted employment authorization." 8 CFR § 214.11(d)(11). Bona fide T-1 nonimmigrant applicants may apply for and be granted employment authorization *before* their T visa applications are adjudicated. 8 CFR § 214.11(e). USCIS policy states that "DHS is authorized to grant an EAD in connection with a bona fide determination [of T visa petitions] …Once an application is deemed bona fide ... the applicant can request employment authorization ... *See* 8 CFR 274a.12(c)(14)." 81 Fed. Reg. 92266, 92285 (Dec. 19, 2016). A 2009 Memorandum from Acting USCIS Deputy Director Aytes confirms "[i]f a[ ] [T visa] application is deemed bona fide, USCIS will provide written confirmation to the applicant and use various means ... whether through continued presence or as a result of a bona fide determination, [to] grant[ ] employment authorization ..." *Id*.

83. The statute authorizing the issuance of Temporary Protected Status ("TPS") says nothing about the issuance of employment authorization to TPS applicants. TPS applicants, who unlike SIJ petitioners are *not* authorized to eventually seek lawful permanent resident status, can simultaneously file a request for employment authorization with their Form I-821, Application for Temporary Protected Status. *See* INSTRUCTIONS FOR APPLICATION FOR EMPLOYMENT AUTHORIZATION, at 6. 8 CFR § 244.12(a) states that "[u]pon approval of an application for Temporary Protected Status, USCIS shall grant an employment authorization document." 8 CFR § 244.12(a). However, Defendants' policy provides that "USCIS will review your case to determine whether you are eligible to work

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

*before* we make a final decision on your TPS application. If you are found to be eligible upon initial review of your TPS application (prima facie eligible) you will receive an EAD." USCIS, TEMPORARY PROTECTED STATUS, https://www.uscis.gov/humanitarian/temporary-protected-status (last updated Dec. 21, 2021) (emphasis added).

84.     Section 203 of The Nicaraguan Adjustment and Central American Relief Act ("NACARA"), Pub. L. No. 105-100, and 8 U.S.C. § 1101 allows certain immigrants from Nicaragua, Cuba, El Salvador, Guatemala and countries of the former Soviet Union to seek status. The statute does not address the issuance of employment authorization to NACARA applicants. However, regulatory language at 8 CFR § 274a.12(c)(10), provides that "[a]n alien who has filed an application for … special rule cancellation of removal under section 309(f)(1) of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, enacted as Pub. L. 104-208 (110 Stat. 3009-625) (as amended by the Nicaraguan Adjustment and Central American Relief Act (NACARA))…[may] apply for work authorization." 8 CFR § 274a.12(c)(10). NACARA applicants are permitted to apply for and be granted employment authorization when filing their Applications for Suspension of Deportation or Special Rule Cancellation of Removal (Pursuant to Section 203 of Public Law 105-100 (NACARA)). *See* INSTRUCTIONS FOR APPLICATION FOR EMPLOYMENT AUTHORIZATION, *Id.* at 7 ("If you are eligible to apply for NACARA 203 relief with USCIS, you may file Form I-765 together with your Form I-881."); *see also* 8 CFR § 274a.12(c)(10).

85.     On June 14, 2021, Defendants released a directive entitled "Bona Fide Determination Process for Victims of Qualifying Crimes, and Employment Authorization and Deferred Action for Certain Petitioners" ("Policy Alert") revising the guidelines for employment authorization permits for applicants for U status. USCIS, POLICY ALERT (June 14, 2021), https://www.uscis.gov/sites/default/files/document/policy-manual-updates/20210614-VictimsOfCrimes.pdf. U visa applicants are immigrants who were

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

victims of serious crimes, suffered serious injury, and cooperated with law enforcement in the investigation or prosecution of the crime. Because of the "growing backlog awaiting placement on the waiting list or final adjudication," not unlike the SIJ backlog, USCIS has "decided to exercise its discretion under INA 214(p)(6) to conduct bona fide determinations (BFD) and provide EADs [work authorization] and deferred action to [U visa applicants] with pending, bona fide petitions who meet certain discretionary standards." USCIS, POLICY ALERT at 2.

86. In summary, Defendants have the authority to issue employment authorization to SIJ petitioners. For no rational or compelling reason, unlike with young and often vulnerable SIJ petitioners, Defendants extend relatively prompt employment authorization to a range of applicants before their applications are adjudicated and before their priority dates become current allowing them to apply for adjustment to lawful permanent resident status. Nothing in the legislative scheme suggests that this discrimination against immigrant minors and youth who have been abused, neglected, or abandoned, is something Congress required or intended.

D. Unreasonable Delay

87. In the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008, codified at 8 U.S.C. §1232(d)(2), Congress prioritized the adjudication of SIJ petitions filed by vulnerable youth by clearly providing that "[a]ll applications for special immigrant status under section 101(a)(27)(J) of the Immigration and Nationality Act (8 U.S.C. 1101(a)(27)(J)) *shall* be adjudicated by the Secretary of Homeland Security *not later than 180 days after the date on which the application is filed*." 8 U.S.C. §1232(d)(2) (emphasis added).

88. Defendants routinely flout and exceed the 180-day mandate set forth in 8 U.S.C. §1232(d)(2). Current processing times of SIJ petitions often may exceed Congress's 180-day mandate. Defendants acknowledge that processing times have historically ranged from as prompt as 5.5 months to 16.8 months or longer. USCIS, HISTORICAL NATIONAL MEDIAN PROCESSING TIME (IN MONTHS) FOR ALL USCIS OFFICES FOR SELECT FORMS BY FISCAL YEAR, https://egov.uscis.gov/processing-

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

times/historic-pt (last visited Dec. 13, 2021).

89.     Plaintiff Montes's SIJ petition has been pending for nearly seven months. Plaintiff Cambara's SIJ petition has been pending for eight months. Plaintiff Merino's SIJ petition, for example, was pending for over two years before being approved.

90.     Defendants' delay in adjudicating SIJ petitions violates both 8 U.S.C. §1232(d)(2) and the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2)(A), because it is inconsistent with the governing statute.

91.     The APA provides an avenue through which to compel timely agency action: it grants courts the power to compel "agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. §706(1). When determining whether an agency has acted within "a reasonable time" for purposes of 5 U.S.C. §555(b), the timeline established by Congress serves as the frame of reference.

## V.

## CLASS ACTION ALLEGATIONS

92.     The named individual Plaintiffs bring this action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(2) and (3) on behalf of themselves and the following similarly situated proposed class members:

(a) All persons who have or will submit SIJ petitions (Form I-360) to the United States Citizenship and Immigration Services ("USCIS"), and who are deemed ineligible to apply for or receive employment authorization until their priority dates are current and they may apply for Adjustment of Status.

(b) All persons who have or will submit SIJ petitions (Form I-360) to the USCIS, and whose SIJ petitions have not been adjudicated within 180 days of being filed, except as to members of the certified class in the case entitled *Moreno-Galvez v. Cuccinelli*, Case No. C19-0321RSL (U.S. District Court for the Western District of Washington).

93.     The exact size of the proposed classes is unknown, but includes tens of thousands of young immigrants who have applied for SIJ status.

94.     As to proposed sub-class (a), the claims of all of the individual Plaintiffs

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

and those of the proposed class members raise common questions of law and fact concerning whether Defendants' policies and practices of denying employment authorization to SIJ petitioners and beneficiaries until they are permitted to file adjustment of status applications violates the Equal Protection guarantee of the Fifth Amendment. All individual plaintiffs may serve as class representatives.

95.    As to proposed sub-class (b), the claims of the individual Plaintiffs Montes and Cambara and those of the proposed class members raise common questions of law and fact concerning whether Defendants' failure to adjudicate SIJ petitions within 180 days violates 8 U.S.C. §1232(d)(2) and 5 U.S.C. § 706(1) and 2(A). Plaintiffs Montes and Cambara may serve as class representatives.

96.    The exact size of the proposed classes is unknown, but the proposed classes include tens of thousands of young immigrants who have applied for SIJ status.

97.    The claims of all of the individual Plaintiffs and those of the proposed class members raise common questions of law and fact concerning whether Defendants' policies and practices of not adjudicating SIJ applications within 180 days violates 8 U.S.C. §1232(d)(2) and 5 U.S.C. § 706(1) and 2(A), and whether denying employment authorization to SIJ petitioners and beneficiaries for several years until they are permitted to file adjustment of status applications violates the Equal Protection guarantee of the Fifth Amendment.

98.    Defendants have acted and will continue to act on grounds generally applicable to the individual Plaintiffs and the proposed class members. Plaintiffs' claims are typical of the class members' claims.

99.    The prosecution of separate actions by individual members of the proposed class would create a risk of inconsistent or varying adjudications establishing incompatible standards of conduct for Defendants. Proposed class members are predominantly indigent, non-English-speaking abused, neglected, or abandoned youth. Unless this matter proceeds as a class action, the majority of class members have little chance of securing judicial review of the policy and practice challenged herein.

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

100.   Defendants, their agents, employees, and predecessors and successors in office have acted or refused to act, and will continue to act or refuse to act, on grounds generally applicable to the proposed classes, thereby making injunctive relief and corresponding declaratory relief appropriate with respect to the class as a whole. Plaintiffs will vigorously represent the interests of unnamed class members. All members of the proposed class will benefit by this action. The interests of the named individual Plaintiffs and those of the proposed class members are identical.

101.   Plaintiffs are represented by highly experienced lead counsel with years of experience litigating complex class actions on behalf of children and foreign nationals, including Class Counsel for the nationwide plaintiff class of detained minors in *Flores v. Garland,* Case No. CV 85-4544-DMG-AGRx (Central District of California). Plaintiffs' counsel have succeeded in numerous major class action cases brought on behalf of vulnerable immigrants and refugees. *See, e.g. In re Alien Children Education Litigation, Doe v. Plyler*, 457 U.S. 202, 102 S.Ct. 2382, 95 L.Ed.2d 786 (1982) (striking down Texas law expelling all undocumented children from the public schools); *League of United Latin American Citizens, et al. v. Pete Wilson, et al*., No. Cv. 94-7569-MRP (C.D. Cal.), *LULAC v. Wilson*, 908 F. Supp. 755 (C.D. Cal. 1995) (striking down California's anti-immigrant Proposition 187); *Haitian Refugee Center v. Smith*, 676 F.2d 1023 (1982) (halting deportation of thousands of Haitian refugees seeking political asylum in the United States); *Lopez v. INS*, Cv. No. 78-1912-WB(xJ) (Central District of California) (nationwide settlement involving the right to legal counsel of persons arrested by the former INS, now Immigration and Customs Enforcement (ICE)); *Orantes-Hernandez v. Smith*, 541 F.Supp. 351 (C.D. Cal. 1982) (injunction covering about 30,000 Salvadoran asylum seekers); *Catholic Social Services v. Meese*, 113 S.Ct. 2485 (1993) (nation-wide class action granting legalization opportunity for 200,000 immigrants who briefly traveled abroad during one-time "amnesty" program).

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

# VI.

## FIRST CAUSE OF ACTION

### DEFENDANTS' POLICY & PRACTICE VIOLATES THE EQUAL PROTECTION GUARANTEE OF THE FIFTH AMENDMENT

102.   Plaintiffs incorporate by this reference Paragraphs 1 to 101 above.

103.   Defendants' refusal to accept and adjudicate employment authorization applications by the individual named Plaintiffs and their proposed class members with pending or approved SIJ petitions before they may file applications for Adjustment of Status to lawful permanent resident status is unreasonable and arbitrary, and does not rest upon any rational, substantial, or compelling ground of difference with applicants for other visas or temporary status who are permitted to apply for and be granted employment authorization without having to simultaneously apply for lawful permanent resident status. There exists neither a rational, substantial, nor compelling reason for Defendants' discriminatory policy that forces young immigrants with pending or approved SIJ petitions to work without authorization to support themselves, endure exploitative working conditions, and often to go cold, hungry, and without stable housing while Defendants do not permit them to apply for or obtain employment authorization until their "priority dates" are current at which time they may file applications for Adjustment of Status.

# VII.

## SECOND CAUSE OF ACTION

### DEFENDANTS ROUTINELY VIOLATE 8 U.S.C. §1232(D)(2)

104.   Plaintiffs incorporate by this reference Paragraphs 1 to 101 above.

105.   The TVPRA, codified at 8 U.S.C. §1232(d)(2), states that "[a]ll applications for special immigrant status under section 101(a)(27)(J) of the Immigration and Nationality Act (8 U.S.C. 1101(a)(27)(J)) shall be adjudicated by the Secretary of Homeland Security not later than 180 days after the date on which the application is filed." 8 U.S.C. §1232(d)(2).

106.   Defendants' policy and practice of routinely delaying the adjudication of

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

SIJ petitions for far longer than 180 days violates 8 U.S.C. §1232(d)(2) and the Administrative Procedure Act, 5 U.S.C. § 706(1) and 2(A), thereby causing unnecessary harm to abused, neglected, or abandoned juveniles in need of the protections that Congress envisioned SIJ status would extend to them.

## VIII.

## IRREPARABLE INJURY

107.   The individual Plaintiffs and their proposed class members have suffered and will continue to suffer irreparable harm because of Defendants' policies and practices as challenged herein. Defendants have deprived and will continue to deprive Plaintiffs and those similarly situated of their Equal Protection rights under the Fifth Amendment and their right to have their SIJ petitions adjudicated within 180 days under 8 U.S.C. §1232(d)(2). Defendants not only routinely violate their statutory obligation to expeditiously adjudicate SIJ petitions, but also create an arbitrary, years-long timeline for SIJ petitioners to apply for and obtain employment authorization.

108.   Collectively, these actions are inconsistent with Congress's intent to provide these abused, neglected, and abandoned juveniles with prompt relief. In doing so, Defendants needlessly force Plaintiffs and those similarly situated to work illegally in order to survive with all the well-known risks of illegal exploitation. Defendants also cause Plaintiffs and their proposed class members to often go cold, hungry, and without stable housing as they wait for several years before they may be granted employment authorization. Without employment authorization it is often extremely difficult, if not impossible, for a young SIJ petitioner to properly feed him or herself, to obtain safe and stable housing, or to procure a social security number, a state ID card, or driver's license, and in-state tuition at public colleges and universities.

## IX.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that this Court —

1.   Assume jurisdiction of this cause.

2.   Certify classes as proposed by Plaintiffs of (i) all SIJ applicants with SIJ

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

petitions pending without adjudication for more than six months, and (ii) all SIJ applicants unable to apply for or receive employment authorization until they are permitted to file applications for Adjustment of Status.

3. Enter declaratory judgment that Defendants' policies and practices as challenged herein are unlawful.

4. Issue temporary and permanent injunctions enjoining Defendants from precluding SIJ petitioners from receiving employment authorization while their SIJ petitions are pending before Defendants and requiring that Defendants adjudicate SIJ petitions within six months of submission.

5. Award the SIJ named individual Plaintiffs nominal damages pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).

6. Award Plaintiffs costs and attorney's fees pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412.

7. Issue such further relief as the Court deems just and proper.

Dated: March 7, 2022                    Respectfully submitted,

                               */s/ Peter A. Schey*
                                Peter A. Schey
                                *Attorneys for Plaintiffs*

                                PETER A. SCHEY
                                DANIEL BRAL
                                Center for Human Rights &
                                Constitutional Law

                                CAMILA ALVAREZ
                                RUTH N. CALVILLO
                                LILIT MELKONYAN
                                CARECEN-LA (Central American
                                Resource Center)

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

MARITZA AGUNDEZ
Coalition for Humane Immigrant Rights
(CHIRLA)

STEPHANY ARZAGA
CYNTHIA HENNING
CLAUDIA QUINTANA
Legal Service for Children

STEPHEN ROSENBAUM
MARCOS PACHECO
La Raza Centro Legal, Inc.

ALEX HOLGUIN
Dream Act Lawyers

SILVIA AGUIRRE
The Aguirre Law Firm, APC

CRISTEL MARTINEZ
Law Offices of Martinez, Nguyen &
Magana

*OF COUNSEL*

JIM TOM HAYNES
Haynes Novick Immigration

GENEVIEVE AUGUSTIN
CARECEN-DC (Central American
Resource Center)

FAUSTO FALZONE
El Rescate

CARL BERGQUIST
Coalition for Humane Immigrant Rights
(CHIRLA)

/ / /

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693