BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
Civil Division
WILLIAM C. PEACHEY
Director, District Court Section
Office of Immigration Litigation
WILLIAM C. SILVIS
Assistant Director, District Court Section
Office of Immigration Litigation
SARAH B. FABIAN
Senior Litigation Counsel
KATELYN MASETTA ALVAREZ (OH 97857)
SARAH TATE CHAMBERS
Katelyn.Masetta.Alvarez@usdoj.gov
Trial Attorneys,
District Court Section
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 514-0120
Fax: (202) 306-7000

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CASA LIBRE/FREEDOM HOUSE, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>ALEJANDRO MAYORKAS, Secretary, U.S. Department of Homeland Security, et al.,<br><br>Defendants. | No. 2:22-cv-01510-ODW (JPRx)<br><br>**DEFENDANTS' REPLY TO PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** |

# TABLE OF CONTENTS

I.   INTRODUCTION ..................................................................................................1

II.  ARGUMENT........................................................................................................1

    a.   **Plaintiffs have failed to establish standing to challenge USCIS's regulation.** ........................................................................................1

        1.   *Plaintiffs Montes and Cambara's unreasonable delay claims must be dismissed.* ........................................................................1

        2.   *Plaintiffs' threatened-harm theory does not hold water because "possible" future harm is insufficient to establish standing and no causal connection between the alleged delays and the rule exists.* ........................................................................................2

        3.   *The case law that Plaintiffs rely on is distinguishable.* .....................4

    b.   **Plaintiffs fail to refute Defendants' ripeness argument.** ...........................6

    c.   **The organizational plaintiffs do not meaningfully refute that they are not within the zone of interests that 8 U.S.C. § 1232(d)(2) meant to protect.** ............................................................................7

    d.   **Plaintiffs fail to salvage their Equal Protection claim.** ............................8

        1.   *Plaintiffs' reliance on* Smith *to is unavailing.* ....................................8

        2.   *Plaintiffs fail to point to any facts indicating that Defendants "routinely grant" employment authorization to T-1 applicants.* ........8

        3.   *Plaintiffs fail to refute the dissimilarities between SIJs and T-1 applicants.* ..........................................................................9

        4.   *Plaintiffs fail to refute the various rational bases for Defendants' alleged discrimination in employment-authorization processes.* .................................................................11

III. CONCLUSION ..................................................................................................12

CERTIFICATE OF SERVICE ...................................................................................14

# TABLE OF AUTHORITIES

**Cases**

*Am. Diabetes Ass'n v. United States Dep't of the Army*,
  938 F.3d 1147 (9th Cir. 2019) .................................................................................. 8
*Bennet v. Spear*,
  520 U.S. 154 (1997) ................................................................................................ 7
*Cent. Delta Water Agency v. U.S. Fish & Wildlife Serv.*,
  653 F. Supp. 2d 1066 (E.D. Cal. 2009) .................................................................. 4
*Cent. Delta Water Agency v. United States*,
  306 F.3d 938 (9th Cir. 2002) .................................................................................. 5
*Chevron v. Nat'l Res. Def. Council*,
  467 U.S. 837 (1984) ................................................................................................ 7
*Duke Power Co. v. Carolina Environmental Study Group, Inc.*,
  438 U.S. 59 (1978) .................................................................................................. 7
*Friends of Santa Clara River v. U.S. Army Corps of Eng'rs*,
  887 F.3d 906 (9th Cir. 2018) .......................................................................... 3, 4, 6
*Friends of the Earth v. Laidlaw Env't Servs.*,
  528 U.S. 167 (2000) ............................................................................................ 4, 5
*In re Zappos.com, Inc.*,
  108 F. Supp. 3d 949 (D. Nev. 2015) ...................................................................... 5
*Jacobs v. Clark Cnty Sch. Dist.*,
  526 F.3d 419 (9th Cir. 2008) .................................................................................. 2
*Krottner v. Starbucks Corp.*,
  628 F.3d 1139 (9th Cir. 2010) ................................................................................ 5
*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992) ............................................................................................ 4, 6
*Lujan v. Nat'l Wildlife Fed.*,
  497 U.S. 871 (1990) .......................................................................................... 6, 12
*Nat'l Park Hosp. Ass'n v. Dep't of Interior*,
  538 U.S. 803 (2003) ................................................................................................ 7
*Pit River Tribe v. BLM*,
  793 F.3d 1147 (9th Cir. 2015) ................................................................................ 7
*Smith v. Pac. Properties & Dev. Corp.*,
  358 F.3d 1097 (9th Cir. 2004) ................................................................................ 8
*Thornton v. City of St. Helens*,
  425 F.3d 1158 (9th Cir. 2005) ................................................................................ 9
*Valdez v. Allstate Ins. Co.*,
  372 F.3d 1115 (9th Cir. 2004) ................................................................................ 2

*Whitmore v. Arkansas*,
  495 U.S. 149 (1990) ............................................................................................... 3
*Yao v. INS*,
  2 F.3d 317 (9th Cir. 1993) ................................................................................ 9, 10
*Yeganeh v. Mayorkas*,
  No. 21-cv-02426, 2021 WL 5113221 (N.D. Cal. Nov. 3, 2021) ................................ 2

**Statutes**

6 U.S.C. § 279(g)(2) .................................................................................................. 12, 13
8 U.S.C. § 1101(a)(27) ..................................................................................................... 16
8 U.S.C. § 1101(a)(27)(J) ................................................................................................. 12
8 U.S.C. § 1101(i) ............................................................................................................. 16
8 U.S.C. § 1184(p)(6) ....................................................................................................... 18
8 U.S.C. § 1232(c)(5) ....................................................................................................... 12
8 U.S.C. § 1232(d)(2) ....................................................................................... 2, 6, 8, 12

**Rules**

Fed. R. Civ. P. 12(h)(3) .................................................................................................. 6, 7

**Regulations**

8 C.F.R. § 214.11(a) .................................................................................................. 16, 18
87 Fed. Reg. 13066 ........................................................................................................... 18

## I. INTRODUCTION

Plaintiffs fail to counter Defendants' arguments in support of their Motion to Dismiss. As to Count II, the Court should not ignore its obligation to determine jurisdiction over the named Plaintiffs' individual claims, as Plaintiffs imply. Instead, the Court should dismiss Plaintiffs Montes and Cambara's unreasonable-delay claims because USCIS has adjudicated their SIJ petitions and therefore neither Plaintiff has a live stake in the outcome of the claims. The Court should likewise dismiss the unreasonable-delay claim challenging USCIS's regulation because not one Plaintiff can establish a causal connection between their delays in adjudication and the tolling provisions of the regulation. And none of the cases that Plaintiffs cite support their theory that the mere possibility that USCIS *could* toll their adjudication is sufficient to establish standing under the circumstances here.

In attempting to refute Defendants' ripeness arguments, Plaintiffs fail to acknowledge the heart of the *Reno v. Catholic Social Services* holding: when a regulation is at issue, the threatened harm must present the plaintiff with an *immediate* dilemma or other consequence in order for the issue to be ripe for judicial review. 509 U.S. 43, 57–58 (1993). Because none of the individual Plaintiffs have felt the effect of the regulation's tolling provisions, their challenge to USCIS's tolling provisions is not ripe for review.

Plaintiffs' arguments in support of their Equal Protection claim likewise fail. Although Plaintiffs maintain that USCIS "routinely" provides T-1 applicants employment authorization while their applications are pending, they cannot cite to anything to support their contention. The reason for their failure is simple: this is not USCIS's current practice. Plaintiffs also do not meaningfully dispute that SIJ petitioners and T-1 applicants are not similarly situated or that USCIS has rational bases for distinguishing employment programs between the two groups. Accordingly, dismissal of both counts is appropriate.

## II. ARGUMENT

### a. Plaintiffs have failed to establish standing to challenge USCIS's regulation.

#### 1. *Montes and Cambara's unreasonable delay claims must be dismissed.*

Plaintiffs argue that, because only one plaintiff must establish standing for their

claim to survive, the fact that other plaintiffs lack standing is irrelevant. Pls.' Opp'n to Mot. to Dismiss, ECF No. 42, at 12. But that does not mean that the Court should brush the issue aside. Courts are "obligated to consider" whether they have subject-matter jurisdiction. *Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1116 (9th Cir. 2004). And the Court's analysis of its own 1jurisdiction "does not turn on whether keeping a certain Plaintiff in a case is 'efficient.'" *Yeganeh v. Mayorkas*, No. 21-cv-02426, 2021 WL 5113221, at *7 (N.D. Cal. Nov. 3, 2021). Thus, the Court must assess whether it has jurisdiction over their individual claims, as this will determine whether Plaintiffs may proceed with their putative class claims.

Plaintiffs Montes and Cambara's unreasonable-delay claims under Count II must be dismissed because they no longer have a live stake in the outcome of the claim. To be a justiciable "case or controversy," the plaintiff must have standing to bring the claim, and the claim must not be moot. *Jacobs v. Clark Cnty Sch. Dist.*, 526 F.3d 419, 425 (9th Cir. 2008). If a court lacks subject-matter jurisdiction, it "must" dismiss the claim. Fed. R. Civ. P. 12(h)(3). Because USCIS has adjudicated Plaintiff Montes and Plaintiff Cambara's SIJ petitions, they no longer have a live stake in the outcome of either of their unreasonable-delay claims. On June 2, 2022, USCIS approved Plaintiff Montes's SIJ petition. *See* Ex. A, Case Status for Montes, Receipt MSC2191682576; *see* ECF No. 37-15 (showing receipt number). His unreasonable-delay claims are therefore moot. As stated in the motion to dismiss, USCIS also approved Plaintiff Cambara's SIJ petition on April 12, 2022, and she lacks standing to challenge USCIS's alleged delays or regulation. Mot. to Dismiss, ECF No. 41, at 11. Thus, this Court must dismiss their individual claims for lack of subject-matter jurisdiction. Fed. R. Civ. P. 12(h)(3).

  2. *Plaintiffs' threatened-harm theory fails because "possible" future harm is insufficient to establish standing and no causal connection between the alleged delays and the rule exists.*

Plaintiffs claim that they have standing to challenge the tolling provisions of USCIS's regulation—even though USCIS has not applied these provisions to any of the

2

Plaintiffs' SIJ petitions—because it is possible that USCIS will do so, and therefore Plaintiffs face a possible threat of future harm. ECF No. 42 at 13. Where a plaintiff alleges future harm, however, the "threatened injury" must be "certainly impending"; allegations of "possible future injury" will not suffice. *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990). Although this standard is "softened" in cases involving procedural injury, a plaintiff must show that it is "reasonably probable" that the challenged action will threaten their concrete interests. *Friends of Santa Clara River v. U.S. Army Corps of Eng'rs*, 887 F.3d 906, 918 (9th Cir. 2018) (citations omitted).

USCIS's tolling provisions are not "certainly impending" nor "reasonably probable"—especially now that USCIS has approved Plaintiffs Montes' and Cambara's SIJ petitions. Plaintiffs do not, for example, allege that a particular percentage of SIJ petitioners receive Requests for Evidence (RFE) or Notices of Intent to Deny (NOID) that would make it "probable" that they will receive one as well, which would trigger the tolling provision. Instead, Plaintiffs speculate that they are at an "increased risk" of being subject to the regulation's tolling provisions simply because they filed SIJ petitions. ECF No. 42 at 13. Contrary to Plaintiffs' fears, Plaintiffs Montes and Cambara's petitions were approved without receiving an RFE or NOID. Because the threat of receiving an RFE or NOID, which would trigger the regulation's tolling provisions, is not reasonably probable, Plaintiffs cannot allege sufficient threatened harm to demonstrate standing.

Further, Plaintiffs allege no facts indicating that the regulation is or will be the *cause* of their delays in adjudication, or that their requested relief will redress their alleged injury. Standing requires a "causal connection between the injury and the conduct complained of" and that the alleged injury will likely be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). In procedural-injury cases, plaintiffs must establish causation and redressability by showing that the "relief requested—that the agency follow the correct procedures—may influence the agency's ultimate decision." *Friends of Santa Clara River*, 887 F.3d at 918 (internal citation omitted). Here, a declaration that the regulation's tolling provisions are unlawful will not change any of the

3

named Plaintiffs' situations. Indeed, because the tolling provisions are not the cause of the alleged delays, declaring that they are unlawful or enjoining USCIS from tolling the 180-day deadline would do nothing to hasten the processing of Plaintiff Arevalo's (the only named Plaintiff whose petition remains pending) SIJ petition. Since the regulation is not the cause of the delays, Plaintiffs lack standing to challenge it.

Plaintiffs cannot rely on organizational standing to save their claim. Even if the organizations could show organizational standing (they cannot), organizational standing is "not sufficient to establish standing in a procedural injury case." *Cent. Delta Water Agency v. U.S. Fish & Wildlife Serv.*, 653 F. Supp. 2d 1066, 1082 (E.D. Cal. 2009). Rather, the named plaintiffs must show a reasonable probability that the challenged action will injure them. *Id.* (citing *Nuclear Info. and Res. Serv. v. Nuclear Regul. Comm'n*, 457 F.3d 941, 949 (9th Cir. 2006)). Plaintiffs' unreasonable-delay claims in Count II are procedural-injury claims: Plaintiffs are claiming that they have a procedural right to adjudication of their SIJ petitions within 180 days under 8 U.S.C. § 1232(d)(2). ECF No. 34 at ¶¶ 108–109. Because the Court lacks jurisdiction to determine the merits of the named Plaintiffs' unreasonable-delay claim challenging the regulation's tolling provisions, it follows that the organizational plaintiffs' alleged standing is insufficient to maintain the claim. The Court must therefore dismiss Plaintiffs' claim challenging USCIS's tolling provisions.

### 3. *The case law that Plaintiffs rely on is distinguishable.*

The case law that Plaintiffs rely on is misplaced. First, Plaintiffs rely on *Friends of the Earth v. Laidlaw Env't Servs.*, 528 U.S. 167, 180–81 (2000) in asserting that Defendants' start-stop rule puts Plaintiffs at an "increased risk" of harm. ECF No. 42 at 13. *Laidlaw* involved a company that polluted a community's river. 528 U.S. at 176. The Court found that Friends of the Earth established organizational standing because its members testified that they lived nearby the polluted area, wanted to use the land around the polluted river for recreational purposes, but could not use it because of the harmful pollutants. *Id.* at 182–83. The harm was therefore immediately felt. Further, the Court said nothing about when a regulation is ripe for judicial review or whether threatened harm or

an increased risk of harm is sufficient to establish standing. The case is simply not very relevant to the facts here—and it does not support Plaintiffs' proposition.

Plaintiffs likewise misapply the "increased risk" language in *Cent. Delta Water Agency*, because that language is tied to environmental harms. ECF No. 42 at 13. There, the plaintiffs challenged the Bureau of Land Management's decision to release water from one reservoir to supplement other fisheries because the water release was "highly likely" to increase the salinity of the river water, which would in turn harm the individual Plaintiffs' crops. *Cent. Delta Water Agency v. United States*, 306 F.3d 938, 945, 947 (9th Cir. 2002). Looking to *Laidlaw*, the Ninth Circuit found that "in cases alleging environmental injury," the relevant showing is an injury to the plaintiff. *Id.* at 948. However, the Ninth Circuit explained that "to require actual evidence of environmental harm, rather than an *increased risk* based on a violation of the statute, *misunderstands the nature of environmental harm*, and would undermine the policy of the [Clean Water] Act." *Id.* (citation omitted) (emphasis added). Relying on these cases specific to environmental harm, the Ninth Circuit found that the alleged injury was "threatened" and was therefore sufficient to establish standing. *Id.* at 947. Thus, the "increased risk" standard is tied to environmental harm, not generally to all agency actions.

Plaintiffs also rely on *Krottner* to support their claim that a credible threat of harm is all that is necessary to challenge governmental action. ECF No. 42 at 13 (citing *Krottner v. Starbucks Corp.*, 628 F.3d 1139, 1142 (9th Cir. 2010)). However, *Krottner* is an identity-theft case, and its analysis is limited to cases involving identity theft. *Id.* at 1142–43 (analyzing the holdings in two other identity-theft cases); *see also In re Zappos.com, Inc.*, 108 F. Supp. 3d 949, 955–57 (D. Nev. 2015) (analyzing *Krottner* and similar cases and noting that courts are divided on what constitutes sufficient injury to establish standing "in the context of a data security breach."). Here, Plaintiffs' claims do not involve identity theft but a challenge to a federal regulation. In that context, the Supreme Court held that regulation must concretely impact a plaintiff, and the injury must be "actual or imminent," *Lujan*, 504 U.S. at 560, or—at the very least—"reasonably probable." *Friends of Santa*

5

*Clara River*, 887 F.3d at 918. As such, Plaintiffs must allege a specific incident where USCIS applied or is likely to apply the SIJ regulation to them. Since they have failed to do so, they lack standing to challenge the regulation.

      **b.**      **Plaintiffs fail to refute Defendants' ripeness argument.**

Even if Plaintiffs could establish standing to challenge the regulation, they have failed to show that this claim is ripe for judicial review. In addressing Defendants' ripeness argument (ECF No. 42 at 11), Plaintiffs fail to address the holding in *Catholic Social Services*: when the promulgation of a regulation presents the plaintiff with an "immediate dilemma" to choose between "newly imposed, disadvantageous restrictions and risking serious penalties for violations," then the plaintiff likely has a sufficiently concrete interest to allege a controversy ripe for review. *Reno v. Cath. Soc. Servs., Inc.*, 509 U.S. 43, 57–58 (1993); *see also* ECF No. 41 at 18 (citing to *Cath. Soc. Servs.*). But when the regulation's impact is not "felt immediately by those subject to it in conducting their day-to-day affairs," review is not ripe until the regulation is applied to the plaintiffs in "some more acute fashion." *Cath. Soc. Servs., Inc.*, 509 U.S. at 57–58 (citations omitted). In other words, when challenging a regulation, the threatened harm must present an immediate dilemma for the issue to be ripe. *Id.* No immediate dilemma is present or alleged here.

Because none of the individual Plaintiffs in this case have felt the effect of the regulation's tolling provisions, this case is not ripe for review. Of the six named plaintiffs in this case, five had their petitions approved without ever being subject to the regulation's tolling provision. And the sixth named plaintiff lacks standing because although his SIJ petition remains pending, USCIS has not issued an RFE or NOID, and he has therefore never felt the effect of the regulation's tolling provisions.

Rather, this is a case where factual development would "significantly advance [the Court's] ability to deal with the legal issues presented." *Duke Power Co. v. Carolina Environmental Study Group, Inc.*, 438 U.S. 59, 82 (1978); *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 812 (2003). Further factual development would allow the Court to review the effects of the regulation, as opposed to considering only speculative injuries.

For example, a plaintiff may not want to challenge USCIS's decision to toll the adjudication timeframe, as the plaintiff may prefer to have more time to respond to an RFE or NOID. In that scenario, the opportunity to supply additional information would benefit the plaintiff, whereas challenging USCIS's regulation could harm the plaintiff. These considerations would weigh in the Court's analysis of whether USCIS's regulation is reasonable, as required under step two of *Chevron v. Nat'l Res. Def. Council*, 467 U.S. 837, 843 (1984). Therefore, the Court should dismiss Plaintiffs' claim without prejudice until they identify a plaintiff who is subject to the regulation and wishes to challenge it.

### c. The organizational plaintiffs do not meaningfully refute that they are not within the zone of interests that 8 U.S.C. § 1232(d)(2) meant to protect.

Plaintiffs assert that "it need not take an explicit mention from Congress to conclude that organizations assisting indigent immigrant youth would be directly affected by their clients' difficulties." ECF No. 42 at 15. While an "explicit mention" may not be required, something in the "particular provision of law upon which the plaintiff relies" must at least indicate that Congress intended the protection to extend to the organization. *Pit River Tribe v. BLM*, 793 F.3d 1147, 1157 (9th Cir. 2015) (quoting *Bennet v. Spear*, 520 U.S. 154, 175–76 (1997)). In this case, the "particular provision of law" is 8 U.S.C. § 1232(d)(2), which makes absolutely no mention of organizations like the organizational plaintiffs here.

Looking beyond 8 U.S.C. § 1232(d)(2), Plaintiffs rely on a completely separate statutory provision, 8 U.S.C. § 1232(c)(5), which addresses the requirements for a different agency—Health and Human Services—to arrange for legal representation for "unaccompanied minors." ECF No. 42 at 16. This is not the "particular provision of law" at issue here, and therefore irrelevant. *Pit River Tribe*, 793 F.3d at 1157.

Plaintiffs imply that unaccompanied minors and SIJs are legally equivalent (ECF No. 42 at 15–16) when they are not. While *some* unaccompanied minors may eventually receive SIJ classification, not all SIJs are unaccompanied minors. Unlike the definition of unaccompanied minors under 6 U.S.C. § 279(g)(2), SIJ classification is not based on the method of entry into the United States; rather, SIJs may be accompanied by one or both

parents and later receive SIJ classification based on the maltreatment of a parent. Further, because an individual may apply for SIJ classification until they are 21 years old, many SIJs entered the United States after turning 18, and therefore were never "unaccompanied minors" or in HHS's custody. And many unaccompanied minors are not eligible for SIJ classification because neither parent has mistreated them. Because unaccompanied minors and SIJs are distinct groups, Plaintiffs' reliance on Congress's provisions for unaccompanied minors fails.

### d.  Plaintiffs fail to salvage their Equal Protection claim.

*1.  Plaintiffs' reliance on* Smith *to is unavailing.*

Plaintiffs assert that because their organizational standing claims are similar to those in *Smith v. Pac. Properties & Dev. Corp.*, 358 F.3d 1097, 1105–1106 (9th Cir. 2004), they are sufficient. ECF No. 42 at 19. However, Plaintiffs fail to acknowledge the reasoning as to why such organizational standing claims were sufficient in *Smith's* particular situation. In *Smith*, the district court did not explain why it found that the plaintiff failed to allege organizational standing and did not grant the plaintiff leave to amend its complaint, even though the plaintiff was willing to specify the diversion of its resources. *Smith*, 358 F.3d at 1106. Here, Plaintiffs have not asserted that they are willing and able to specify their diversion of resources. ECF 42 at 10–11. And because it appears that Plaintiffs' alleged diversion of resources is simply business as usual (*see* Mot. to Dismiss, ECF No. 41, at 23), Plaintiffs may not be able to cure their failure. *See Policy Am. Diabetes Ass'n v. United States Dep't of the Army*, 938 F.3d 1147, 1155 (9th Cir. 2019) (distinguishing *Smith* because the organization's diversion of resources appeared to be "business as usual.").

*2.  Plaintiffs fail to point to any facts indicating that Defendants "routinely grant" employment authorization to T-1 applicants.*

Plaintiffs state that "Defendants know that they may and do routinely grant T visa petitioners deferred action status and the ability to apply for and receive work permits when their petitions are pending before they are approved . . . ." ECF No. 42 at 21. Defendants acknowledge that granting deferred action, and thus the ability to apply for a

8

work permit, is something that they "may" do for bona fide T-1 applications. *See* Memorandum from Michael Aytes, Acting Deputy Director, USCIS, to Richard Flowers, Acting USCIS Ombudsman, at 3 (May 22, 2009), https://www.dhs.gov/xlibrary/assets/uscis_response_cisomb_rec_39.pdf. However, Plaintiffs have not provided any support for their theory that Defendants, as a matter of practice, are implementing the regulation that permits USICS to provide T-1 applicants with a work permit before adjudicating their application. Nor could Plaintiffs allege such facts, as Defendants simply do not provide work authorization to T-1 applicants before their applications are adjudicated.

   3. *Plaintiffs fail to refute the dissimilarities between SIJs and T-1 applicants.*

Plaintiffs stretch the reach of SIJs and T-1 applicants by asserting that both groups are "victims." ECF 42 at 14. While this is true, the same could be said of many immigration categories—including U-visa applicants (the category for victims of crime), VAWA petitioners (the category for victims of domestic violence), and asylum applicants. As such, the term "victim" is too broad to render these groups of noncitizens "similarly situated" for Equal Protection purposes. *Cf. Thornton v. City of St. Helens*, 425 F.3d 1158, 1167 (9th Cir. 2005) ("The groups must be comprised of similarly situated persons so that the factor motivating the alleged discrimination can be identified.").

Despite Plaintiffs' assertion that both groups are "pathways to legalization," ECF No. 42 at 25, they do not provide the same relief. Plaintiffs cite *Yao v. INS*, 2 F.3d 317, 321 (9th Cir. 1993) to support their assertion that the two groups share enough in common for Equal Protection purposes. However, in *Yao*, the comparable relief involved two groups of noncitizens who were applying to adjust their status under the *same* amnesty program, the Immigration Reform and Control Act of 1986. *Id.* at 318. Unlike the two amnesty groups in *Yao*, T-1 applicants and SIJs are eligible for relief under two separate schemes. Congress created the SIJ program under the Immigration Act of 1990, whereas Congress created the T-1 nonimmigrant program in 2000 under the Trafficking Victims Protection Act. *See* USCIS, Policy Manual, https://www.uscis.gov/policy-

9

manual/volume-3-part-b-chapter-1; https://www.uscis.gov/policy-manual/volume-6-part-j-chapter-1. Further, the relief available for T-1 applicants and SIJ petitioners is distinguishable, *see* ECF No. 41 at 27–28; thus, the differences in the groups' statuses and their eligibility to adjust status to that of a lawful permanent resident distinguishes this case from *Yao*.

Plaintiffs dispute the general age difference between the two groups, and, thus, any related reasoning for treating the two groups differently. ECF No. 42 at 23–24. At its most basic level, one form of relief is named by the distinction of the harm: "trafficking"; and the other is named by the distinction of the age: "juvenile." 8 C.F.R. § 214.11(a); 8 U.S.C. § 1101(a)(27). While there is much more to each group than these two words, as a general matter the youth of SIJs is central to their program of relief. USCIS's recent rulemaking and policy statement make this clear. USCIS, USCIS to Offer Deferred Action for Special Immigrant Juveniles (Mar. 7, 2022), https://www.uscis.gov/newsroom/alerts/uscis-to-offer-deferred-action-for-special-immigrant-juveniles ("This process furthers congressional intent to provide humanitarian protection for abused, neglected, or abandoned noncitizen *children* for whom a *juvenile court* has determined that it is in their best interest to remain in the United States.") (emphasis added).

Beyond contesting the age difference between the groups, Plaintiffs also argue that Defendants "do not explain" why the difference in juvenile-court proceedings is relevant to the two groups being similarly situated with regard to applying for EADs. ECF No. 42 at 24. Not so. As Defendants noted in their Motion, because T-1 applicants are not subject to juvenile-court proceedings, and therefore are not dependent on an individual, entity or state, they do not have a court order "ensur[ing] that their basic needs are met." ECF No. 41 at 27. It follows that because SIJs are under the care of the state or a court-appointed individual or entity, they are not as likely to need employment as victims of trafficking who do not have the same court-ordered protection. As such, Plaintiffs have not rebutted the differences that make these groups unrelated for purposes of establishing an Equal Protection claim.

    *4.  Plaintiffs fail to refute the various rational bases for Defendants' alleged discrimination in employment-authorization processes.*

  Plaintiffs first assert that Congress's decision to distinguish employment authorization for the two groups by statute is irrelevant because Plaintiffs' "equal protection claim deals with the disparate treatment of T and SIJ visa petitioners before, not after, their petitions are approved." ECF No. 42 at 27. But that is not what the FAC alleges. In the FAC, Plaintiffs challenge USCIS's decision to provide SIJs with discretionary deferred action, which in turn makes them eligible for employment authorization, while T-1 applicants "are automatically granted employment authorization incident to their status when their petitions are approved." ECF No. 34, ¶ 106. As USCIS explained in its Motion (ECF No. 41 at 26), Congress—not USCIS—provided that T-1 applicants automatically receive employment authorization incident to their status. Congress's distinction provides a rational basis for the difference in employment-authorization processes for SIJs and T-1 visa recipients. ECF No. 41 at 26.

  Next, Plaintiffs assert that "nothing in the FAC or admissible evidence" supports Defendants' rational basis that state-court proceedings presumably provide for the physical and financial support of the SIJs. ECF No. 42 at 27. It goes without saying that a court order addressing the "dependency or custody" of a child, as required for SIJ classification (*see* Policy Manual, https://www.uscis.gov/policy-manual/volume-6-part-j-chapter-2), presumably considers the wellbeing of the petitioner. The best-interest determination is also a key requirement for establishing SIJ eligibility, which requires the state court to consider what "will best serve a child, as well as who is best suited to take care of a child." 87 Fed. Reg. 13066, 13082. Overall, the child's safety and well-being are the paramount concerns in juvenile-court proceedings. To the extent that Plaintiffs claim otherwise, their argument is hollow.

  Plaintiffs' attack on USCIS's lack of a bona fide determination process for SIJs likewise falls flat. ECF No. 42 at 30. First, Plaintiffs point to the fact that USCIS recently created a bona fide determination process for U-visa petitioners. *Id.* But unlike U-visa

11

applicants, no statutory authority exists for creating a bona fide determination process for SIJs. 8 U.S.C. § 1184(p)(6). Further, unlike T-visa applicants, no regulation permits a bona fide determination process for SIJs. 8 C.F.R. 214.11(a), (e). Because no legal authority requires or permits USCIS to create a bona fide determination process for SIJs, while such authority does exist for U-visa and T-visa applicants, USCIS has a rational basis for not creating a bona fide determination process for SIJs. In addition, because Congress generally required that SIJ petitions be adjudicated within 180 days, but has no similar requirements for U-visa or T-visa applicants, a rational basis exists for creating an interim process for the U-visa and T-visa programs but not for the SIJ program.

Lastly, Plaintiffs attempt to paint USCIS's new employment-authorization policy as "forcing" the plaintiffs to "go cold, hungry, and perhaps homeless or work illegally for months or years." ECF No. 42 at 29. First, this is a mischaracterization of USCIS's employment-authorization program, which does the opposite of what plaintiffs allege, in that the policy allows SIJs—who are generally under the care and custody of an entity or court-appointed individual—to apply for employment authorization as soon as USCIS grants them deferred action. Second, to the extent that Plaintiffs challenge the general lack of employment authorization for individuals who are *eligible* for immigration relief but who otherwise lack any lawful status, the correct place to bring such a challenge is the halls of Congress, not before this Court. *Lujan*, 497 U.S. at 891 (the proper venue for broad programmatic changes is "in the offices of the [agency] or the halls of Congress, where programmatic improvements are normally made.").

### III. CONCLUSION

For the foregoing reasons, Plaintiffs have failed to counter USCIS's arguments in its Motion to Dismiss, and thus dismissal is proper.

| | | |
|---|---|---|
| 1 | Dated: August 12, 2022 | Respectfully submitted, |
| 2 | | BRIAN M. BOYNTON |
| 3 | | Principal Deputy Assistant Attorney General<br>Civil Division |
| 4 | | WILLIAM C. PEACHEY<br>Director, District Court Section |
| 5 | | Office of Immigration Litigation |
| 6 | | WILLIAM C. SILVIS<br>Assistant Director, District Court Section |
| 7 | | Office of Immigration Litigation |
| 8 | | SARAH B. FABIAN<br>Senior Litigation Counsel |
| 9 | | */s/ Katelyn Masetta-Alvarez* |
| 10 | | KATELYN MASETTA ALVAREZ<br>SARAH TATE CHAMBERS |
| 11 | | Trial Attorneys |
| 12 | | Office of Immigration Litigation<br>District Court Section |
| 13 | | P.O. Box 868, Ben Franklin Station<br>Washington, D.C. 20044 |
| 14 | | (202) 514-0120<br>Fax: (202) 305-7000 |
| 15 | | Katelyn.masetta.alvarez@usdoj.gov |
| 16 | | Attorneys for Defendants |

13

# CERTIFICATE OF SERVICE

I hereby certify that on August 12, 2022, I served the foregoing pleading on all counsel of record by means of the District Clerk's CM/ECF electronic filing system.

*/s/ Katelyn Masetta-Alvarez*
KATELYN MASETTA ALVAREZ
U.S. Department of Justice
District Court Section
Office of Immigration Litigation

Attorney for Defendants