**O**

# United States District Court
# Central District of California

| | |
|---|---|
| CASA LIBRE/FREEDOM HOUSE et al., | Case № 2:22-cv-01510-ODW (JPRx) |
| Plaintiffs, | |
| v. | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS THE  FIRST AMENDED COMPLAINT [41]** |
| ALEJANDRO MAYORKAS et al., | |
| Defendants. | |

## I.   INTRODUCTION

This is a putative class action challenging how the U.S. Department of Homeland Security ("DHS") and the U.S. Citizenship and Immigration Service ("USCIS") handle and process Special Immigrant Juvenile ("SIJ") applications.  The Plaintiffs are six individuals who submitted applications for SIJ status and six organizations who provide legal and other assistance to such individuals, and the Defendants are Alejandro Mayorkas, Secretary of DHS; Ur M. Jaddou, Director of USCIS; and USCIS itself.  Defendants now move to dismiss the First Amended Complaint pursuant to Federal Rules of Civil Procedure ("Rule") 12(b)(1) and 12(b)(6).  (Mot. Dismiss ("Motion" or "Mot."), ECF No. 41.)  Having carefully considered the papers filed in connection with the Motion, the Court deemed the

matter appropriate for decision without oral argument.  Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.  For the following reasons, the Court **GRANTS IN PART AND DENIES IN PART** Defendants' Motion.

## II.   BACKGROUND

### A.   The SIJ Petition Process

In 1990, Congress created the SIJ classification to aid noncitizen children physically present in the United States who were declared dependent on state courts and were eligible for long-term foster care. Immigration Act of 1990, Pub. L. No. 101-649, § 153, 104 Stat. 4978 (1990).  The purpose of the SIJ classification is to help alleviate "hardships experienced by some dependents of United States juvenile courts by providing qualified aliens with the opportunity to apply for special immigrant classification and lawful permanent resident status, with possibility of becoming citizens of the United States in the future."  58 Fed. Reg. 42843-01, 42844, 1993 WL 304167 (Aug. 12, 1993).

In 1998, Congress revised the SIJ definition to include juveniles eligible for long-term foster care "due to abuse, neglect, or abandonment."  Dep'ts of Commerce, Justice, & State, the Judiciary, & Related Agencies Appropriations Act of 1998, H.R. 2267, PL 105–119, 105th Cong., at 22 (Nov. 26, 1997).  More recently, in 2008, Congress passed the Trafficking Victims Protection Reauthorization Act 2008 ("TVPRA"), Pub. L. No. 110-457, § 235(d), 112 Stat. 5044 (2008), which replaced the foster care requirement with more expansive language permitting young immigrants to apply for SIJ status based on a state court's finding that "reunification with 1 or both of the immigrant's parents is not viable due to abuse, neglect, abandonment, or a similar basis found under State law."  TVPRA § 235(d)(1)(A); Immigration & Nationality Act ("INA") § 101(a)(27)(J)(i), 8 U.S.C. § 1101(a)(27)(J)(i); *see J.L. v. Cissna*, 341 F. Supp. 3d 1048, 1055 (N.D. Cal. 2018). The TVPRA also amended the SIJ statute to require USCIS to adjudicate SIJ petitions within 180 days of filing.  TVPRA § 235, 8 U.S.C. § 1232(d)(2).

SIJ status is available if (1) the juvenile immigrant has been declared dependent on a juvenile court or legally committed to the custody of an individual or entity; (2) reunification with one or both of the immigrant's parents is not viable due to abuse, neglect, or abandonment; (3) it has been determined in administrative or judicial proceedings that it would not be in the juvenile immigrant's best interest to be returned to the alien's or parent's previous country of nationality or country of last habitual residence; and (4) the Secretary of Homeland Security consents to the grant of special immigrant juvenile status.  8 U.S.C. § 1101(a)(27)(J).  The petitioner must be under the age of twenty-one at the time they file their SIJ petition.  8 C.F.R. § 204.11(b)(1).  As a result, some SIJ petitioners reach the age of majority before filing SIJ petitions or while their petitions are pending.

SIJ status provides a pathway to lawful permanent residency: once a noncitizen's SIJ petition is approved, the noncitizen may proceed to apply to adjust their status to that of a lawful permanent resident ("LPR").  8 U.S.C. § 1255(a), (h).

The process for obtaining LPR status by way of SIJ status comprises five steps: (1) a state court must determine that it would not be in the juvenile immigrant's best interest to return to their or their parent's country of citizenship; (2) the immigrant files a Form I-360 petition for SIJ status with the USCIS; (3) either concurrent with or subsequent to filing the Form I-360 petition, the immigrant files an Adjustment of Status Application; (4) the USCIS determines the minor meets the requirements for SIJ status and approves their SIJ petition; and (5) the USCIS approves the immigrant's Adjustment of Status application.  8 C.F.R. § 204.11; USCIS Policy Manual, Vol. 7, Pt. F, Ch.7 – Special Immigrant Juveniles, 7 USCIS-PM F.7 (Jan. 16, 2020); Form I-360, Petition for Amerasian, Widow(er), or Special Immigrant.[1]

---

[1] The Court takes judicial notice of this portion of the USCIS Policy Manual and any other USCIS Policy Manuals, Memoranda, and materials cited herein.  *Elhassani v. U.S. Citizenship & Immigration Servs.*, No. 33:20-cv-02159-BEN-AHG, 2022 WL 168631, at *18 (S.D. Cal. Jan. 14, 2022) ("[C]ourts have taken judicial notice of USCIS Policy Manuals and Memoranda."); *cf. Attias v. Crandall*, 968 F.3d 931, 936 (9th Cir. 2020).

For many SIJ petitioners seeking LPR status, completing this process takes a long time because a SIJ cannot file an Adjustment of Status application unless the appropriate immigration visa is available.  7 USCIS-PM F.7; (*see* First Am. Compl. ("FAC") ¶ 62, ECF No. 34.)  The INA sets the maximum number of immigrant visas available each year, including numerical limitations for SIJs.  *See* 8 U.S.C. § 1153(b)(4).  When the demand is higher than the number of immigrant visas available for a given year, the government allocates the availability of immigrant visas according to a "priority date" USCIS provides the SIJ upon approval of a petition. The priority date is generally the date that the foreign national filed their SIJ petition. *See* USCIS, Visa Availability and Priority Dates.[2]   Noncitizens, including SIJ petitioners, must wait for their priority dates to become "current" before they can apply for adjustment of status. *Id.*

In terms of visa availability, SIJ status recipients are subject to the fourth-preference employment-based (EB-4) category, which is allocated 7.1% of the 140,000 visas generally available for employment-based visas per year, or approximately 9,940 visas per year.  8 U.S.C. § 1153(b)(4).  This total applies to all "special immigrants described in section 1101(a)(27) of this title," not just immigrants granted SIJ status. *Id.*  Furthermore, under 8 U.S.C. § 1152(a)(2), the total number of special immigrant visas made available to natives of a given foreign country is capped at 7% of the total available number of special immigrant visas, meaning that each foreign country is allocated a maximum of 696 special immigrant visas per year.  (*See* FAC ¶ 38.)

Until March 7, 2022, the day Plaintiffs filed their initial Complaint in this matter, Defendants did not permit SIJs to apply for employment authorization unless the SIJ first filed to adjust their status to that of a LPR.  8 C.F.R. § 274a.12(c)(9).  The pertinent effect of this policy was that SIJs were often forced to wait months or years

---

[2] Online at https://www.uscis.gov/green-card/green-card-processes-and-procedures/visa-availability-and-priority-dates (accessed October 14, 2022).

for their priority dates to become current before they could apply for authorization to work legally in the United States.  Plaintiffs allege that as a result, SIJ petitioners are often forced "to go cold, hungry, or with unstable housing for many years, and to work in underground exploitative jobs in order to survive" during the time it takes to complete this process.  (FAC ¶ 5.)

**B.    The Plaintiffs**

The individual Plaintiffs bringing suit in this matter are:

- Rene Gabriel Flores Merino, twenty years old; SIJ petition filed November 23, 2020; SIJ status petition granted November 9, 2021.  (FAC ¶¶ 44, 48.)

- Hildner Eduardo Coronado Ajtun, twenty years old; SIJ petition filed March 12, 2020; SIJ status petition granted January 5, 2021.  (FAC ¶¶ 51, 55.)

- Carlos Abel Hernandez Arevalo, twenty years old; SIJ petition filed December 8, 2021; petition remains pending.  (FAC ¶¶ 64, 68.)

- Axel Yafeth Mayorga Aguilera, twenty years old; SIJ petition filed August 29, 2019; SIJ status petition granted March 13, 2020.  (FAC ¶¶ 58, 61.)

- Rene Isai Serrano Montes, twenty-one years old; SIJ petition filed August 30, 2021; application pending when FAC was filed; SIJ status petition approved June 2, 2022.  (FAC ¶¶ 71, 73; Reply Ex. A ("Montes Case Status"), ECF No. 46-1; *see also* Mot. Class Certification Ex. 13 ("Montes Petition Receipt"), ECF No. 37-15.[3])

- Pamela Alejandra Rivera Cambara; SIJ petition filed July 1, 2021; application remains pending.[4]  (FAC ¶ 78.)

---

[3] The Court takes judicial notice of these two exhibits.  *See Miriyeva v. U.S. Citizenship & Immigration Servs.*, No. 20-CV-2496 JLS (BGS), 2022 WL 837422, at *3 (S.D. Cal. Mar. 21, 2022) ("Courts may take judicial notice of some public records, including the records and reports of administrative bodies." (quoting *United States v. Ritchie*, 342 F.3d 903, 909 (9th Cir. 2003)) (cleaned up)).

[4] Although Defendants assert, without dispute by Plaintiffs, that USCIS approved Cambara's petition ten days before Plaintiffs amended their complaint, no party submits any judicially noticeable materials or admissible evidence in support of this contention.  (*See* Mot. 11.)

Even after the petitions of Merino, Ajtun, and Aguilera were granted, and due to the aforementioned priority date requirement for filing for an adjustment of status, these Plaintiffs still had to wait months or years after receiving SIJ status before they could apply for an adjustment of status and for work authorization. (*See, e.g.*, FAC ¶ 48.) As a result, the individual Plaintiffs have had to rely on shelters such as Plaintiff Casa Libre/Freedom House for temporary housing and food. (*See, e.g.*, FAC ¶ 50.) Some of the individual Plaintiffs were able to find work, but only with employers who violated federal labor laws by allowing them to work; Ajtun, for example, worked for an unlicensed contractor under unsafe and exploitative working conditions, was paid below minimum wage, and was often forced to work without pay for extended periods of time. (FAC ¶ 56.)

The organizational Plaintiffs are Casa Libre, El Rescate, Clergy and Laity United for Economic Justice ("CLUE"), Salvadoran American Leadership & Educational Fund ("SALEF"), Central American Resource Center–DC ("CARECEN"), and La Raza Centro Legal, Inc. ("La Raza"). These organizations provide free social and legal services to SIJ petitioners, and, as alleged, Defendants' challenged policy and procedure leaves the organizations' SIJ clients without stable incomes and housing, diverting the limited resources of these organizations from provision of services for other low-income clients. (FAC ¶¶ 15–20, 81.)

**C.    Complaint; USCIS Policy Alert and final regulations**

During the two-day period spanning March 7 and March 8, 2022, several events relevant to this lawsuit took place. On March 7, 2022, Plaintiffs filed their initial Complaint in this matter, setting forth two claims. (Compl., ECF No. 1.) Their first claim was for violation of the equal protection guarantee of the Fifth Amendment, based on Defendants treating SIJ petitioners differently than similarly situated immigration applicants with respect to the availability of work permits. (Compl. ¶¶ 102–03.) Plaintiffs' second claim was for violation of the 8 U.S.C. § 1232(D)(2)

180-day adjudication timeframe, brought both directly pursuant to that statute and by way of the Administrative Procedure Act, 5 U.S.C. § 706(1). (Compl. ¶¶ 104–06.)

Also on March 7, 2022, Defendants announced a new policy stating that USCIS would exercise its discretion on a case-by-case basis to determine whether to grant "deferred action" status to certain SIJs. (FAC ¶ 40); USCIS Policy Alert (March 7, 2022) ("Policy Alert").[5] The practical effect of this Policy Alert most relevant to this action is that SIJs (that is, those whose SIJ status petitions USCIS has approved) can now obtain deferred action status, which in turn allows them to file an Application for Employment Authorization without first filing for LPR status (which itself requires waiting for one's priority dates to become current). *See* Policy Alert 2–3. Thus, as a result of the Policy Alert, USCIS could, at its discretion, act on a case-by-case basis in a way that allowed SIJ petitioners to apply for work authorization potentially sooner than the USCIS's prior practices allowed.

The next day, on March 8, 2022, Defendants issued "final" regulations addressing the adjudication of SIJ petitions. (FAC ¶ 41.) Among other things, the final regulations set forth the USCIS's policy for complying with the 8 U.S.C. § 1232(d)(2) 180-day SIJ adjudication timeframe. (FAC ¶ 42); SIJ Petitions, 87 Fed. Reg. 13066, 13112, 2022 WL 671891 (Mar. 8, 2022). According to the final regulations, USCIS would follow two procedures with respect to the 180-day timeframe: (1) when an SIJ petition lacks required <u>initial</u> evidence, the 180-day time period starts over on the date USCIS receives the required initial evidence; and (2) if USCIS requests that the SIJ petitioner submit <u>additional</u> evidence, the 180-day limitation is suspended as of the date of the request and resumes when USCIS receives the requested additional evidence. *Id.*; (FAC ¶ 42). Plaintiffs refer to these rules as the "stop-start rules." (*See, e.g.*, Opp'n 3, ECF No. 42.)

---

[5] Online at https://www.uscis.gov/sites/default/files/document/policy-manual-updates/20220307-SIJAndDeferredAction.pdf (accessed October 18, 2022).

**D.      First Amended Complaint**

On April 22, 2022, Plaintiffs filed the operative FAC.  The FAC accounts for the Policy Alert and final regulations USCIS issued in early March 2022, and it makes additional adjustments to the two claims at issue.  In particular, Plaintiffs now narrow their equal protection claim challenging the sufficiency of USCIS's policies, now specifying that the "similarly situated individuals" are T-1 non-immigrants (victims of human trafficking), as opposed to immigration applicants more generally.  (FAC ¶ 106.)  By way of their amended equal protection claim, Plaintiffs now allege that USCIS's failure to provide SIJ petitioners with employment authorization both before and after USCIS approves their petitions is unlawful because USCIS provides T-1 nonimmigrants with both pre- and post-approval access to employment authorization. (*Id.*)

Plaintiffs also modified their second claim pertaining to the 180-day adjudication period.  In addition to maintaining their allegation that Defendants regularly take longer than 180 days to adjudicate SIJ petitions in violation of 8 U.S.C. § 1232(d)(2), they further allege that the newly announced start-stop rules themselves constitute a violation of the same statute.  (FAC ¶ 109.)

Defendants now seek dismissal of both the constitutional claim and the statutory claim.

### III.     LEGAL STANDARDS

Defendants move to dismiss the Complaint pursuant to both Rule 12(b)(1) for lack of personal jurisdiction and Rule 12(b)(6) for failure to state a claim.  (Mot. 1–2.)

**A.     Rule 12(b)(1) (Lack of Subject Matter Jurisdiction)**

Pursuant to Rule 12(b)(1), a party may move to dismiss based on the court's lack of subject matter jurisdiction.  *See* Fed. R. Civ. P. 12(b)(1).  "A Rule 12(b)(1) jurisdictional attack may be facial or factual."  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  A facial attack "accepts the truth of the plaintiff's allegations but asserts that they are insufficient on their face to invoke

federal jurisdiction." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014) (internal quotation marks omitted). Conversely, a factual attack "contests the truth of the plaintiff's factual allegations, usually by introducing evidence outside the pleadings." *Id*.

"In resolving a factual attack on jurisdiction, the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." *Safe Air*, 373 F.3d at 1039. The court "need not presume the truthfulness of the plaintiff['s] allegations," *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000), and may "resolve factual disputes concerning the existence of jurisdiction," *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988). "Once the moving party has converted the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." *Savage v. Glendale Union High Sch., Dist. No. 205*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003).

## B.  Rule 12(b)(6) (Failure to State a Claim)

A court may dismiss a complaint under Rule 12(b)(6) for lack of a cognizable legal theory or insufficient facts pleaded to support an otherwise cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). A complaint need only satisfy the minimal notice pleading requirements of Rule 8(a)(2)—a short and plain statement of the claim—to survive a dismissal motion. *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003). The factual "allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (holding that a claim must be "plausible on its face" to avoid dismissal).

The determination of whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. A court is generally limited

to the pleadings and must construe all "factual allegations set forth in the complaint . . . as true and . . . in the light most favorable" to the plaintiff.  *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001).  However, a court need not blindly accept conclusory allegations, unwarranted deductions of fact, and unreasonable inferences.  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  Ultimately, the factual allegations must be sufficient "to give fair notice and to enable the opposing party to defend itself effectively," and the "allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation."  *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

Where a district court grants a motion to dismiss, it should generally provide leave to amend unless it is clear the complaint could not be saved by any amendment.  *See* Fed. R. Civ. P. 15(a); *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  Leave to amend "is properly denied . . . if amendment would be futile."  *Carrico v. City & County of San Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011); *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986) ("Leave to amend should be granted unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.").

## IV.    DISCUSSION

The two claims in this action are decidedly distinct from one another in nature.  Defendants attack the equal protection claim pursuant to both Rule 12(b)(1) and Rule 12(b)(6); the Court analyzes the equal protection claim under Rule 12(b)(6), taking Plaintiffs' well-pleaded factual allegations as true and considering materials subject to judicial notice.  Defendants attack the statutory claim facially and factually pursuant to Rule 12(b)(1) only, so the Court analyzes the statutory claim under that Rule, examining the pleadings, the judicially noticeable materials, and the evidence the parties submitted.

## A.    First Claim—Equal Protection

To support a claim for discrimination in violation of the Equal Protection guarantee of the Fifth Amendment to the U.S. Constitution, plaintiffs must allege and prove that a government actor treated them differently than "similarly situated" individuals.   See *Gonzalez-Medina v. Holder*, 641 F.3d 333, 336 (9th Cir. 2011) ("[T]he Fifth Amendment only requires the government to treat similarly situated individuals similarly.").   Here, as Plaintiffs are not claiming that the alleged discrimination involves fundamental rights or a suspect classification, Plaintiffs must demonstrate that the government has no rational basis for the differential treatment. *See United States v. Calderon-Segura*, 512 F.3d 1104, 1107 (9th Cir. 2008).   Under rational basis review, courts inquire whether the differential treatment is "reasonable," is "not arbitrary," and "rest[s] upon some ground of difference having a fair and substantial relation to the object of the legislation."   *Reed v. Reed*, 404 U.S. 71, 76 (1971).

Plaintiffs place a limitation on their equal protection claim by specifying that the claim "deals with the disparate treatment of T and SIJ visa petitioners *before*, not after, their petitions are approved."[6]  (Opp'n 14, 18.)  What Plaintiffs are challenging, therefore, is Defendants' practice of requiring SIJ petitioners to first gain SIJ status by way of an approved petition before applying for employment authorization.  Plaintiffs allege that T-1 applicants, by contrast, do have a way of obtaining work authorization before their T-1 applications are approved.  In particular, if the USCIS determines that a T-1 application is "bona fide," the T-1 applicant may apply for deferred action and,

---

[6] Plaintiffs' limitation of their claim is well taken.  Strictly read, the FAC appears to challenge Defendants' practice of allowing approved T-1 applicants to apply for employment authorization immediately after approval but requiring approved SIJ petitioners to wait to apply for employment authorization until their priority dates are current.  But Plaintiffs cannot successfully challenge this practice for the simple reason that Congress mandated that USCIS provide employment authorization to all T-1 applicants upon approval of their applications, 8 U.S.C. § 1101(i), whereas Congress provided no such mandate with respect to SIJ petitioners, *see generally* 8 U.S.C. § 1101. Thus, the two groups are not similarly situated in their statutory eligibility for employment authorization.

if granted, may then apply for a work permit, even if USCIS has not yet approved their T-1 application.  (*See* FAC ¶ 85.)  According to the allegations, this differential treatment of SIJ petitioners and T-1 applicants practice took place both before and after the March 2022 Policy Alert and final regulations.

Plaintiffs assert that USCIS provides T-1 applicants pre-approval work permits in this manner as a matter of practice, (*id.*), whereas Defendants insist that providing work permits is merely something they "may" do for bona fide T-1 applications and that this discretion does not amount to a policy or practice, (Reply 8–9).  However, even if the Court accepts Plaintiffs' allegations as true and assumes that USCIS provides T-1 applicants pre-approval work permits as a matter of practice, Plaintiffs' claim nevertheless fails because (1) SIJ petitioners and T-1 applicants are not similarly situated; and (2) even if they are, Defendants have a rational basis for allowing T-1 applicants to apply for work permits while their applications are pending but not allowing SIJ petitioners to do the same.

### 1.   Similarly Situated

"The first step in equal protection analysis is to identify the state's classification of groups."  *Country Classic Dairies, Inc. v. Mont. Dep't of Com. Milk Control Bureau*, 847 F.2d 593, 596 (9th Cir. 1988).  "The groups must be comprised of similarly situated persons so that the factor motivating the alleged discrimination can be identified."  *Thornton v. City of St. Helens*, 425 F.3d 1158, 1167 (9th Cir. 2005).  Separate groups of individuals are similarly situated when their circumstances are essentially "indistinguishable," *Ross v. Moffitt*, 417 U.S. 600, 609 (1974), or "in all relevant respects alike," *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992).

Here, T-1 nonimmigrant applicants and SIJ petitioners are distinguishable.  SIJs are children and young adults who are dependent on a juvenile court or under the custody of either the state or a person appointed by the court because they cannot be reunited with one or both parents, 8 U.S.C. § 1101(a)(27)(J)(i), while T-1 nonimmigrants are victims of sex or labor trafficking, 8 C.F.R. § 214.11(b)(1).

Generally, SIJs are children or young adults under the age of twenty-one, and therefore, when they petition for SIJ classification, most SIJs are still at an age where schooling is appropriate and expected. By contrast, T-1 applicants do not need to be under the age of twenty-one to apply for T-1 nonimmigrant status, and they are therefore more likely to be beyond schooling age and able to pursue immediate employment. Moreover, unlike SIJs, T-1 applicants do not need to be dependent on a juvenile court or under the custody of a court-appointed entity or individual; thus, T-1 applicants do not have an individual, entity, or state that is responsible, pursuant to a court order, to ensure that their basic needs are met. Thus, based on the definitions and contours of the SIJ and T-1 programs, T-1 applicants are more likely than SIJ applicants (1) to be able to work and (2) to need to work. The two groups differ with respect to these key characteristics and are therefore not similarly situated.

Additionally, T-1 applicants are required to comply with any reasonable request from a law-enforcement agency for assistance in the investigation or prosecution of human trafficking. 8 C.F.R. § 214.11(b)(3). This requirement reveals that not only do the two groups have separate characteristics, but the two classifications serve different purposes: one provides humanitarian protection for noncitizen juveniles who have experienced abuse, neglect, or abandonment and have been subject to state juvenile court proceedings, and the other "offer[s] protection to victims *and* strengthen[s] the ability of law enforcement agencies to detect, investigate and prosecute human trafficking." USCIS, Victims of Human Trafficking: T Nonimmigrant Status (Oct. 20, 2021) (emphasis added).[7] Indeed, unless an exception applies, this prosecutorial purpose must be served during all stages of the T-1 nonimmigrant process, and DHS may revoke T nonimmigrant status if the T-1 nonimmigrant fails to continue complying with reasonable law-enforcement requests. USCIS Policy Manual, Vol. 3, Pt. B, Ch. 13 – Revocation of Status. No similar requirements exist in

---

[7] Online at https://www.uscis.gov/humanitarian/victims-of-human-trafficking-and-other-crimes/victims-of-human-trafficking-t-nonimmigrant-status (accessed October 14, 2022).

the SIJ program because the SIJ program does not have a prosecutorial purpose.  As Congress formed these distinct groups for different reasons, they are not similarly situated.

The differences in relief available to the two groups are also distinct, reinforcing the conclusion that SIJ petitioners and T-1 applicants are not similarly situated.  *Cf. Yao v. I.N.S.*, 2 F.3d 317, 321 (9th Cir. 1993) (holding that special agricultural worker applicants and long-term continuous resident applicants were similarly situated because they were applying for the same immigration relief and were "subject to the same ultimate fate of deportation if they fail[ed] in their legalization claims").  Rather, SIJs receive a classification that provides a direct path to LPR status, while T-1 nonimmigrants receive a temporary legal status that does not directly provide for adjustment to LPR status.  Before applying to become a LPR, a T-1 nonimmigrant must also have three years of continuous physical presence in the United States.  8 C.F.R. § 245.23(a)(3).  Moreover, T-1 nonimmigrants seeking LPR status must demonstrate good moral character and generally comply with reasonable requests for assistance with investigation and prosecution of trafficking to be eligible for LPR adjustment.  *Id.* § 245.23(a)(6).  Unlike T-1 nonimmigrants, SIJ classification does not confer temporary lawful status, but instead renders the SIJ eligible to apply for an immigrant visa, thereby allowing the SIJ to apply to adjust their status to an LPR.  *Id.* § 245.1(e)(3).  Additionally, for SIJs from all countries except for four, eligibility to apply for LPR status is immediate and is not contingent upon the petitioner demonstrating compliance with reasonable law enforcement requests or other similar requirements.  (Mot. 20.)

For these reasons, SIJ petitioners and T-1 applicants are not similarly situated, and Plaintiffs' equal protection claim is therefore not cognizable.

### 2.    *Rational Basis*

Even if SIJs and T-1 nonimmigrants are similarly situated, USCIS's decision to provide different paths to employment authorization passes rational-basis scrutiny.

"[F]ederal authority in the areas of immigration and naturalization is plenary." *Mendoza v. I.N.S.*, 16 F.3d 335, 338 (9th Cir. 1994) (quoting *Sudomir v. McMahon*, 767 F.2d 1456, 1464 (9th Cir. 1985)).  Accordingly, a "very relaxed form of rational basis review" applies to federal classifications based on immigration status. *Nunez-Reyes v. Holder*, 646 F.3d 684, 689 (9th Cir. 2011).  Under this standard, "[l]ine-drawing decisions made by Congress or the President in the context of immigration and naturalization must be upheld if they are rationally related to a legitimate government purpose."  *Ram v. I.N.S.*, 243 F.3d 510, 517 (9th Cir. 2001) (internal quotation marks omitted); *Nonez-Reyes*, 646 F.3d at 689 (noting federal classifications distinguishing among groups of noncitizens are "valid unless wholly irrational").  "Under rational basis review, governmental choice 'is not subject to courtroom fact-finding and may be based on rational speculation unsupported by evidence or empirical data.'"  *United States v. Ayala-Bello*, 995 F.3d 710, 716 n.3 (9th Cir. Apr. 26, 2021) (quoting *F.C.C. v. Beach Commc'ns, Inc.*, 508 U.S. 307, 315 (1993).

The Ninth Circuit has rejected several immigration-related equal protection challenges under these standards.  *See, e.g.*, *Sandoval-Luna v. Mukasey*, 526 F.3d 1243, 1247 (9th Cir. 2008) *see also Betancourt Torres v. Holder*, 417 F. App'x 622, 624 (9th Cir. 2011); *cf. Chan v. Reno*, 113 F.3d 1068, 1074 (9th Cir. 1997) (rejecting equal protection challenge where plaintiffs were eligible for immigration relief under a different statute than those they alleged were similarly situated).

This Court reaches the same conclusion.  The different purposes and types of individuals that the SIJ program and T-1 nonimmigrant program serve provide a rational basis to distinguish between employment-authorization eligibility.  Having escaped trafficking, T-1 nonimmigrants are more likely to be in immediate need of employment and income, both to support themselves <u>and</u> to continue assisting law enforcement.  SIJs, generally speaking, are in a different position: they are, by court order, under the care of a state, its court, or its appointee, and a court has considered

and ruled on what "will best serve [the] child, as well as who is best suited to take care of [the] child."  SIJ Petitions, 87 Fed. Reg. at 13082.  These procedures help ensure the basic needs of SIJs are met, whereas no such procedures exist for T-1 applicants.  These differences provide a rational basis for providing T-1 applicants with a path to employment authorization and refusing SIJ applicants the same.  Plaintiffs fail to show otherwise.

The age difference between SIJs and T-1 nonimmigrants reinforces the rationality of Defendants' basis for different employment authorization procedures.  While not all SIJs are minors, SIJ petitioners must be under the age of twenty-one when they file their SIJ status petition.  8 U.S.C. § 1101(b)(1).  Thus, it is rational for USCIS to conclude that many SIJs are minors, enrolled in school, and consequently too young to legally work.  No such age restriction exists for T-1 nonimmigrants, and it is therefore rational for USCIS to conclude that many  T-1 nonimmigrants are not enrolled in school, are old enough to legally work, and do not necessarily have an independent source of support.  Defendants are "not compelled to verify [these] logical assumptions with statistical evidence," *Barajas-Guillen*, 632 F.2d at 754, and Plaintiffs otherwise offer nothing to suggest that the challenged policy is not rationally related to a legitimate government purpose, *Ram*, 243 F.3d at 517.

Although some of the individual Plaintiffs allege that due to the challenged policy they were ready to work but unable to do so, their allegations do not alter the foregoing analysis.  Plaintiffs are challenging a policy and practice of USCIS under which, Plaintiffs allege, USCIS treats SIJ petitioners *as a group* differently than it treats T-1 applicants *as a group*.  The issue here is whether Defendants have a rational basis for maintaining a policy that treats the two groups differently.  That the policy as applied to a particular SIJ petitioner generates an unjust or undesirable result might be relevant to the rational basis analysis, but the mere fact that a government policy generates an unjust result as applied to certain individuals does not mean the government lacks a rational basis for the policy.  *Cf. United States v. Barajas-Guillen*,

632 F.2d 749, 754 (9th Cir. 1980) ("Even if the classification involved here is to some extent both underinclusive and overinclusive, and hence the line drawn by Congress imperfect, it is nevertheless the rule that in a case like this 'perfection is by no means required.'" (quoting *Phillips Chemical Co. v. Dumas School Dist.*, 361 U.S. 376, 385 (1960)).

For these reasons, USCIS has a rational basis for the differential treatment of SIJ petitioners and T-1 applicants with respect to employment authorization. Accordingly, Plaintiffs' equal protection claim fails and is subject to dismissal.

Plaintiffs make no request for leave to amend, nor do they suggest what facts they might further allege to salvage their equal protection claim.  (*See generally* Opp'n.)  Even so, "[i]n dismissing for failure to state a claim, a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts."  *Ebner v. Fresh, Inc.*, 838 F.3d 958, 963 (9th Cir. 2016) (emphasis added). Under this standard, the Court grants Plaintiffs leave to amend the equal protection claim to cure the deficiencies identified herein.  Amendments outside this scope will be disregarded.

All other arguments raised in connection with the equal protection claim are, at least for the time being, moot.

**B.    Second Claim—180-Day Adjudication Timeframe**

Plaintiffs assert their second claim in two ways: (1) directly, pursuant to 8 U.S.C. § 1232(D)(2) and the 180-day adjudication timeframe set forth therein; and (2) by way of the Administrative Procedure Act ("APA").  (FAC ¶¶ 108–09.)  The APA provides parties a way to compel timely agency action by granting courts the power to order agencies to take action "unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1).

After amendment, and notwithstanding the two separate statutory bases for the claim, Plaintiffs' second claim hews into two substantive components.   The first

component challenges the bare fact that for some of the individual Plaintiffs and the putative Class members, USCIS has taken longer than 180 days to adjudicate SIJ petitions, as directly violative of 8 U.S.C. § 1232(d)(2).   The second component challenges the stop-start rules themselves, as inconsistent with the terms of 8 U.S.C. § 1232(d)(2).

Defendants challenge both the direct-violation and the stop-start-rule components of Plaintiffs' first claim on the basis of constitutional standing. Constitutional standing is a prerequisite to a court's subject matter jurisdiction, and without standing, a complaint is subject to dismissal pursuant to Rule 12(b)(1). *Reeves v. Nago*, 535 F. Supp. 3d 943, 951 (D. Haw. Apr. 23, 2021) ("When a plaintiff lacks constitutional standing, a suit 'is not a "case or controversy," and an Article III federal court therefore lacks subject matter jurisdiction over the suit.'" (quoting *City of Oakland v. Lynch*, 798 F.3d 1159, 1163 (9th Cir. 2015))).   To satisfy the "'irreducible constitutional minimum' of standing," the party invoking federal jurisdiction must demonstrate that it has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).  A plaintiff must establish standing for each claim and for each form of relief. *Friends of the Earth, Inc. v. Laidlaw Env't. Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000); *cf. Lewis v. Casey*, 518 U.S. 343, 358, n. 6, (1996) ("[S]tanding is not dispensed in gross.").

1.    *Failure to Adjudicate SIJ Petitions within 180 Days*

The Court first considers the "direct-violation" component of the second claim, that is, the component that challenges USCIS's failure to adjudicate SIJ petitions within 180 days, separate and apart from consideration of the policies and procedures USCIS might have followed in doing so.  The Court finds that the individual Plaintiffs have standing to pursue this component of the claim; as a result, the Court need not consider whether the organizational Plaintiffs also have standing.

a.    *Individual Plaintiffs*

"[T]he general rule applicable to federal court suits with multiple plaintiffs is that once the court determines that one of the plaintiffs has standing, it need not decide the standing of the others."  *Melendres v. Arpaio*, 695 F.3d 990, 999 (9th Cir. 2012). *see Carey v. Population Servs., Int'l*, 431 U.S. 678, 682 (1977).

Here, at least one individual Plaintiff has standing to pursue the direct-violation aspect of the second claim.  Defendants concede as much when they indicate in their moving papers that "Montes may have standing to assert an unreasonable-delay claim individually."  (Mot. 11.)  As alleged, Montes filed his SIJ petition on August 30, 2021.  (FAC ¶ 73.)  After Plaintiffs filed this case, on June 2, 2022, USCIS approved Montes's his petition.  Thus, USCIS adjudicated Montes's petition in 276 days, which is ninety-six days in excess of the statutory limit.[8]

Defendants argue in the Reply that Montes has no live stake in the outcome of the direct-violation component of the claim because USCIS has already approved his SIJ petition.  (Reply 2, ECF No. 46.)  This argument suffers from two flaws.  First, this is a decidedly different point than the one Defendants made in their moving papers; there, Defendants argued that Montes had no live stake in the controversy because USCIS never requested additional evidence from him and therefore had never applied the stop-start rules to him.  (*See* Mot. 10–11.)  "The district court need not consider arguments raised for the first time in a reply brief."  *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007); *Bennett v. Comm'r*, No. C20-5202 TLF, 2022 WL 4482948, at *1 (W.D. Wash. Sept. 27, 2022) ("District courts in this Circuit have ruled that 'it is improper for a party to raise a new argument in a reply brief[,]' largely because the opposing party may be deprived of an opportunity to respond." (quoting *United States v. Boyce*, 148 F. Supp. 2d 1069, 1085 (S.D. Cal.

---

[8] According to the allegations, USCIS took over eleven months to process Plaintiff Merino's SIJ petition, meaning that Merino's application was also adjudicated untimely.  (FAC ¶ 48.)  Neither party addresses the standing of the individual Plaintiffs whose petitions USCIS took longer than 180 days to approve but who nevertheless obtained approval before this action was filed.

2001)).   Here, Defendants did not initially argue that the eventual adjudication of Montes's SIJ petition deprives him of a live stake in a claim for unreasonable delay, and accordingly, the Court disregards this argument.[9]

Second, and more substantively, Defendants provide no support for the argument that the mere granting of a SIJ petition renders an unreasonable delay claim and all its potential remedies moot.   The individual Plaintiffs, including Montes, seek nominal damages and attorneys' fees, and Defendants fail to show that the mere fact that USCIS approved a SIJ petition after the case was filed divests a SIJ petitioner of standing to seek these remedies for delayed approval.

Given that at least one individual Plaintiff satisfies the constitutional standing requirement, and that this case is a putative class action, the Court will not engage in any finer parsing out of the claim as to particular individuals.   *Melendres*, 695 F.3d at 999; *Carey*, 431 U.S. at 682.   The *Melendres* case was a class action in which the court found that all the plaintiffs had standing based on the standing of one of the plaintiffs, and the Court sees no reason why this rule does not apply in the context of the present matter, a putative class action.   Here, it is plausible that there exist other SIJ petitioners in the same situation as Montes and that Plaintiffs might properly define and obtain certification for a class or subclass of such applicants.   That being the case, the question of which of the six named Plaintiffs have standing and which do not is less important than the question *whether* at least one of the named Plaintiffs has standing and might plausibly serve as a class representative.   As the answer to the latter question is "yes," the Court will not dismiss the direct-violation component of the second claim as asserted by the individual Plaintiffs.

---

[9] This conclusion is not altered by the fact that USCIS approved Montes's petition after Defendants filed their Motion.  If the factual basis on which a motion is brought changes, the proper procedure is to withdraw the motion and file a new one that accounts for the changed factual basis, or to ask the Court to otherwise allow for adversarial supplemental briefing on the matter.

### b.    Organizational Plaintiffs

Citing *Lujan*, 497 U.S. at 883, Defendants argue that the organizational Plaintiffs lack standing because the organizations are not within the "zone of interests" that the 180-day adjudication rule was meant to protect.  (Mot. 11.)  However, under a straightforward application of the just-discussed rule from *Melendres*, this argument is moot.  The *Melendres* case was a putative class action brought by Latino plaintiffs alleging that law enforcement had engaged in racial profiling in connection with vehicle stops.  After confirming that the individual plaintiffs had standing to bring the case, the Ninth Circuit applied the rule at issue and summarily concluded that it had no need to address the standing of a related membership organization.  695 F.3d at 999.  The same result obtains here; the Court need not address "whether [the] organization[s] me[e]t the requirements for associational standing . . . once the court determines that one of the plaintiffs has standing." *Id.*

The *I.N.S. v. Legalization Assistance Project of L.A. County Federation of Labor* case, cited by Defendants, is not to the contrary.  (Mot. 12–13 (citing 510 U.S. 1301 (1993).)  The plaintiff-respondents in that case were "organizations that provide legal help to immigrants," and Justice O'Connor, in an in-chambers opinion, directly addressed whether those organizations had standing.  510 U.S. at 1304–05.  Justice O'Connor never had occasion to apply the rule articulated in *Melendres* for the simple reason that there were no other plaintiff-respondents in that matter, individual or otherwise, who also had standing.  Thus, *Legalization Assistance Project* is not apposite.  Defendants offer nothing else to rebut the rule in *Melendres* or its applicability to this case.  (*See* Reply 1–8.)

For these reasons, the first component of Plaintiffs' second claim, which seeks remedies for Defendants' untimely adjudication of SIJ petitions separate and apart from any stop-start rules that may have been applied, is viable as to all Plaintiffs, and will not be dismissed for lack of subject matter jurisdiction.

1          *2.     Start-Stop Rules*

2         Having found the direct-violation component of Plaintiffs' second claim to be

3  viable, what remains is the stop-start-rule component of Plaintiffs' second claim.  The

4  Court stops short of determining whether it has subject matter jurisdiction as to this

5  component of the claim because granting piecemeal dismissal in this manner would

6  raise due process concerns.  Defendants' Notice of Motion and Motion are not drafted

7  with sufficient clarity to provide Plaintiffs notice that Defendants seek "piecemeal"

8  dismissal of either of the claims, that is, dismissal of a portion of the *substance* of the

9  claim that would leave other aspects of the claim intact.  (*See* Mot. 9:25–26

10  (requesting dismissal of "Count II in its entirety," without suggesting piecemeal

11  dismissal of a substantive part of the claim); 10:8–9, 11:12–14, 24:4–5 (same).)

12  Accordingly, out of concern for due process, this Court will not order any piecemeal

13  dismissal.  *See* C.D. Cal. L.R. 7-4 ("The notice of motion shall contain a concise

14  statement of the relief or Court action the movant seeks.").

15         The Court has subject matter jurisdiction over the direct-violation portion of

16  Plaintiffs' second claim, and for the foregoing reasons, the Court will not further parse

17  the allegations to inquire whether it lacks subject matter jurisdiction over finer

18  portions of the claim.  Accordingly, Plaintiffs' second claim is viable in its entirety.

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

## V.   CONCLUSION

Defendants' Motion to Dismiss is **GRANTED IN PART AND DENIED IN PART**.  (ECF No. 41.)  Plaintiffs' first claim is **dismissed with leave to amend** as provided herein.  Defendants' Motion is otherwise denied, and Plaintiffs' second claim remains viable in its entirety.

Plaintiffs' Second Amended Complaint, if any, is due no later than **November 9, 2022**.  Defendants' Answer or other response—to the Second Amended Complaint, if filed, and if not, to the First Amended Complaint—is due no later than **November 27, 2022**.

Finally, the Court **DISCHARGES** its May 6, 2022 Order regarding the deadline for moving for class certification.  (ECF No. 40.)  The Court will set a deadline for moving for class certification at the appropriate time.

**IT IS SO ORDERED.**

October 26, 2022

_____

**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**