**O**

# United States District Court
# Central District of California

| | |
|---|---|
| CASA LIBRE/FREEDOM HOUSE et al., | Case № 2:22-cv-01510-ODW (JPRx) |
| Plaintiffs, | |
| v. | **ORDER GRANTING IN PART AND DENYING IN PART CROSS-MOTIONS FOR SUMMARY JUDGMENT [97] [102]** |
| ALEJANDRO MAYORKAS et al., | |
| Defendants. | |

## I.   INTRODUCTION

This is an action challenging how U.S. Citizenship and Immigration Services ("USCIS") processes petitions for Special Immigrant Juvenile ("SIJ") status.  The Plaintiffs are individuals who submitted SIJ petitions to USCIS and organizations who provide legal and other assistance to such individuals.  The Court certified a class for the purpose of Plaintiffs' challenge to regulations that allow USCIS in certain circumstances to suspend the statutory 180-day deadline for adjudicating SIJ petitions. (Order Certify Class, ECF No. 91.)  Both sides now move for summary judgment. (Pl. Mot. Summ. J. ("Pl. Mot."), ECF No. 97; Def. Mot. Summ. J. ("Def. Mot."), ECF No. 102.)  For the following reasons, the Court **GRANTS IN PART AND DENIES IN PART** each Motion.

## II.   BACKGROUND

At the outset of this case, Plaintiffs asserted two claims: a constitutional equal protection claim and a claim pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701–706.   The Court has since dismissed the equal protection claim, (Order Mot. Dismiss FAC, ECF No. 48), and has narrowed which aspects of the APA claim may proceed on a classwide basis, (Order Certify Class 27–28).   The following facts relate to the claims that remain.

### A.   The SIJ Petition Process

In 1990, Congress created the SIJ classification to aid noncitizen children physically present in the United States who were declared dependent on state courts and were eligible for long-term foster care.   Immigration Act of 1990, Pub. L. No. 101–649, § 153, 104 Stat. 4978 (1990).   The purpose of the SIJ classification is to help alleviate "hardships experienced by some dependents of United States juvenile courts by providing qualified aliens with the opportunity to apply for special immigrant classification and lawful permanent resident status, with possibility of becoming citizens of the United States in the future."   58 Fed. Reg. 42843-01, 42844, 1993 WL 304167 (Aug. 12, 1993).

In 1998, Congress revised the SIJ definition to include juveniles eligible for long-term foster care "due to abuse, neglect, or abandonment."   Departments of Commerce, Justice, & State, the Judiciary, & Related Agencies Appropriations Act of 1998, H.R. 2267, Pub. L. 105–119, 105th Cong., at 22 (Nov. 26, 1997).   More recently, in 2008, Congress passed the Trafficking Victims Protection Reauthorization Act of 2008 ("TVPRA").   Pub. L. No. 110–457, § 235(d), 112 Stat. 5044 (2008).   The TVPRA replaced the foster care requirement with more expansive language permitting young immigrants to apply for SIJ status based on a state court's finding that "reunification with 1 or both of the immigrant's parents is not viable due to abuse, neglect, abandonment, or a similar basis found under State law."   TVPRA

§ 235(d)(1)(A); Immigration & Nationality Act § 101(a)(27)(J)(i), 8 U.S.C. § 1101(a)(27)(J)(i); *see J.L. v. Cissna*, 341 F. Supp. 3d 1048, 1055 (N.D. Cal. 2018). The TVPRA also amended the SIJ statute to provide that "[a]ll applications for [SIJ] status . . . shall be adjudicated . . . not later than 180 days after the date on which the application is filed." TVPRA § 235, 8 U.S.C. § 1232(d)(2). This deadline is the key statutory provision at issue in this case.

SIJ status is available if (1) the juvenile immigrant has been declared dependent on a juvenile court or legally committed to the custody of an individual or entity; (2) reunification with one or both of the juvenile immigrant's parents is not viable due to abuse, neglect, or abandonment; (3) it has been determined in administrative or judicial proceedings that it would not be in the juvenile immigrant's best interest to be returned to the juvenile immigrant's or parent's previous country of nationality or country of last habitual residence; and (4) the Secretary of Homeland Security consents to the grant of special immigrant juvenile status. *See* 8 U.S.C. § 1101(a)(27)(J). The petitioner must be under the age of twenty-one at the time they file their SIJ petition. 8 C.F.R. § 204.11(b)(1).

SIJ status provides a pathway to lawful permanent residency: once a juvenile immigrant's SIJ petition is approved, the juvenile immigrant may then apply to adjust their status to lawful permanent resident. 8 U.S.C. § 1255(a), (h).

**B.    Tolling Provisions**

Pursuant to enacted regulations, USCIS follows two procedures with respect to the aforementioned 180-day deadline:

- When a SIJ petition lacks required <u>initial</u> evidence, USCIS informs the petitioner what evidence is required and provides a deadline for submitting the additional evidence. *See* 8 C.F.R. § 103.2(b)(8)(ii). The 180-day time period starts over on the date USCIS receives the required initial evidence. *Id.* § 204.11(g)(1).

- If USCIS requests that the SIJ petitioner submit <u>additional</u> evidence, USCIS may send the petitioner a Request for Evidence ("RFE") or a Notice of Intent to Deny ("NOID"). *See id.* § 103.2(b)(8)(iii). The 180-day deadline is suspended, or "tolled," as of the date the RFE or NOID is issued and resumes when USCIS receives the requested additional evidence. *Id.* §§ 103.2(b)(10)(i), 204.11(g)(1).

Herein, the Court refers to these rules as the "Tolling Provisions." The Tolling Provisions are based on longstanding Immigration and Naturalization Service ("INS") regulations, first adopted in 1996, that govern how INS interprets statutory and regulatory processing timeframes. At the time the 1996 regulation was adopted, INS explained:

> The filing of [a] . . . petition without the required initial evidence . . . effectively hampers our ability to make a definitive determination of eligibility. . . . Therefore, the Service considers processing time for any application or petition to refer to time unhampered by the applicant or petitioner's action or lack of required action.
>
> . . .
>
> Accordingly, in such circumstances the processing clock will stop with respect to any time limits for adjudicating the request for Service action at the time the Service sends a notice for initial evidence, and it will start over at the time the Service receives the evidence . . . .

(DSUF 55 (citing Changes in Processing Procedures for certain Applications and for Immigration Benefits, 59 Fed. Reg. 1455-01, 1457, 1994 WL 5197 (Jan. 11, 1994)).

USCIS is not statutorily required to issue a RFE or a NOID. Instead, pursuant to USCIS regulations, when a SIJ petition is deficient, USCIS retains the discretion to choose, in each individual case, whether to issue a RFE or a NOID, or deny the petition altogether. 8 C.F.R. §§ 103.2(b)(8)(ii), (iii). Under USCIS policy, officers are directed "not [to] issue an RFE or NOID if the officer determines the evidence already submitted establishes eligibility or ineligibility for the request." (Pl. Statement of Uncontroverted Facts ("PSUF") 63, ECF No. 97-14 (quoting USCIS Policy Manual ("Pol. Man.") Vol. 1, Part E, Chap. 6, § F).)

**C.      How USCIS Processes SIJ Petitions**

USCIS trains the officers who adjudicate SIJ petitions on the history and background of the SIJ classification, the child welfare process, general SIJ eligibility requirements, what constitutes a juvenile court, whether the juvenile court has jurisdiction over the SIJ petitioner, the relevance of dependency or custody, the function of best interest and reunification findings by the state court, and ultimately, whether the SIJ petitioner has met all requirements such that the Secretary of Homeland Security's consent is warranted.  (Def. Statement of Uncontroverted Facts ("DSUF") 12, ECF No. 102-2; Pl. Statement of Genuine Issues ("PSGI") 12, ECF No. 107-1 (designating facts as undisputed); *see also* Def. Resp. PSGI, ECF No. 108-1.)  As part of each SIJ adjudication, the adjudicating officer must thoroughly review the record, including the petitioner's immigration history and any prior applications to USCIS.  (DSUF 5.)  The adjudicating officer must also ensure the petitioner has passed a background and security check.  (DSUF 5.)  If the officer determines that the petitioner meets all requirements, the officer approves the case and grants SIJ classification.  (DSUF 7.)  If the officer determines that the petitioner has not met all eligibility requirements, the officer may (i) issue a RFE; (ii) issue a NOID, or (iii) deny the petition.  (*Id.*)

USCIS regulations permit adjudicating officers some flexibility in assigning deadlines for petitioners to respond to a RFE, subject to a maximum response period of eighty-four days.  (DSUF 9.)  To ensure consistency, officers generally allow petitioners the full eighty-four days, but USCIS regulations permit officers to advance the response deadline on a case-by-case basis after obtaining supervisory concurrence.  (*Id.*)  As USCIS policy provides, when issuing a RFE, the officer should ask for all the evidence the officer anticipates needing to determine eligibility and clearly state the deadline for response.  (DSUF 8.)  An officer should not request evidence that is outside the scope of the adjudication or otherwise irrelevant to an identified deficiency.  (*Id.*)

USCIS has discretion to issue a NOID for similar and additional reasons, including when the petitioner has not established eligibility or when USCIS uncovers derogatory information of which the petitioner may not be aware. (DSUF 10.) The deadline for responding to a NOID is subject to an upper limit of thirty-three days. (DSUF 19.)

From March 2020 to March 2023, as part of a series of "COVID-Related Flexibilities," USCIS granted SIJ petitioners an additional sixty days to respond with the evidence requested in a RFE or NOID, meaning petitioners typically had a maximum of 147 days to respond to a RFE and 93 days to respond to a NOID. (DSUF 19.)

While USCIS does not second-guess the judgment of the juvenile court or "reweigh the evidence" to determine whether the order meets the requirements under 8 U.S.C. § 1101(a)(27)(J)(i), USCIS must nevertheless "review the juvenile court order(s) and any supporting evidence submitted" to determine whether the petition warrants USCIS's consent to the grant of SIJ classification, as required under 8 U.S.C. § 1101(a)(27)(J)(iii). Pol. Man. Vol. 6, Pt. J, Ch. 2, § D; (Def. Resp. PSGI 5). To warrant USCIS's consent, the evidence must allow USCIS to conclude "that the request for SIJ classification is bona fide, which requires the petitioner to establish that a primary reason the required juvenile court determinations were sought was to obtain relief from parental abuse, neglect, abandonment, or a similar basis under state law." Pol. Man. Vol. 6, Pt. J, Ch. 2, § D; see also 8 C.F.R. § 204.11(b)(5). To determine whether a "primary reason" that the petitioner sought the juvenile court order was to obtain relief from parental maltreatment, USCIS looks to juvenile court's determinations, the factual bases supporting those determinations, and the relief provided by the juvenile court. Pol. Man. Vol. 6, Pt. J, Ch. 2, § D.

**D.   USCIS Hiring Freeze and Budget Cuts**

To cover its operating costs, USCIS relies in large part on fees paid by those who apply for immigration benefits. (DSUF 15.) Starting in March 2020, USCIS saw

a 50% reduction in incoming fees as a result of the COVID-19 pandemic. (DSUF 16.) As a consequence, beginning May 1, 2020, and continuing through March 31, 2021, USCIS implemented a hiring freeze. (*Id.*) While the hiring freeze was in place, USCIS was unable to engage in normal hiring processes, including replacing staff who retired, transferred, or otherwise moved on from their positions. (*Id.*)

USCIS has also recently experienced $500 million in budget cuts. (*Id.*) As a result, support staff at the National Benefits Center has been reduced by 1,000. (*Id.*)

The hiring freeze has since been lifted, and as of June 30, 2023, there are still approximately ninety-four vacant positions at the National Benefits Center. (DSUF 18.) The process of re-staffing the Center often takes several months and continues to this day as USCIS attempts to reach full staffing in all its component offices. (DSUF 17; Decl. Rose Kendrick ISO Def. Mot. ("Kendrick Decl.") ¶ 36, ECF No. 103.) The process of onboarding new employees, which includes interviews, background checks, and training, typically takes six months, and an onboarded employee typically requires at least six months to become proficient in SIJ adjudications. (DSUF 17.)

E.     **SIJ Petition Adjudication Data**

For SIJ petitions filed between January 1, 2020, and June 29, 2023, USCIS's average processing time to adjudicate SIJ petitions is 205 days, which is 25 days beyond the 180-day deadline. (DSUF 40.) This figure includes all actual days from receipt to the final decision, including the days during which the deadline is tolled while USCIS waits for SIJ petitioners to submit evidence responsive to RFEs and NOIDs. (DSUF 41.)

Of the 78,844 SIJ petitions that were adjudicated between January 1, 2020, and June 29, 2023, 77,210 (97.9%) were approved and 1,634 (2.1%) were denied. (DSUF 44.) Of the 78,844 adjudicated SIJ petitions, 12,140 (15.3%) were issued RFEs. (*Id.*) In the most recent quarter for which data is available, USCIS issued 1,542 RFEs and 464 NOIDs to SIJ petitioners. (*Id.*)

In fiscal year 2022, USCIS received a total of 31,933 SIJ petitions, a 40% increase from the previous fiscal year.  (DSUF 21.)  The volume of SIJ petition submissions continued to increase throughout early 2023.  (DSUF 22.)

**F.     Recent Efforts to Expedite SIJ Petition Processing**

In late 2021, USCIS added a new permanent SIJ section at the USCIS National Benefits Center, and it is currently recruiting and selecting officers for this section. (DSUF 52.)  The SIJ team at the National Benefits Center now has approximately sixty-three officers permanently assigned to process SIJ petitions, and generally, each officer adjudicates two SIJ petitions per workday.  (DSUF  50.)  This means that the team can be expected to adjudicate 16,380 petitions in a six-month period, but this falls short of the number of SIJ petitions USCIS might expect to receive.  (*Id.* (citing declaration referencing data showing 18,203 SIJ petitions received in a recent six-month period).)

As a result of the increase in receipts over time and related staffing shortages, USCIS has resumed hiring, trained and either temporarily or permanently reassigned additional officers to adjudicate SIJ petitions, reassigned all non-SIJ activities from officers assigned to the SIJ workload, and allowed officers to work overtime on the SIJ workload.  (DSUF 23; Kendrick Decl. ¶¶ 40, 43.)

**G.     Procedural History**

On March 7, 2022, Plaintiffs filed their initial Complaint in this matter, setting forth two claims.  (Compl., ECF No. 1.)  Plaintiffs' first claim is an equal protection claim.  (*Id.* ¶¶ 102–03.)  Plaintiffs' second claim is for violation of the 180-day adjudication deadline imposed by 8 U.S.C. § 1232(d)(2), brought by way of the APA, 5 U.S.C. §§ 701–706.  (*Id.* ¶¶ 104–06.)  On April 22, 2022, Plaintiffs filed the operative First Amended Complaint, setting forth the same two claims and amending the second claim in light of Tolling Provisions, which USCIS had recently announced. (*See* First Am. Compl. ("FAC"), ECF No. 34.)

Defendants moved to dismiss both claims.  (Mot. Dismiss FAC, ECF No. 41.) The Court dismissed the equal protection claim in its entirety, leaving only the second claim at issue.  (Order Mot. Dismiss FAC.)

Plaintiffs' second claim is styled as a claim for "routine[] violat[ions]" of 8 U.S.C. § 1232(d)(2).  (FAC at 29.)  The claim comprises two distinct subparts, and each subpart has its own distinct basis.  First, Plaintiffs challenge "Defendants' policy and practice of routinely delaying the adjudication of SIJ petitions for longer than 180 days."  (FAC ¶ 109.)  The Court previously referred to this subpart of the claim as the "missed deadline claim," and moving forward, the Court refers to it the "routine delay claim," in accord with Plaintiffs' own allegations.  Second, Plaintiffs challenge the Tolling Provisions themselves.  (*Id.*)  The Court refers to this subpart of the claim as the "Tolling Provisions claim."  The primary remedies Plaintiffs seek are (1) a declaration that the Tolling Provisions and the routine delays are unlawful; and (2) a permanent injunction directing USCIS's strict compliance with the 180-day deadline. (FAC 30–31.)

On February 16, 2023, Plaintiffs moved for class certification.  (Mot. Certify Class, ECF No. 58.)  The Court granted the motion in part, certifying a class of individual SIJ petitioners for the purposes of the Tolling Provisions claim and declining to certify a class for the purposes of the routine delay claim.  (Order Certify Class 27–28.)  Each side now moves for summary judgment.  (Pl. Mot.; Def. Mot.) The Motions are fully briefed.  (Order Joint Appl., ECF No. 96; Pl. Combined Opp'n & Reply Br. ("Pl. Opp'n"), ECF No. 107; Def. Reply, ECF No. 108.)  The Court carefully considered these materials, deemed the matter appropriate for decision without oral argument, and took the Motions under submission.  Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

## H.    *Galvez v. Cissna*

This case is related to a case in the Western District of Washington, originally styled as *Galvez v. Cissna*, No. 2:19-cv-00321-RSL (W.D. Wash. filed Mar. 5, 2019).[1] The plaintiffs in *Galvez* are SIJ petitioners in the State of Washington who challenged certain USCIS practices, including the Tolling Provisions.  The district court in *Galvez* held that USCIS's delays were unlawful and issued a permanent injunction imposing a strict 180-day deadline on USCIS and allowing Washington-based SIJ petitioners— but not USCIS—to toll the statutory deadline.  Order Mot. Summ. J. 19–20, *Galvez v. Cissna*, No. 2:19-cv-00321-RSL (W.D. Wash. issued Oct. 5, 2020), ECF No. 76.  As part of the injunction, the court ordered that "USCIS may not use the issuance of a request for information or notice of intent to deny for the sole purpose of avoiding the statutory deadline for adjudication of an SIJ petition."  *Id.*

The Ninth Circuit affirmed the permanent injunction, with one exception, in *Galvez v. Jaddou*, 52 F.4th 821 (9th Cir. 2022).  It found the district court abused its discretion in issuing the part of the injunction allowing SIJ petitioners but not USCIS to toll the statutory deadline.  52 F.4th at 838.  It remanded the case and instructed the district court "to make any further, proper modifications to its order consistent with its disposition."  *Id.* at 839.  The Ninth Circuit concluded its opinion by "encourag[ing] the parties on remand to present the district court with more practical terms for an injunction that considers Congress's plain directive and the parties' respective interests."  *Id.*

To comply with the *Galvez* injunction, USCIS now issues only NOIDs, to which a petitioner has thirty-three days to respond, and not RFEs, to Washington-state SIJ petitioners.  (DSUF 46.)   To comply with the injunction, USCIS also prioritizes Washington-state petitions over all other petitions nationwide.  (*Id.*)  To achieve this, rather than being placed in a queue, Washington-state SIJ petitioners immediately go to the front of the line for adjudication.  (*Id.*)

---

[1] Later *Galvez v. Cuccinelli* and currently *Galvez v. Jaddou*.  See Fed. R. Civ. P. 25(d).

# III.   LEGAL STANDARD

## A.   Administrative Procedure Act

The Administrative Procedure Act permits those desiring to challenge the final decision of an administrative agency to seek review in a federal district court. 5 U.S.C. § 706.  Under 5 U.S.C. § 706(2)(A), district courts are empowered to "hold unlawful and set aside agency action, findings, and conclusions" when the agency action is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."

A court reviews the agency's purely legal determinations de novo.  *Akiak Native Cmty. v. U.S. Postal Serv.*, 213 F.3d 1140, 1144 (9th Cir. 2000).  But when the agency has made factual findings, the court may review those findings only for substantial evidence; that is, the agency action is valid if a "reasonable basis exists" for the agency's factual findings.  *Arrington v. Daniels*, 516 F.3d 1106, 1112 (9th Cir. 2008).  An agency abuses its discretion, and its decision is therefore subject to invalidation, "if there is no evidence to support the decision or if the decision was based on an improper understanding of the law."  *Tongatapu Woodcraft Haw., Ltd. v. Feldman*, 736 F.2d 1305, 1308 (9th Cir. 1984).

## B.   Summary Judgment

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Because judicial review under the APA is confined to the administrative record, *Arrington*, 516 F.3d at 1112, in the typical case, "the entire case is a question of law," *Tolowa Nation v. United States*, 380 F. Supp. 3d 959, 963 (N.D. Cal. 2019) (internal quotation marks removed).  Thus, courts routinely resolve APA actions by way of summary judgment.  *See, e.g.*, *Occidental Eng'g Co. v. I.N.S.*, 753 F.2d 766, 770 (9th Cir. 1985).

# IV.    DISCUSSION

Plaintiffs seek summary judgment in their favor in the form of a ruling that (1) as claimed by the certified class of individual SIJ petitioners, the Tolling Provisions violate both the 180-day statutory deadline for the adjudication of SIJ petitions and the APA, and (2) as claimed by the Organizational Plaintiffs, Defendants' routine delay in adjudicating SIJ petitions beyond 180 days violates both the 180-day statutory deadline and the APA.  (Pl. Notice Mot., ECF No. 97.)  Defendants seek summary judgment on Plaintiffs' Amended Complaint generally.  (Def. Notice Mot., ECF No. 102.)

For the following reasons, the Court finds that the Tolling Provisions violate the statutory 180-day limit, and the Court will issue declaratory relief, but not injunctive relief, to that effect.  By contrast, the routine delay claim must be dismissed because, absent class certification, the remedies Plaintiffs seek for USCIS's alleged routine delay are not available under the APA.

## A.    Tolling Provisions Claim

On behalf of a certified class of SIJ petitioners, Plaintiffs challenge the Tolling Provisions pursuant to 5 U.S.C. § 706(2)(A), which allows courts to "hold unlawful and set aside agency action, findings, and conclusions" when the agency action is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  (FAC ¶ 109.)  The Tolling Provisions at issue here are an "agency action."  *See* 5 U.S.C. § 551(13) ("'[A]gency action' includes the whole or a part of an agency rule.").  Plaintiffs ask the Court to find that the Tolling Provisions are "not in accordance with" the TVPRA's 180-day deadline.  5 U.S.C. § 706(2)(A).

To clarify, Plaintiffs in this case are not advancing a theory that USCIS is issuing RFEs and NOIDs without a bona fide basis to do so, solely for the purpose of delaying adjudication of an otherwise complete SIJ petition.  While this issue appears to have arisen in *Galvez*, it does not arise here.  *See Galvez*, 52 F.4th at 829 (setting forth terms of district courts' injunction, including that "USCIS may not use the

issuance of a request for information or notice of intent to deny for the sole purpose of avoiding the statutory deadline for adjudication of an SIJ petition"); *id.* at 840 (describing district court's injunction "forb[idding] the claims-processing gimmicks that USCIS had argued it could use to dodge the 180-deadline") (Graber, J., dissenting in part).  There is no evidence in the record of this case that USCIS is issuing RFEs or NOIDs in circumstances where they are not required, much less evidence that USCIS is doing so for the purpose of delaying adjudication.  This discussion remains squarely focused on the Tolling Provisions themselves, not on how USCIS may be applying or using the Tolling Provisions.

For the following reasons, the Court finds that the Tolling Provisions are "not in accordance with" the TVPRA's 180-day deadline, 8 U.S.C. § 1232(d)(2), a finding that justifies declaratory relief but not a permanent injunction directing USCIS to strictly comply with the statute.  Furthermore, the Court finds that the Tolling Provisions are arbitrary and capricious to the extent, and only to the extent, that they allow for violation of the 180-day deadline in 8 U.S.C. § 1232(d)(2).

1.    *The Tolling Provisions are not "in accordance with" the TVPRA's 180-day deadline, and declaratory relief is appropriate.*

This brings the Court to the core issue of this case: whether the Tolling Provisions are "in accordance with" the 180-day statutory deadline set forth at 8 U.S.C. § 1232(d)(2).

When it enacted 8 U.S.C. § 1232(d)(2), Congress issued a "plain directive," *Galvez*, 62 F.4th at 839, that USCIS adjudicate SIJ petitions "not later than 180 days after the date on which the application is filed."  In discussing this deadline, the Ninth Circuit in *Galvez* noted that courts are to "primarily interpret a statute by its text" and avoid "augment[ing] or mak[ing] exceptions to the law as [the court may] think would better achieve the results some may reasonably interpret the law to be aimed to achieve."  *Galvez*, 52 F.4th at 837 n.11.

13

That principle applies here.  The statute at issue "plainly provides no mechanism for 'tolling.'"  *Id.* at 838.  If Congress had wished to provide USCIS with a mechanism for extending the 180-day deadline in certain circumstances, Congress could and would have done so.  *Id.* at 837 n.11 ("Congress's decision to choose specifically 180 days, use mandatory language, and omit tolling language may reflect competing values that have already been considered by Congress in determining how best to effectuate section 1232's overarching goal of protecting vulnerable immigrant children.").  Thus, "[c]reating a carveout where the text provides none may actually frustrate rather than effectuate legislative intent."  *Id.* (cleaned up).

Granted, any analysis in *Galvez* regarding the lawfulness of the Tolling Provisions is dicta.  The government was not appealing the *Galvez* district court's finding on the unlawfulness of the Tolling Provisions, and thus, the Ninth Circuit simply assumed the Tolling Provisions were unlawful for the purpose of its analysis. *Galvez*, 52 F.4th at 826 ("This case does not require us to decide whether USCIS violated § 1232(d)(2) by delaying the adjudication of SIJ petitions.").  Dicta or not, the Court finds the Ninth Circuit's reasoning persuasive, as well as strong evidence that the Ninth Circuit would find the Tolling Provisions to be unlawful, if presented directly with the issue.

Based on these observations, this Court finds that the Tolling Provisions violate 8 U.S.C. § 1232(d)(2) to the extent they allow USCIS in particular instances to extend the deadline for adjudicating SIJ petitions beyond the statutorily mandated 180-day deadline.  Therefore, the Tolling Provisions are an "agency action" "not in accordance with law," constituting a violation of the APA.   5 U.S.C. § 706(2)(A).

Defendants offer two main arguments in response.  First, they argue that, under the so-called *TRAC* factors, USCIS has not unreasonably delayed adjudication of SIJ petitions.  However, as discussed below, the *TRAC* factors have no application in the context of Plaintiffs' Tolling Provisions challenge.  Second, Defendants argue that

USCIS is entitled to *Chevron* deference, but as discussed below, this argument fails because the statute at issue is not ambiguous.

a.   Applicability of *TRAC* Factors

Defendants argue that the factors for determining whether delay was unreasonable as set forth in *Telecommunications Research & Action Center v. F.C.C.* (*TRAC*), 750 F.2d 70, 79–80 (D.C. Cir. 1984), apply to this case.  The Court has previously engaged with the *TRAC* factors in determining whether to certify a class for the purpose of Plaintiffs' routine delay claim.  (Order Certify Class 23–25).

This discussion, of course, is about the legal viability of the Tolling Provisions claim.  To whatever extent the *TRAC* factors may apply to this case, it is clear that the *TRAC* factors do not apply to Plaintiffs' challenge to the lawfulness of the Tolling Provisions in particular.  As discussed, the Tolling Provisions are an agency action that Plaintiffs assert is "not in accordance with law," and the Tolling Provisions are therefore appropriately challenged under 5 U.S.C. § 706(2)(A).

In contrast, the purpose of the *TRAC* factors is to determine whether a delay was unreasonable, and the *TRAC* factors therefore have applicability only in the context of unreasonable-delay claims brought under 5 U.S.C. § 706(1).  *See, e.g.*, *In re A Cmty. Voice*, 878 F.3d 779, 786 (9th Cir. 2017) (confirming "unreasonable delay is evaluated under the *TRAC* factors," and collecting cases).  While Plaintiffs can and do challenge the Tolling Provisions under § 706(2)(A), there is no reasonable argument that Plaintiffs could challenge the Tolling Provisions under § 706(1).  Under § 706(1), courts can "compel agency action unlawfully withheld or unreasonably delayed," which is not what Plaintiffs seek to do in challenging the Tolling Provisions here.  The Tolling Provisions have already been enacted, and the issue here is obviously not whether the Tolling Provisions were enacted in a timely manner.  Instead, Plaintiffs are challenging the legality of the Tolling Provisions themselves.  It may be that the *effect* of the Tolling Provisions is an unreasonable delay, but that does not mean that the challenge to the Tolling Provisions themselves constitutes an unreasonable delay

claim.  Moreover, it makes little sense to speak of *prohibiting* USCIS from applying the Tolling Provisions as a type of "compel[ling]" of agency action as contemplated by § 706(1).

The *TRAC* factors do not apply in the context of Plaintiffs' challenge to the Tolling Provisions.  Accordingly, any argument based on the *TRAC* factors has no relevance in the Tolling Provisions analysis.

> **b.**   *Chevron* Deference

Defendants further argue that the Tolling Provisions are USCIS's interpretation of a statute and are accordingly entitled to deference under *Chevron, U.S.A. Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984).

When an agency issues a regulation interpreting a statute that it administers, courts apply the two-step approach set out in *Chevron*.  *Id.* at 842.  First, the court determines whether the statute is "silent or ambiguous with respect to the specific issue."  *Id.* at 843.  At that point, "[i]f the intent of Congress is clear, that is the end of the matter," and courts "must give effect to the unambiguously expressed intent of Congress."  *Akhtar v. Burzynski*, 384 F.3d 1193, 1198 (9th Cir. 2004) (quoting *Chevron*, 467 U.S. at 842–43).  Otherwise, the court proceeds to step two and determines whether the agency's rule is based on a "permissible construction of the statute."  *Safer Chems., Healthy Families v. EPA*, 943 F.3d 397, 422 (9th Cir. 2019).  If the agency's construction is permissible, the court must defer to the agency's interpretation.  *Id.*

Here, the Tolling Provisions are not entitled to *Chevron* deference because the statute they interpret, 8 U.S.C. § 1232(d), is not ambiguous.  Defendants urge the Court to find ambiguity based on two words in the statute: "adjudicated" and "filed." (Def. Mot. 16–18.)  This argument fails on both counts.

First, the use of the word "adjudicated" does not create any ambiguity in the statute.  Defendants point to other congressional uses of the word "adjudicate" in statutes governing USCIS to suggest that "adjudicate" in the Tolling Provisions is

ambiguous. (*Id.*) Their core argument is that "in the immigration context, 'adjudicate' can mean a final decision, *i.e.* an approval or denial, or determining that the petition is deficient and requesting evidence to overcome that deficiency." (*Id.* at 18.)

The Court rejects this argument. The statutory deadline is clearly drafted and there is no suggestion or implication of any exceptions. *See* 8 U.S.C. 1232(d) ("All [SIJ] applications . . . shall be adjudicated . . . not later than 180 days after the date on which the application is filed."). Moreover, the words "applications" and "filed" provide additional contextual cues regarding the clear meaning of "adjudicated." That Congress mandated that "applications" must go from "filed" to "adjudicated"—that is, from start to finish—in 180 days or less confirms that "adjudicated" means what Plaintiffs assert that it means: either approved or denied. That is to say, the word "adjudicated" in § 1232(d) unambiguously excludes the act of issuing a RFE or NOID. *See Galvez*, 52 F.4th at 837 n.11 (suggesting that the text of § 1232(d) is "clear" and devoid of "textual ambiguity justifying the tolling provision").

The same is true of the word "filed." The statute indicates an unambiguous intent that the entire process of SIJ petition adjudication, from start to finish, take no more than 180 days. The word "filed" has its usual meaning here; a petition is filed when it is transmitted to, and received by, USCIS. The statute makes no suggestion or implication that "filed" should refer to some later date after a petitioner has submitted additional materials.

The statute at issue, 8 U.S.C. 1232(d), is clear about the 180-day statutory deadline and contains no ambiguity requiring interpretation. Accordingly, the Court does not give *Chevron* deference to the Tolling Provisions.

        c.     <u>The Court will not issue injunctive relief.</u>

Having determined that the Tolling Provisions are not in accordance with the law set forth at 8 U.S.C. 1232(d), the Court proceeds to consider whether it is appropriate to issue injunctive relief. Plaintiffs seek a permanent injunction "requiring

that Defendants adjudicate SIJ petitions within six months of submission," (FAC, Prayer for Relief ¶ 4), and they urge the Court to defer determining the exact terms of the injunction to provide the parties an opportunity to cooperate on the matter following a ruling in Plaintiffs' favor. (Pl. Opp'n 32.)

An injunction is an "extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008); *see Flexible Lifeline Sys., Inc. v. Precision Lift, Inc.*, 654 F.3d 989, 996 (9th Cir. 2011) (confirming that the standards for injunctions apply equally to preliminary and permanent injunctive relief); *Menges v. Knudsen*, 538 F. Supp. 3d 1082, 1105 (D. Mont. 2021) (evaluating permanent injunction). Thus, the mere fact that a court has jurisdiction to enforce a statute does not mean the court has an "absolute duty" to ensure compliance with the statute, and courts are "not mechanically obligated to grant an injunction for every violation of law." *N. Cheyenne Tribe v. Norton*, 503 F.3d 836, 843 (9th Cir. 2007) (quoting *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 313 (1982)). Instead, courts "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531, 542 (1987); *see N. Cheyenne Tribe*, 503 F.3d at 842 (rejecting appellants' theory that "when a district court finds a violation of a statute, it must enforce the statute without qualification").

The Ninth Circuit's opinion in *Galvez* confirms that it is appropriate to apply the traditional injunctive-relief factors to determine whether to issue an injunction requiring USCIS's strict compliance with the 180-day deadline. *See Galvez*, 52 F.4th at 831 (applying traditional injunctive-relief factors to determine whether district court abused its discretion in enjoining USCIS to strictly comply with 180-day deadline). These factors are: (1) whether the plaintiffs have suffered an irreparable injury; (2) whether remedies available at law are inadequate to compensate for that injury; (3) whether, considering the balance of the hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) whether the public interest would

1  not be disserved by a permanent injunction.  *Id.* (quoting *eBay Inc. v. MercExchange,*
2  *L.L.C.*, 547 U.S. 388, 391 (2006).   When the government is a party to a case, the
3  balance of the equities and public-interest factors merge.  *Drakes Bay Oyster Co. v.*
4  *Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014).

5          Regarding the first factor, to the extent any SIJ petitioners have suffered or will
6  likely suffer irreparable injury as a result of the Tolling Provisions, the injury does not
7  appear to be systematically severe.   USCIS is currently adjudicating SIJ petitions in
8  205 days on average, and this figure includes "tolling," that is, it includes the time
9  USCIS spent waiting for petitioners to respond to RFEs and NOIDs.   Twenty-five
10 days, on average, past the statutory deadline is not a severe delay, especially given
11 that this figure includes periods during which certain petitions were incomplete and
12 could not yet be finally approved or denied.   Notably, most SIJ petitioners appear to
13 be at little to no risk of deportation while their SIJ petitions are pending.  (*See* DSUF
14 65 ("[The Department of Homeland Security] is not currently prioritizing the removal
15 of SIJ petitioners, including individuals who have not yet submitted a petition but
16 appear eligible for SIJ classification, unless the petitioner has severe criminal history
17 or presents a threat to national or border security.").

18         This conclusion—that the overall delay is not severe—is an observation about
19 the Tolling Provisions specifically and not about any broader phenomenon of "routine
20 delay" that may have resulted in certain petitioners waiting many months beyond
21 180 days for adjudication.   Certainly, if there is a delay of several months and the
22 delay owes entirely to USCIS's own inaction, at a certain point, the petitioner's
23 inability to obtain SIJ status and the associated benefits—including permission to
24 work and federal educational services, Order Granting Mot. Summ. J. 17, *Galvez v.*
25 *Cuccinelli*, ECF No. 76—becomes a significant and possibly irreparable injury.   But
26 this discussion is not about any long delays entirely within USCIS's control; this
27 discussion is about the Tolling Provisions and about the delays that occur when
28 USCIS requests additional evidence from SIJ petitioners.

Other reasons exist for concluding that the irreparable harm, if any, is minimal. Under the Tolling Provisions, USCIS has 180 days, and no more, to adjudicate SIJ petitions that do not need any additional evidence and for which a RFE or NOID is therefore not appropriate.   Thus, the Tolling Provisions themselves cause no irreparable harm to petitioners who do not receive a RFE or NOID.   As for the petitioners who do receive a RFE or NOID, the amount of delay they experience is exactly equal to the number of days each petitioner takes to respond to the RFE or NOID.   Thus,  even if the Tolling Provisions cause some amount of irreparable injury owing to the delays, it is within SIJ petitioners' power to mitigate that injury by providing a timely response to a RFE or NOID.

Moreover, in cases where the tolling of the deadline provides the petitioner an opportunity to submit materials and complete their petition beyond the purported strict 180-day deadline, it is difficult to see how those petitioners suffer any injury at all. With a strict 180-day deadline in place, USCIS would be forced to deny those petitioners' petitions, because USCIS cannot approve incomplete or otherwise deficient petitions.  8 C.F.R. § 103.2(b)(8)(i).  Owing to the Tolling Provisions, such petitioners gained the ability to complete their petitions beyond the strict 180-day window and avoid the denial that would have otherwise resulted.

Regarding the second factor, remedies at law are available in individual instances where a SIJ petitioner concludes that, in light of the course of their interactions with USCIS, USCIS is unreasonably delaying adjudication of their petition.   In such instances, the petitioner may assert an unreasonable delay claim pursuant to the APA, 5 U.S.C. § 706(1).

Regarding the third and fourth factors, the consideration of the public interest weighs strongly against the issuance of an injunction.  As discussed, USCIS has been working through a significant staffing shortage that resulted in part from the COVID-19 pandemic.   An injunction is not a talisman that would result in the immediate existence of more staff at the National Benefits Center, so at least at first,

to comply with an injunction, USCIS would have to divert staff and resources away from other matters in order to process SIJ petitions more quickly. Adjudicating a SIJ petition is not a trivial process; the adjudicating officer must make several determinations and must be familiar with the petition as a whole so that the officer can determine whether USCIS's consent to SIJ classification is warranted. Compounding the problem is the fact that staff who are not trained on SIJ petitions would have to be trained, and the training process consumes even more USCIS resources and prevents agents from processing any immigration applications at all while they are being trained.

Based on these observations, the Court finds little justification to insert itself into the affairs of USCIS and order USCIS to divert significant resources away from other priorities. Moreover, the uncontroverted evidence indicates that USCIS is making bona fide efforts to address any remaining systemic delays in processing SIJ petitions, including by hiring and training new staff and by implementing technological and other efficiencies. The Court declines to interpose its own mandates on this process when the evidence shows that USCIS has taken, and is continuing to take, meaningful steps to fix the problem.

Finally, and perhaps most fundamentally with respect to the public interest, the Tolling Provisions leave SIJ petitioners as a whole in an objectively *better* position than without the Tolling Provisions. Generally speaking, the Tolling Provisions are a set of regulations that support petitioners whose petitions cannot be approved in the first place, and while the Tolling Provisions allow for adjudications past the 180-day deadline in certain instances, overall, the Tolling Provisions make it easier, not harder, for SIJ petitioners to ultimately obtain approval of their petitions.

As one example, consider a situation where USCIS's backlog prevents it from making an initial assessment of a deficient SIJ petition until 150 days after the deficient petition has been filed. The adjudicating officer could, at that point, simply deny the petition based on its deficiencies. Or, as a way of assisting the petitioner in

obtaining approval, USCIS could issue a RFE.  Without the Tolling Provisions, the petitioner would have a maximum of 30 days to respond to the RFE, and if the response did not reach USCIS in time, USCIS would be obligated to simply deny the petition as incomplete.  The petitioner would then be required to take additional steps to reopen their case, a result that is not guaranteed  (*See* Def. Reply 4 (discussing standard for reopening petition as set forth at 8 C.F.R. § 103.5(a)(2)).)  With the benefit of the Tolling Provisions, on the other hand, the petitioner is guaranteed an appropriate window of time to provide the additional information, without having to worry that the petition will be denied if they do not act quickly enough.

The Tolling Provisions also favor petitioners in that that the Tolling Provisions leave the severity of any delay in the hands of the petitioner, not USCIS.  After USCIS stops the clock by issuing a RFE or NOID, it is the petitioner who has the power to restart the clock, by providing USCIS with the information necessary to complete adjudication of the petition.  Thus, if a petition is missing some technical or easy-to-obtain piece of information, a SIJ petitioner who needs a prompt adjudication can respond to the RFE or NOID in a timely manner (for example, within ten days), thus resuming the clock and ensuring prompt adjudication of the petition (a maximum of 180 + 10 = 190 days in the example).  If, by contrast, a petition is missing significant documents that will take the petitioner longer to procure, the Court still struggles to understand how a longer tolling of the 180-day deadline harms the petitioner.  Without the required significant documents, that petitioner's petition could never have been approved by USCIS anyway, and the Tolling Provisions simply provide the petitioner with additional time to submit materials and avoid a denial.

The fact that, as a whole, the Tolling Provisions place SIJ petitioners in a better position than they would be without the Tolling Provisions strongly reinforces the Court's finding that an injunction requiring strict compliance would not be in the public interest.

Plaintiffs observe that "despite COVID and backlogs, USCIS has been capable of following the court order in *Moreno-Galvez*." (Pl. Opp'n 13.)  Their suggestion is that, if USCIS can achieve strict 180-day compliance in Washington, it can do so nationwide.  This argument misses the point.  The reason USCIS is currently able to comply with the *Galvez* order is because it is quite literally letting Washington-based petitioners skip to the front of the line.  By definition, this siphons USCIS's resources away from other SIJ petitions, and it creates at least a quantum of additional delay in the adjudication of petitions from the other forty-nine states.

Thus, the issue is not whether it would be physically or conceptually possible for USCIS to marshal enough human power at the National Benefits Center to adjudicate SIJ petitions within a certain period of time.  Even if it were possible, the process would require diverting resources away from other types of immigration applications.  (*See* DSUF 49 (estimating that, as a result of recent diversion of resources to SIJ applications, USCIS will be forced to deprioritize 120,000 applicants for other types of benefits)).  USCIS would need to hire new staff or reassign current staff away from other responsibilities, and either way, training agents anew to process SIJ petitions is costly and resource-intensive.  The Court is not convinced that diverting these resources to get all SIJ petitions adjudicated within a strict 180-day deadline is in the public interest, especially when the average delay is not severe and the length of any potential delay beyond 180 days is within the control of the petitioner.

For these reasons, the Court declines to issue an injunction requiring strict compliance with the § 1232(d) 180-day deadline.

2.    *The Tolling Provisions are "arbitrary and capricious" to the extent they violate the 180-day statutory deadline, and no further.*

Plaintiffs allege and argue that the Tolling Provisions are also "arbitrary and capricious" as found in 5 U.S.C. § 706(2)(A). (Pl. Mot. 15–18.)  This assertion is the subject of a significant amount of evidence and argument regarding the public

comment process leading to the enactment of the Tolling Provisions. (*See, e.g.*, PSUF 73–75; DSUF 59–64.)

Plaintiffs do not make clear whether an "arbitrary and capricious" finding entitles them to relief or remedies that would not otherwise be available with a "not in accordance with law" finding. The text of the APA suggests that there is no such additional relief or remedy; the "arbitrary and capricious" language and the "otherwise not in accordance with law" language are found in the same subsection as part of a list of findings that allow courts to provide the sole remedy of "hold[ing] unlawful and set[ting] aside agency action." 5 U.S.C. § 706(2)(A). Thus, whether the Tolling Provisions are also "arbitrary and capricious" does not appear to have any effect on the remedies available to Plaintiffs. Nevertheless, in the interest of completeness, the Court will address this issue; Plaintiffs raise it, the parties argue it, and no one suggests the record is incomplete or insufficient to allow the Court to address it.

A regulation or practice is considered arbitrary and capricious "if [1] the agency has relied on factors which Congress has not intended it to consider, [2] entirely failed to consider an important aspect of the problem, [3] offered an explanation for its decision that runs counter to the evidence before the agency, or [4] if the agency's decision is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *All. for the Wild Rockies v. U.S. Forest Serv.*, 907 F.3d 1105, 1112 (9th Cir. 2018) (internal quotation marks and citation omitted)

Here, the Tolling Provisions are arbitrary and capricious to the extent, and only to the extent, that they allow for violations of the § 1232(d) 180-day time limit. To be clear, the Court <u>does not</u> find that Defendants acted arbitrarily or capriciously in the process of considering public comments and preparing the Tolling Provisions for enactment. For the reasons discussed above in the context of injunctive relief, the Tolling Provisions are not illogical, nor are they unequivocally detrimental to SIJ petitioners. To the contrary, they are USCIS's way of acting on the directive of § 1232(d), and while they technically allow for late adjudications in some cases, they

leave SIJ petitioners in a better overall position.  The Tolling Provisions also support USCIS in fairly allocating its limited resources to its many functions, and in this sense, the Tolling Provisions benefit immigration applicants of all types.  In addition, the Tolling Provisions are based on INS tolling regulations that the government has followed for decades.  Given that the public comment and revision process led to a set of Tolling Provisions that are logical and beneficial, the Court does not find that USCIS acted arbitrarily or capriciously in the public comment, revision, and enactment process.

**B.    Routine Delay Claim**

The Court proceeds to the second part of Plaintiffs' Motion for Summary Judgment.  By way of their routine delay claim, Organizational Plaintiffs claim that Defendants' routine delay in adjudicating SIJ petitions violates the 180-day statutory deadline at 8 U.S.C. 1232(d)(2), and Organizational Plaintiffs now request a ruling in their favor on the routine delay claim, consisting primarily of a declaration that the routine delay is unlawful and an injunction directing strict compliance.

To be clear, the routine delay claim is a broader challenge than the Tolling Provisions claim.  The routine delay claim challenges USCIS's overall delay in adjudicating SIJ petitions, which encompasses both the Tolling Provisions and all other aspects of USCIS's operations that might cause it to miss the 180-day deadline in various cases.  Organizational Plaintiffs seek an injunction to stop this routine delay, and, as mentioned, they argue that the Court should wait to address "[t]he scope and timing of compliance with any injunction" until after the Court rules on the summary judgment motions.  (Pl. Opp'n 32.)

On the routine delay claim, the Court grants summary judgment in favor of Defendants, and correspondingly denies Plaintiffs' request for summary judgment, because a systemwide injunction to stop generalized delays is not a remedy the APA makes available to Plaintiffs.  The routine delay claim is an APA claim, (FAC ¶¶ 107–109), and accordingly, any remedy must be available under the APA and must be

appropriate under the facts of the case. The APA empowers district courts to provide one of two "narrow" remedies. *Pub. Lands for the People, Inc. v. U.S. Dep't of Agric.*, 733 F. Supp. 2d 1172, 1183 (E.D. Cal. 2010). First, courts can "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). Second, courts can "hold unlawful and set aside agency action, findings, and conclusions" found to be unjustified for a number of specified reasons. 5 U.S.C. § 706(2). The question is whether Plaintiffs' request for a systemwide injunction to stop USCIS's "routine delay" of SIJ adjudications fits either of these descriptions of remedies available under the APA.

First, the type of injunction Plaintiffs seek does not appear to be a remedy contemplated by § 706(2). Organizational Plaintiffs are challenging an overall practice of USCIS on behalf of all present and future SIJ petitioners, and they seek an injunction ordering USCIS to alter its overall practice to more quickly adjudicate the petitions of *all SIJ petitioners*. But "[o]nly 'discrete agency action' may be reviewed under the APA," and USCIS's overall practice with respect to all SIJ petitioners is not a discrete action. *Pub. Lands*, 733 F. Supp. 2d at 1183 (quoting *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 62 (2004)). "Courts may determine whether particular actions violate broad mandates, but the APA does not permit courts to oversee agencies wholesale," as Plaintiffs ask this Court to do. *Id.*; *see also Norton*, 542 U.S. at 67 ("The prospect of pervasive oversight by federal courts over the manner and pace of agency compliance with such congressional directives is not contemplated by the APA."). Moreover, the Court notes that, consistent with this case law, the relief requested here is a permanent, forward-looking injunction, and it makes no sense to characterize such an injunction as the "hold[ing] unlawful and set[ting] aside" of anything.

What remains is whether § 706(1), which allows courts to "compel agency action unlawfully withheld or unreasonably delayed," allows the Court in this instance to issue a systemwide declaration and injunction regarding USCIS's practices.

5 U.S.C. § 706(1).  In the typical unreasonable-delay case, a plaintiff uses § 706(1) to obtain an injunction directing the agency to prioritize and act on the plaintiff's matter in particular.  Moreover, there is no indication in § 706(1) that Congress meant to provide a remedy directed toward the practices of the government agency on a systemwide basis.  *Norton*, 542 U.S. at 67.  Instead, to obtain such relief, Plaintiffs would need to certify a class of SIJ petitioners pursuant to Federal Rule of Civil Procedure 23(b)(2), which in turn would allow them to pursue a broad injunction regarding Defendants' behavior toward the class as a whole.  However, the Court has denied certification of a class for the purposes of the routine delay claim.  (Order Certify Class 28.)

The mere fact that Organizational Plaintiffs, in carrying out their missions, represent multiple SIJ applicants does not give Organizational Plaintiffs access to a systemwide remedy not otherwise available under the APA.  If it were Individual Plaintiffs, not Organizational Plaintiffs, asserting the routine delay claim, the remedy available to them would be an injunction compelling the agency to act *on Individual Plaintiffs' petitions*, and no more.  *Cf. Pub. Lands*, 733 F. Supp. 2d at 1183–84.  The Court is not aware of any case law suggesting individual plaintiffs in individual actions for unreasonable delay are able to obtain, as part of relief under the APA, an injunction regarding the agency's practices more generally, for the benefit of *other* petitioners.  The Court sees no basis for allowing organizational plaintiffs access to a remedy to which individual plaintiffs—the primary beneficiaries of the 180-day deadline—do not themselves have access.

For these reasons, the systemwide declaratory and injunctive relief Plaintiffs seek in connection with their routine delay claim is not available.   This precludes all the relief Plaintiffs seek on the routine delay claim, and accordingly, it is appropriate to grant summary judgment in Defendants' favor by dismissing the routine delay claim.

**C.      Possibility of Remaining Claims or Issues**

It is not clear whether their cross-Motions, taken together, resolve all, or less than all, of the claims and issues raised in this case.  As described below, the Court provides the parties an opportunity to address this question before it issues judgment.

## V.      CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART AND DENIES IN PART** the parties' respective Motions for Summary Judgment.  (ECF Nos. 97, 102.) The Court finds that the Tolling Provisions violate 8 U.S.C. § 1232(d)(2) and the Administrative Procedure Act, and the Court will issue declaratory judgment to that effect.  All other relief placed at issue by the Motions, including injunctive relief and relief on the routine delay claim, is denied.

By no later than **fourteen (14) days** from the date of this Order, the parties shall file a Joint Report indicating whether any claims or issues remain for this Court's adjudication. The parties shall describe any claims or issues that remain and shall confirm that this Order does not resolve the issues.  If no claims or issues remain, the Court will issue judgment accordingly.

**IT IS SO ORDERED.**


July 31, 2023

                                  _____
                                           OTIS D. WRIGHT, II
                                  **UNITED STATES DISTRICT JUDGE**