O

# United States District Court
# Central District of California

| | |
|---|---|
| CASA LIBRE/FREEDOM HOUSE et al., | Case № 2:22-cv-01510-ODW (JPRx) |
| Plaintiffs, | **ORDER GRANTING MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT [122] [132]** |
| v. | |
| ALEJANDRO MAYORKAS et al., | |
| Defendants. | |

## I.    INTRODUCTION

This is a class action challenging how the U.S. Department of Homeland Security ("DHS") and the U.S. Citizenship and Immigration Services ("USCIS") handle and process Special Immigrant Juvenile ("SIJ") petitions.  Plaintiffs are individuals who submitted SIJ petitions to USCIS and organizations that provided assistance to such individuals.  The Court certified a class for Plaintiffs' challenge to regulations that allow USCIS in certain circumstances to suspend the statutory 180-day deadline for adjudicating SIJ petitions.  (Order Certify Class 20, ECF No. 91.)  The Court granted in part and denied in part the cross motions for summary judgment, including issuing declaratory relief in favor of Plaintiffs.  (Order Summ. J. 28, ECF No. 110.)  The parties then reached a settlement for attorney's fees.  (Mot. Prelim. Approval ("Motion" or

"Mot.") 1, ECF No. 132.)  The parties now move for preliminary approval of the class action settlement for attorney's fees.  (*Id.*)  For the reasons below, the Court **GRANTS** the parties' joint Motion.[1]

## II.    BACKGROUND

In 1990, Congress created the SIJ classification to aid noncitizen children present in the United States who were declared dependent on state courts and were eligible for long-term foster care.  Immigration Act of 1990, Pub. L. No. 101–649, § 153, 104 Stat. 4978 (1990).  The SIJ statute provides that "[a]ll applications for [SIJ] status . . . shall be adjudicated . . . not later than 180 days after the date on which the application is filed."  8 U.S.C. § 1232(d)(2).

Pursuant to regulations, USCIS adheres to the following procedure with respect to the 180-day deadline (the "Tolling Provisions"):

- When an SIJ petition lacks required <u>initial</u> evidence, USCIS may send a Request for Evidence ("RFE") informing the petitioner what evidence is required. 8 C.F.R. § 103.2(b)(8)(ii).  The 180-day time period re-starts on the date USCIS receives the required initial evidence.  *Id.* §§ 103.2(b)(10)(i), 204.11(g)(1).

- USCIS may send the petitioner an RFE or a Notice of Intent to Deny ("NOID") to request that the SIJ petition submit <u>additional</u> evidence.  *Id.* § 103.2(b)(8)(iii). The 180-day deadline is suspended, or "tolled," as of the date the RFE or NOID is issued and resumes when USCIS receives the requested additional evidence. *Id.* § 103.2(b)(10)(i).

For SIJ petitions filed between January 1, 2020, and June 29, 2023, USCIS's average processing time to adjudicate SIJ petitions was 205 days, which is 25 days beyond the 180-day deadline.  (Order Summ. J. 7.)

Plaintiffs alleged that USCIS's policies violate the Fifth Amendment's equal protection guarantee by failing to provide SIJ petitioners with employment

---

[1] After carefully considering the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument.  Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

authorization before and after USCIS approves their petitions, unlike USCIS's policy with other visa applicants.  (First Am. Compl. ("FAC") ¶¶ 106, ECF No. 34.)  Plaintiffs also challenged USCIS policies as violating the Administrative Procedure Act ("APA").  First, Plaintiffs challenged "Defendants' policy and practice of delaying the adjudication of SIJ petitions for longer than 180 days" (the "Missed Deadline Claim").  (*Id.* ¶ 109.)  Second, they challenged the Tolling Provisions themselves.  (*Id.*)  Plaintiffs sought a declaration that these USCIS policies are unlawful, and a permanent injunction enjoining Defendants from following these policies.  (*Id.*, Prayer ¶¶ 3–4.)

On October 26, 2022, the Court dismissed Plaintiffs' equal protection claim.  (Order Mot. Dismiss 17, ECF No. 48.)   On May 25, 2023, the Court certified the following class under Federal Rules of Civil Procedure ("Rule" or "Rules") 23(b)(2) and 23(b)(3), only for purposes of the Tolling Provision:

> All Special Immigrant Juvenile petitioners, except as to members of the certified class in the case entitled *Moreno-Galvez v. Cuccinelli*, Case No. C19-0321RSL (U.S. District Court for the Western District of Washington), who have submitted or will submit Petitions for Amerasian, Widow(er), or Special Immigrant (Form I-360) ("SIJ Petitions") with the USCIS, and whose SIJ Petitions were not or in the future are not adjudicated within 180 days of being filed, including but not limited to petitioners who were issued a Request for Evidence or a Notice of Intent to Deny causing delay in the processing of their SIJ Petitions pursuant to 8 C.F.R. § 204.11(g)(1).

(Order Certify Class 27.)  The Court also appointed Peter Schey and Sarah Kahn of the Center for Human Rights and Constitutional Law as class counsel ("Class Counsel"), and Carlos Abel Hernandez Arevalo and Rene Isai Serrano Montes as class representatives ("Class Representatives").  (*Id.* at 28.)

On July 31, 2023, the Court ruled on cross-motions for summary judgment.  (Order Summ. J.)  Although the Court dismissed the Missed Deadline Claim, it found that the Tolling Provisions violate the APA.  (*Id.* 13.)  In so ruling, the Court issued declaratory, but not injunctive, relief to the Plaintiffs.  (*Id.* 28.)  Both parties appealed.

(Defs.' Notice Appeal, ECF No. 116; Pls.' Notice Appeal, ECF No. 118.)    On December 12, 2023, the Ninth Circuit approved the parties' voluntary dismissal of the cross-appeals.  (Order 9th Cir., ECF No. 121.)  The Court's order on the cross-motions for summary judgment thus became final.

On January 11, 2024, Plaintiffs filed a motion for attorney's fees seeking a $607,885.43 award in attorney's fees and costs pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412.  (Mot. Att'y Fees ("MAF") 2, 11–12, ECF No. 122.)  On July 4, 2024, the parties agreed to settle Plaintiffs' claims under the EAJA (the "Proposed Settlement").  (Mot., Ex. 1 ("Settlement Agreement"), ECF No. 132-1.)  The parties now seek preliminary approval of the Proposed Settlement awarding Class Counsel $350,000.00 in attorney's fees, expenses, and taxable costs.  (Mot. 3.)

### III.    TERMS OF PROPOSED SETTLEMENT

Under the Proposed Settlement, Plaintiffs and Class Counsel release Defendants "from any and all claims by Plaintiffs and Plaintiffs' Counsel for or arising from attorney's fees for work that has been performed or payment or reimbursement of expenses or costs that have been incurred in connection with this Action."  (Settlement Agreement § III.2.)  They also release claims "under [the] EAJA and any other basis for seeking payment of fees and expenses that have been incurred in the Action, including fees and costs expended in reaching this Agreement." (*Id.*)  In consideration for these releases, Defendants will pay Class Counsel $350,000 "for costs, attorneys' fees and litigation expenses incurred in connection with the Action." (*Id.* § III.1.)

### IV.    LEGAL STANDARD

Under the EAJA, a court must "award attorney's fees to an eligible prevailing party in a civil suit brought against the United States unless the government's position is substantially justified or special circumstances make an award unjust." *Love v. Reilly*, 924 F.2d 1492, 1494 (9th Cir. 1991) (citing 28 U.S.C. § 2412(d)(1)(A)).

"The claims, issues, or defenses of a certified class . . . may be settled . . . only with the court's approval."  Fed. R. Civ. P. 23(e).  "If the proposal would bind class

1  members, the court may approve it only after a hearing and only on finding that it is

2  fair, reasonable, and adequate. . . . " Fed. R. Civ. P. 23(e)(2).

3      Courts scrutinize class action settlements "to protect the unnamed members of

4  the class from unjust or unfair settlements affecting their rights." *In re Syncor ERISA*

5  *Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008).  Nonetheless, "there is a strong judicial

6  policy that favors settlements, particularly where complex class action litigation is

7  concerned." *Id.* at 1101.  Once a court preliminarily approves the settlement, the court

8  "must direct appropriate notice to the class" and grant final approval "only after a

9  hearing." Fed. R. Civ. P. 23(e)(1)(A), (B)(2).  With respect to a settlement of a class

10 certified under Rule 23(b)(3), the "court must direct notice in a reasonable manner to

11 all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B).

12                          **V.  DISCUSSION**

13     The Court first considers whether it may grant preliminary approval for the

14 Proposed Settlement.  (*See* Settlement Agreement.)  The Court then reviews whether

15 the class notice ("Proposed Class Notice") is sufficient.  (*See* Mot. 1, Ex. 2 ("Proposed

16 Class Notice"), ECF No. 132-2.)

17 **A.  Preliminary Settlement Approval**

18     In class actions, courts may approve a settlement agreement only when the

19 settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).  "At the

20 preliminary approval stage, the court evaluate[s] the terms of the settlement to

21 determine whether they are within a range of possible judicial approval." *Spann v. J.C.*

22 *Penny Corp.*, 314 F.R.D. 312, 319 (C.D. Cal. 2016) (alteration in original) (internal

23 quotation marks omitted).  At this stage, a "full fairness analysis is unnecessary"

24 because the court must hold a hearing before giving final approval.  *Grady v. RCM*

25 *Techs. Inc.*, 671 F. Supp. 3d 1065, 1072 (C.D. Cal. 2023).  Thus, "the settlement need

26 only be *potentially* fair." *Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 386 (C.D. Cal.

27 2007).  Ultimately, "[t]he initial decision to approve or reject a settlement proposal is

28

committed to the sound discretion of the trial judge." *Officers for Just. v. Civ. Serv. Comm'n of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982).

To determine whether a settlement is "fair, reasonable, and adequate," courts consider the following factors: whether "(A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate . . . ; and (D) the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2), *Lalli v. First Team Real Est.—Orange Cnty.*, No. 8:20-cv-00027-JWH (ADSx), 2022 WL 8207530, at *3 (C.D. Cal. Sept. 6, 2022).

### 1.    Adequate Class Representation

Having previously found that Class Counsel and Class Representatives were adequate representatives for purposes of class certification, (Order Certify Class 18–19, 28), the Court now finds that Class Counsel and Class Representatives adequately represented the class.  *See In re Snap Inc. Sec. Litig.*, No. 2:17-cv-03679-SVW, 2021 WL 667590, at *1 (C.D. Cal. Feb. 18, 2021) (finding adequate representation where court had previously appointed class representatives and class counsel and both had "prosecuted the case with diligence and success").

Class Counsel engaged the class throughout the litigation by, for example, providing "case summaries and updates in English and Spanish," bringing Class Representatives and a translator to settlement negotiations, and "holding community meetings to solicit input from stakeholders." (Mot. 7.)  Moreover, Class Counsel and Class Representatives delivered a favorable outcome on summary judgment in the form of declaratory relief. (*See* Order Summ. J. 28.)  Therefore, at this preliminary approval stage, the Court finds adequate class representation.

### 2.    Negotiated at Arm's Length

In evaluating a proposed settlement, courts focus on whether "the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all

concerned." *Officers for Just.*, 688 F.2d at 625. A court may preliminarily approve a settlement if the proposed settlement, among other things "appears to be the product of serious, informed, non-collusive negotiations, [and] has no obvious deficiencies." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007). Where attorney's fees originate from a common recovery fund that feeds monetary relief to class members, courts assess the fees with more skepticism because of the "potential for conflict in the allocation." *Lopez-Venegas v. Johnson*, No. 2:13-cv-03972-JAK (PLAx), 2015 WL 13916876, at *9 (C.D. Cal. Feb. 25, 2015); *cf. Knisley v. Network Assocs., Inc.*, 312 F.3d 1123, 1125 (9th Cir. 2002) (stating that one of the risks of class action settlement is that "class counsel may collude with the defendants, tacitly reducing the overall settlement in return for a higher attorney's fee").

The parties entered settlement negotiations after this Court issued declaratory relief. (Mot. 8.) Settlement negotiations continued for four months and included "various emails discussing the strengths of Plaintiffs' claims and Defendants' defenses." (*Id.* at 7–8.) The Court has not been presented with any facts suggesting fraud, overreaching, or collusion. In fact, the risk of collusion is not high because Plaintiffs lack monetary relief, and Class Counsel's compensation does not originate from a common fund. *Cf. Lopez-Venegas*, 2015 WL 13916876, at *9 (approving attorney's fee award where fees were not paid from common fund). Therefore, for the purpose of preliminary approval of the settlement, the Court finds the parties negotiated the Proposed Settlement at arm's length.

### 3. Adequate Relief for the Class

To determine whether "relief provided for the class is adequate," courts consider "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class . . .; (iii) the terms of any proposed award of attorney's fees, including timing of payment;" and (iv) any agreement made in connection with the proposal. Fed. R. Civ. P. 23(e)(2)(C); *Lalli*, 2022 WL 8207530, at *4. Further, "the Ninth Circuit asks district courts to undertake an additional search

for more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *Lalli*, 2022 WL 8207530, at *3. (internal quotation marks omitted).  This additional search requires courts to consider: "(1) whether counsel 'receive[d] a disproportionate distribution of the settlement'; (2) whether the parties agreed to a 'clear sailing arrangement'; and (3) whether the settlement includes a 'kicker' or 'reverter' clause." *Id.* (alteration in original) (quoting *Briseño v. Henderson*, 998 F.3d 1014, 1023 (9th Cir. 2021)).

First, the Court finds that the costs, risks, and delay of appeal favor preliminary approval of the Proposed Settlement—without a settlement, there is a substantial risk that the parties will expend resources litigating attorney's fees.  (*See* MAF 2, 11–12 (requesting $607,885.43 in fees).)  Second, because the class received declaratory—not monetary—relief, the Court has no concerns with the effectiveness of distributing relief to the class.  Third, the parties submitted the agreement as required under the fourth element.  (*See* Settlement Agreement.)

There is also no indication of foul play in the negotiations by Class Counsel.  The Proposed Settlement does not contain a kicker or a reverter clause.  The Proposed Settlement includes a clear sailing arrangement whereby Defendants agree to support the request for attorney's fees.  (*See* Settlemet Agreement III.5.)  However, this is not cause for concern because the settlement only relates to payment of attorney's fees that do not reduce recovery for the class.  For the same reason, there is no unfair distribution of the settlement to class members.  Therefore, negotiations do not contain "subtle signs" that Class Counsel may have prioritized their gains over those of the class members.  *See Lalli*, 2022 WL 8207530, at *3.

The analysis thus turns to determining whether the Proposed Settlement provides adequate relief to the class.  The parties agreed to settle the EAJA claims for attorney's fees. (Mot. 4.)  If the EAJA supports the requested relief, then the Proposed Settlement is adequate.  Under the EAJA, a court must "award attorney's fees to an eligible prevailing party in a civil suit brought against the United States unless the government's

position is substantially justified or special circumstances make an award unjust." *Love*, 924 F.2d at 1494 (citing 28 U.S.C. § 2412(d)(1)(A)).

### *a.* Eligible Party

Parties eligible for attorney's fees under the EAJA include "individual[s] whose net worth did not exceed $2,000,000 at the time the civil action was filed" or "any owner of an . . . organization" with less than 500 employees and no more than $7,000,000 in net worth at the time the civil action was filed. 28 U.S.C. § 2412(d)(2)(B)(i)–(ii).

In this case, class members are indigent juvenile immigrants, less than twenty-one years old, who are ineligible for employment, and therefore qualify as an eligible party under the EAJA. *See* (Order Certify Class 27 (defining class to include SIJ petitioners)); 8 U.S.C. § 1101(a)(27)(J) (defining "special immigrant"). The organizational Plaintiff seeking attorney's fees—Casa Libre—qualifies under this second classification because it is a non-profit organization with less than $7,000,000 in net worth and no full-time employees. (*See* MAF Ex. 1 ("Decl. Peter Schey ISO MAF" or "Decl. Schey") ¶ 9, ECF No. 122-1.) Plaintiffs are thus eligible parties under the EAJA.

### *b.* Prevailing Party

To meet the EAJA "prevailing party" standard, a party must show that a court's "actions resulted in a 'material alteration of the legal relationship of the parties' and . . . the alteration was 'judicially sanctioned'" to the party's benefit. *Li v. Keisler*, 505 F.3d 913, 917 (9th Cir. 2007) (quoting *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Heath & Hum. Res.*, 532 U.S. 598, 604–05 (2001)). A "party need not succeed on every claim in order to prevail." *Rosebrock v. Beiter*, No. 2:10-cv-01878-SJO (SSx), 2015 WL 13709619, at *7 (C.D. Cal. Aug. 13, 2015) (quoting *Carbonell v. INS*, 429 F.3d 894, 900 & n.5 (9th Cir. 2005) (recognizing plaintiff as a prevailing party because he "received much of the relief he sought in the district court")).

Plaintiffs sought injunctive and declaratory relief. (*See* FAC, Prayer ¶¶ 3–4.) The Court awarded Plaintiffs declaratory relief on one of its claims. (*See* Order Summ.

J. 28.)   This "judicially sanctioned" outcome created a "material alteration of the [parties'] legal relationship." *Buckhannon Bd. & Care Home, Inc.*, 532 U.S. at 604–05. Therefore, Plaintiffs are a "prevailing party" for purposes of the EAJA.  *See Rosebrock*, 2015 WL 13709619, at *6, 8 (finding plaintiff to be a "prevailing party" under the EAJA where the court granted declaratory, but not injunctive, relief).

### *c.*  Substantially Justified Position

Once the movant establishes that it is a prevailing party, "[t]he burden of proving the special circumstances or substantial justification exception to the mandatory award of fees under the EAJA rests with the government." *Love*, 924 F.2d at 1495.   If Defendants "do not oppose" the EAJA fee motion, "the Court need not decide whether Defendants meet this burden." *Hernandez v. Garland*, No. 5:16-cv-00620-JGB (KKx), 2022 WL 1176752, at *8 (C.D. Cal. Mar. 28, 2022).   Here, Defendants agree to the Proposed Settlement, join the Motion, and do not assert that their position was substantially justified.  Therefore, Defendants do not establish that an exception applies.

### *d.*  Reasonableness of Attorney's Fees and Costs

Courts apply the lodestar method "to determine what constitutes a reasonable fee award under the EAJA." *Costa v. Comm'r of Soc. Sec. Admin.*, 690 F.3d 1132, 1135 (9th Cir. 2012).  To calculate the lodestar figure, courts "multipl[y] the number of hours the prevailing party reasonably spent on litigation by a reasonable hourly rate." *Kim v. Allison*, 8 F.4th 1170, 1180 (9th Cir. 2021).   Courts may adjust this figure "by an appropriate positive or negative multiplier reflecting a host of 'reasonableness' factors." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941–42 (9th Cir. 2011).

EAJA attorney rates are based on "prevailing market rates for the kind and quality of the services furnished, except that . . . attorney fees shall not be awarded in excess of $125 per hour." 28 U.S.C. § 2412(d)(2)(A).  Nonetheless, courts may "determine[] that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee." *Id.*; *Thangaraja v. Gonzales*, 428 F.3d 870, 876–77 (9th Cir. 2005) (awarding cost-of-living increase).

The Ninth Circuit provides guidance on rates adjusted for "an increase in the cost of living" ("Adjusted Rates"). *See Statutory Maximum Rates Under the Equal Access to Justice Act*, U.S. Courts for the Ninth Circuit, https://www.ca9.uscourts.gov/attorneys/statutory-maximum-rates/ (last visited Oct. 11, 2024) [hereinafter *EAJA Maximum Rates*]. Courts may also adjust rates "if there was a limited availability of attorneys having some distinctive knowledge or specialized skill needful for the litigation." *Love*, 924 F.2d at 1496 (internal quotation marks omitted).

Plaintiffs submitted detailed timesheets that show Class Counsel worked 1,063.10 hours. (Decl. Schey ¶ 12, Exs. C ("Schey's Timesheet"), D ("Other Attorney Timesheets"), ECF No. 122-1.) Under the Adjusted Rates, Class Counsel would be entitled to $256,016.10 in attorney's fees.[2] (*Id.*); *see EAJA Maximum Rates*. Prior to the settlement, Plaintiffs asked for a special adjustment to lead counsel Schey's hourly rates: from $217.54 to $1,100 in 2021, $234.95 to $1,200 in 2022, and $244.62 to $1,300 in 2023. (*See* MAF 8–11.) The Court need not—and does not—decide whether Schey is entitled to this high of an adjustment. Instead, the Court need only decide whether Schey is entitled to an hourly rate of $513.34 to get to the $350,000 agreed-upon amount.[3]

Because this rate is neither contested nor outside of the Court's discretion, and Class Counsel has shown that there is limited availability of attorneys having some distinctive knowledge or specialized skill needful for this litigation and available at the statutory rate, (*see* MAF 9–10); *Love*, 924 F.2d at 1496, the Court finds the hourly rate "within the range of possible approval," *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1079; *see e.g.*, *Flores v. Barr*, No. 2:85-cv-4544-DMG (AGRx), 2019 WL

---

[2] The breakdown is as follows:
        2021: $3,839.58 (17.65 hours at $217.54 per hour);
        2022: $86,532.09 (368.3 hours at $234.95 per hour); and
        2023: $165,644.43 (677.15 hours at $244.62 per hour).
[3] Under the Adjusted Rates, Class Counsel would be entitled to $256,016.10 in attorney's fees. *See EAJA Maximum Rates*. Schey worked 341.02 hours on this case. (Schey's Timesheet.) Therefore, to make up the $93,983.90 difference from the Adjusted Rates to requested fees, Schey would need to be credited with an hourly rate of $513.34. (*See* Schey's Timesheet); EAJA *Maximum Rates*.

7171539, at *4 (C.D. Cal. Nov. 12, 2019) (approving $950 hourly rate for Schey because he is "uniquely positioned" to litigate the case); *Staton v. Boeing Co.*, 327 F.3d 938, 966 (9th Cir. 2003) (stating that "the court need not inquire into the reasonableness of the fees even at the high end with precisely the same level of scrutiny as when the fee amount is litigated").

For the foregoing reasons, the Proposed Settlement provides adequate relief to the class.

### 4.    *Equitable Treatment of Class Members*

Lastly, the Court must ensure that "the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D).  A court may preliminarily approve a settlement and direct notice to the class if "the proposed settlement . . . does not improperly grant preferential treatment to class representatives or segments of the class." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1079.  Because the Proposed Settlement makes no distinctions among class members, the Court finds that the Proposed Settlement treats class members equitably relative to each other.  Therefore, the Court finds that the Proposed Settlement is within the range of possible judicial approval, and preliminary approves the Proposed Settlement.

## B.    Sufficiency of Notice

To evaluate a class settlement notice, the Court must analyze the notice type and the notice content.  The Court finds the Proposed Class Notice sufficient.

### 1.    *Type of Notice*

Once a court determines it is likely to approve a class settlement, it "must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B).  Defendants plan to post the Proposed Class Notice, in English and in Spanish, to the USCIS website for at least twenty days. (Mot. 11–12; *see* Settlement Agreement § III.5.)  Plaintiffs will also post a copy on Class Counsel's website for the same duration. (Mot. 11–12; *see* Settlement Agreement

§ III.5.)  The Court finds, under the circumstances of this case, the notice reasonable for class members.

### 2.   Content of Notice

The Court certified the class under Rule 23(b)(2) for injunctive and declaratory relief, and subsequently granted the declaratory relief on summary judgment.  (Order Certify Class 27; Order Summ. J. 28.)  For a class certified under Rule 23(b)(2), the Court "may direct appropriate notice to the class."  Fed. R. Civ. P. 23(c)(2)(A).

Here, the parties sufficiently describe the nature of the action, the class certified, claims, and the issues in the action.  (*See* Proposed Class Notice 1.)  The parties will also inform class members of rights waived to bring claims "arising from attorneys' fees . . . in connection with this lawsuit."  (*Id.* at 2.)  Moreover, the parties will instruct opposing class members to submit objections in writing within thirty days of the Court's preliminary approval.  (*Id.* at 2–3.)  Therefore, the Court finds Proposed Class Notice sufficient.

## VI.   CONCLUSION

The Court **GRANTS** Plaintiffs' Motion for Preliminary Approval.  (ECF No. 132.)   The Court (1) preliminary approves the Proposed Settlement and (2) approves the form and method of the parties' Proposed Class Notice, provided that, in lieu of the last paragraph of the Proposed Class Notice, the parties include the date, time, and place of the Final Approval Hearing in the notice.  Accordingly, the Court **DENIES** Plaintiffs' Motion for Attorney's Fees, (ECF No. 122.), as moot.

The Final Approval Hearing shall be held on December 16, 2024, at 1:30 p.m., at the United States Courthouse, 350 West First Street, Courtroom 5D, Los Angeles, CA 90012.  No later than **five (5) days** after the objection deadline provided in the Proposed Class Notice, the parties shall file with the Court any objections received or a notice that no objections were received.  No later than **thirty-five (35) days** before the Final Approval Hearing, Plaintiffs shall file with the Court a motion for final approval of the settlement along with an application for attorney's fees and costs in accordance

with Rule 23(h).  If any opposition is filed, either party may file a reply in support of the motion for final approval of the settlement no later than **fourteen (14) days** before the Final Approval Hearing.

**IT IS SO ORDERED.**

October 16, 2024

_____

**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**